# PX17

## Declaration of Crystal Ostrum

## Federal Trade Commission Investigator

## DECLARATION OF CRYSTAL D. OSTRUM

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. I have personal knowledge of the facts set forth herein.

2. I have a J.D. degree and am currently a member in good standing of the Virginia State Bar.

3. I am an Investigator for the Federal Trade Commission ("FTC" or "Commission").  Prior to working at the FTC, I worked for U.S. Food and Drug Administration, Center for Tobacco Products, for the Office of Compliance and Enforcement, as a Regulatory Counsel.

4. I have been working as an FTC investigator since June 2014.   I am presently assigned to the Enforcement Division of the FTC's Bureau of Consumer Protection in Washington, DC.  My work address is 600 Pennsylvania Avenue, N.W., Mail Drop CC-9528, Washington, DC 20580.

5. As an investigator with the FTC, my duties include investigating possible violations of the laws the FTC enforces and violations of Orders obtained by the Commission.

6. I was assigned to work on the matter *FTC v. RevMountain, LLC*, *et al.*, in August 2016.

7. A number of documents are attached to this declaration.  In accordance with FTC procedures and this Court's rules, information from these documents has been redacted in order to protect sensitive information, such as financial account numbers and personally identifiable information.

8. On Thursday, July 27, 2017, pursuant to the immediate access provision (Section XXII) in the Temporary Restraining Order ("TRO") and at the Temporary Receiver's invitation, FTC Staff entered the Defendants' business premises at 6260 Lookout Road, Boulder, CO 80301 and 2011 Cherry Street, Suite 202, Louisville, CO 80027.

Page **1** of 14

**2011 Cherry Street**

9.  I entered the business premises at 2011 Cherry Street, Suite 202, Louisville, CO 80027.

10. At the premises, I performed several tasks.  First, I assigned each room, office, or workstation a unique number and then took photographs of the premises.  I prepared a map showing the location of various offices, desks, and other furniture.

11. The Receiver's representative, Brian Lundeen, spoke with employees on the premises. They helped him determine the name and role of each employee in association with each office or workstation.  He wrote this information on post-it notes and placed the notes on each desk or near the entrance of each office.

12. With assistance from other FTC employees present, I reviewed and collected certain paper documents from the Defendants' premises.  We added "slipsheets" to each document or set of documents we collected.  The slipsheets identify which of the FTC staff collected the material, and from which specific location it was collected. Thus, by identifying the unique number assigned to each location on the slipsheet, we are able to identify exactly where at the premises we located the material.

13. The paper documents remained in my custody until Saturday, July 29, 2017, when I provided them to a contractor who scanned them.  The contractor sent me electronic copies of the documents.  I placed the scanned materials on the FTC computer system's shared drive, where FTC staff assigned to the above-captioned matter can access them.

14. One office was identified as the office of Danielle Foss, COO of Blue Rocket Brands.  There was a note on her desk, which read "BBB home page wording," and "Check CB rates recent."  I observed a Complaint for a class action lawsuit, against Blizzardwhite, LLC,

Bellaathome, LLC, Convertis, LLC, Convertis Marking, LLC, and RevGuard.  I observed responses to consumer complaints, printed emails regarding chargebacks, and handwritten notes.  These items are included with this declaration as **Attachment A**.

15. In the office of Stelios Cabrera, CEO of Blue Rocket Brands, LLC, I observed a whiteboard, which contained a list including the items "BBB project," and "Dissolve – Walnut, Sandstone & Newport."  I also observed charts outlining the structure of the receivership entities and a chart listing revenue.  The charts are included with this declaration as **Attachment B**.

16. At the desk of Kari Toberson, training manager, I reviewed notes, titled "STC-M Interaction Review."  I observed 37 call reviews in these notes.  Of these, 24 of the call reviews used the words: "threat," "chargebacks," "BBB threat," "AG threat," "CC company threat," "atty threat," "consumer affairs threat," and "bank threat."

17. I saw numerous complaints, including complaints the companies received directly from consumers, complaints directed towards the Better Business Bureau, and complaints to various states' Attorneys General.

18. In the office of Christy Blackburn, Accounting/HR, I observed a letter asking for approval to create a stamp of merchant principals' signatures, reading "[F]eel free to call me or Jenny if you have any questions or concerns."  I also observed a whiteboard in Ms. Blackburn's office that contained notes about Blue Rocket's merchant entities.  In this office, I also observed correspondence from Rackspace, addressed to ROI Runner, 6260 Lookout Road, Boulder, CO 80301.  I observed a check for $25,000, drawn on the account of Convertis, LLC, payable to Joshua Gray. I observed blank checks for Spruce River, LLC, How and Why, LLC, Snow Sale, LLC, and Brookville Lane.  The office contained bankers boxes marked as

containing records for various entities.  I observed a chart with various entities, listing their

bank, account number and log-in information.  I also observed files for the merchant

companies' banking and payroll documents. The chart and photographs of the files and the

signature stamps are included with this declaration as **Attachment C**.

19. In the office of Christy Blackburn, Accounting/HR, I reviewed a document, which outlined

how to set up a new entity, and included instructions to transfer interest in the entity after the

payment processors have been procured.  This document is included with this declaration as

**Attachment D**.

20. In the office of Christy Blackburn, Accounting/HR, I observed a list of bank accounts noting

the entity, the bank, routing and account numbers, and signatories on the accounts. This

document is included with this declaration as **Attachment E**.

21. In the office of Christy Blackburn, Accounting/HR, I observed invoices from and payments

to affiliate marketers, which are included with this declaration as **Attachment F**.

22. In the office of Christy Blackburn, Account/HR, I observed payroll records.  The RevLive,

LLC payroll for July 2017 includes Blair McNea, Marilyn McNea, Taylor McNea, Walter

Long, and Emily Long.  The document is included with this declaration as **Attachment G**.  I

also observed Revguard, LLC's payroll information.  In November 2013, Blair McNea,

Rachael McNea, Taylor McNea, Marilyn McNea, Walter Long, and Emily Long were on

RevGuard, LLC's payroll.  This information is included with this declaration as **Attachment

H**.  I also observed payroll information for Blue Rocket Brands, LLC, which is included with

this declaration as **Attachment I**.

23. In the office of Christy Blackburn, Account/HR, I also observed payroll records for Brand

Force, LLC, Boulder Creek Internet Solutions, Brass Triangle, LLC, Bridge Ford, LLC,

Brookville Lane, LLC, Desert Gecko, LLC, Doing What's Possible, LLC, Flat Iron Avenue, Greenville Creek, How and Why, LLC, Indigo Systems, Mint House, LLC, Newport Crossing, LLC, Night Watch Group, Sandstone Beach, LLC, Snow Sale, LLC, Spruce River, LLC, Three Lakes, LLC, Thunder Avenue, LLC, University & Folsom, LLC, Walnut Street Marketing Inc., and Wild Farms, LLC. These entities each had exactly one employee on the payroll.

24. In the office of Christy Blackburn, Accounting/HR, I observed an Employee Lease Agreement wherein the services of RevLive, LLC employee Jenny Johnson are leased to RevMountain, LLC, ROIRunner, Cherry Blitz, LLC, RoadRunnerB2C, LLC d/b/a/ RevGo, Wheeler Peak Marketing, LLC, Salamonie River, LLC, Wave Rock, LLC, and Blue Rocket Brands, LLC. It appears that Blair McNea signed this agreement on behalf of each of the entities. This agreement is included with this declaration as **Attachment J**.

25. In the office of Christy Blackburn, Accounting/HR, I observed the Lease for the property at 2011 Cherry Street. The tenant for this property is Wave Rock, LLC. Blair McNea signed this lease as CEO/Owner of Wave Rock, LLC. The first and last pages of the lease are included with this declaration as **Attachment K**.

26. In the office of Christy Blackburn, Accounting/HR, I observed dental and life insurance bills, which indicate that RevLive, LLC and RevMountain, LLC cover the employer portion of premiums for employees of the other entities. These bills are included with this declaration as **Attachment L**.

27. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, I observed a whiteboard containing a list of payment processors

organized by bank account.  This whiteboard lists 48 processors.  A photograph of this

whiteboard is included with this declaration as **Attachment M**.

28. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant

Processing for Blue Rocket, I observed a whiteboard containing a list of payment processors

organized by merchant.  This whiteboard lists 35 processors.  A photograph of this

whiteboard is included with this declaration as **Attachment N**.

29. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant

Processing for Blue Rocket, I observed merchant applications and related documents for

Blue Rocket, Absolutely Working, Boulder Creek, Brand Force, Brass Triangle, Bridge Ford,

Brookville Lanes, Desert Gecko, Doing What's Possible, Flat Iron Avenue, Greenville

Creek, Indigo Systems, How and Why, Mint House, Moneta Hills, Newport Crossing, Night

Watch, Sandstone Beach, Snow Sale, Solid Ice, Spruce River, Three Lakes, Thunder

Avenue, University & Folsom, Walnut Street, and Wild Farms. The first pages of several

merchant account applications are included with this declaration as **Attachment O**.

30. In the shared office occupied by Lindsay Martinez, Office Manager, and Seth Davies,

Merchant Processing for Blue Rocket, we located binders and files for the merchant

companies.  I observed an email chain between Christy@bluerocketbrands.com and

megan@bluerocketbrands.com discussing bringing a "dba back to life" and the changes

necessary to do so. I also observed notes about RevLive in this office.  Photographs of this

office and the items referenced are included with this declaration as **Attachment P**.

31. In the shared office occupied by Lindsay Martinez, Office Manager, and Seth Davies,

Merchant Processing for Blue Rocket, I observed a Reseller Agreement between Bloom

Allure at Home, LLC, Wave Rock, LLC, and University and Folsom, LLC, which is included with this declaration as **Attachment Q**.

32. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, I observed several agreements titled "Indemnification for Key Employees who Sign Personal Guarantees."  One agreement indemnifies Jaime Hayden as manager of Spruce River, LLC, and is signed by Blair McNea on behalf of Hollywood Pro Smile, LLC. One agreement indemnifies Danielle Foss as Manager of Mint House, LLC and is signed by Blair McNea as manager of both Smile Pro Direct, LLC and Wave Rock, LLC. One agreement indemnifies Mark Santiago as manager of How and Why, LLC and is signed by Blair McNea as manager of both Action Pro White, LLC and Wave Rock, LLC. In the office of Danielle Foss, I observed several more of these agreements. One agreement indemnifies Megan Nosel, manager of Absolutely Working, LLC, and is signed by Blair McNea as both manager of First Class Whitening, LLC and Wave Rock, LLC. One agreement indemnifies Kelly Clauson as manager of Brand Force, LLC and is signed by Blair McNea as manager of both Ivory Pro, LLC and Wave Rock, LLC. One agreement indemnifies Marnie Baesler as manager of Thunder Avenue, LLC and is signed by Blair McNea as manager of Bella at Home, LLC and Wave Rock, LLC. One agreement indemnifies Marnie Baesler as manager of University & Folsom, LLC and is signed by Blair McNea as manager of Blizzard White. These forms are included with this declaration as **Attachment R**.

33. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, I observed correspondence from payment processors notifying Defendants that their accounts were closed for high chargeback rates or for being a high risk

for regulatory scrutiny. In my review of documents, I noted numerous such letters.  A sample is included with this declaration as **Attachment S**.

34. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, I observed correspondence addressed to Danielle Foss, Spark White Products, from US Merchant Systems.  The letter stated that in the month of March 2014, the account had a chargeback rate of 17.70% by dollar volume, and 6.56% by count. This letter is included with this attachment as **Attachment T**.

35. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, I observed an Operating Agreement for Spruce River, LLC.  It appears to be signed by Blair McNea on behalf of Hollywood Pro Smile, and next to the signature reads "Percent Interest: 99%."  The agreement is also signed by Jamie Hayden, and next to that signature reads "Percent Interest: 1%."  This agreement is included with this declaration as **Attachment U**.

36. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, I observed a letter from Anthony Carson, Night Watch Group, LLC, stating that Blair McNea is authorized to open a checking account for the entity.  This letter is included with this declaration as **Attachment V**.

37. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, I observed handwritten charts showing which brands and which resellers worked for which Blue Rock entities.  These are included with this declaration as **Attachment W**.

38. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, I observed a printed PowerPoint presentation, given by Shane

Lynch of Verifi, to Blue Rocket Brands, Jenny Johnson, CEO, Danielle Foss, SVP, Megan Goodman-Arndt, Director of Merchant Processing Operations, and Seth Davies, Manager of Merchant Processing Business Development.  A copy of this presentation is included with this declaration as **Attachment X**.

39. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, in the workspace belonging to Lindsay Martinez, I located consumer complaints submitted to the Better Business Bureau and to various states' Attorney Generals.  I also observed a chart tracking complaints by entity.  These are included with this declaration as **Attachment Y**.

40. One office was identified as the office of Emily Springmann, Director of Traffic for Blue Rocket Brands.  Based on my review of the documents in that office and on the premises, and my work on this investigation, I have observed that Emily Springmann is Emily McEvoy's maiden name.

41. In the office of Jenny Johnson, CEO of RevLive, I found a Chase Credit Card issued to Blair W. McNea, Elation LLC.  There was also a whiteboard in Jenny Johnson's office, which read: "Following threat policy," "BBB/AG complaints," "Refund policy," "Adding value/empathetic statements."  The whiteboard also had a heading, "GoLive," and the last item on that list read "hot mids – offer maps."  There were handwritten notes discussing the merchant companies, including one reading "Need EIN & articles of org & cert of good standing (IN)" and another listing "Arizona Resellers," which list Blue Rocket Brands entities, with handwritten notations indicating where those entities are incorporated.  There were notes listing three banks and brands under each bank.  There were notes titled "Blair meeting," which read "Entity set up – Reseller/product, articles of org, SS4, Register the

entity."  There were notes in Ms. Johnson's office, which read "[r]educe complaints "BBB-AG-FTC," "Rebranding – hot to do – do often, 100 bbb complaints – rebrand."  I observed handwritten notes which read "Never put same product at bank" and "never same product and reseller at same bank."  The reseller lists and handwritten notes are included with this declaration as **Attachment Z**.

42. In the office of Rya Tillman, Director of Client Success, I observed an email from Jenny Johnson, jenny@revlive.net, to Rya Tillman, asking for a ranking of the importance of "FFQ's, saves/reduced continuity, cancel rate and following the offer map" for a training for RevLive agents.  I observed an active client list.  I observed a RevLive Service Order.  Under "Service Specifications," four services appear on the standard form:  "Live Customer Service," "Attorney General Handling," "Better Business Bureau Handling," and "Email Services."  This order indicates that "Attorney General Handling" will cost $50.00 per, and "Better Business Bureau Handling" will cost $15.00 per.  I observed a document titled "Threat Protocol" which outlined refund policies in response to types of "threats" made by consumers.  The client list, the addendum to the RevLive Service Order, and the Threat Protocol are included with this declaration as **Attachment AA**.

43. The Receiver's personnel opened the shred bin at 2011 Cherry Street, and handed FTC staff some correspondence that was found in the shred bin.  This included correspondence regarding charge disputes in the shredder.  These are included with this declaration as **Attachment AB**.

44. In the corner, on the floor, I observed a pile of consumer complaints submitted directly to the defendants. These are included with this declaration as **Attachment AC**.

**6260 Lookout Road**

45. I reviewed the protocol for collecting evidence during an immediate access, outlined in paragraphs 10 and 12 above, with FTC Paralegal Jennifer Yadoo.  Under my direction, Jennifer Yadoo entered the premises at 6260 Lookout Road, Boulder, CO 80301.  She collected evidence, recorded her observations, and provided this information to me. She reviewed and collected paper documents and delivered these documents to my custody.

46. FTC staff at this location used the names on the telephones, and the names on documents they reviewed, to determine who occupied each office.

47. The entry to this location included an address plate, which read "1st Floor, 110 RevGuard," "2nd Floor, 210 RoiRunner/Elation."  A photograph of this is attached as **Attachment AD**.

48. FTC staff reviewed documents located in an office identified as the office of John Petraglia.  A page titled "Understanding Customers" read "For trial/continuity nutra/health and beauty, 95% of customer interactions related to cancelling/refund," "Have anxiety prior to call," "Preparing for a 'fight'," and "Want non-confrontation and quick remedy."  A RevGuard sales script states: "Typical results are a $5 increase in profit per customer and 23% lower chargebacks."  Photographs of the items are included with this declaration as **Attachment AE**.

49. In an office identified as the office of Brooks Arbogast, FTC staff reviewed a RevGuard document titled "Blue Rocket Konnektive Transition Plan" that references "[e]arly [web] clean cancel[s]" for Blue Rocket Brand entities.  The document notes "Top Volume Brands: Whitening Coach, Bella at Home, Spark Whitening, and Smile Pro Direct."  A photograph of this document is included with this declaration as **Attachment AF**.

50. In a file room in the second floor suite, there were redwelds and binders labeled for the following entities and brands:  20 Min Eyelift, Absolutely Working, Action Pro White, Avalanche White, Bridge Ford, Bright Forever, Bright Fast, Brand Force, Bella Clear, Boulder Creek, Bella Brite, Brass Triangle, Beauty By Provence, Blizzard White, Dental Pro At Home, Desert Gecko, Doing What's Possible, Eyepothesis, Eyes Have It, Juniper Solutions, Knockout White, Hydra White, How & Why, Minoxigen, Mint House, Owl Marketing, Open Waters, Ortho White, Prana Nutrition, Rev Mountain, Snow Sale, Slim Splash, Summer Summit, Sassy Smile, September Sunrise, Sandstone Beach, Solid Ice, Spark Whitening, Smile Pro Direct, SkinnyIq, Thunder Avenue, Thin Action, Titan White, Trim XT, The Ultimate Facial, Youthefx, Wave Rock, Whitening Fast, Whitening Fast, White Flash, Wild Farms, Walnut Street, and University & Folsom. Photographs of these items are included with this declaration as Attachment **AG**.

51. In an office identified as the office of Rachael McNea, there was a document dated June 5, 2017, titled "2.0 Client User Names."  This document listed RevGuard clients and their corresponding login information.  A photograph of this document is included with this declaration as **Attachment AH**.

52. In an office identified as the office of Ryan Reichenbach, there was a document on the wall listing contacts at Convertis Marketing, RevMountain, and RevGuard.  A photograph of this document is included with this declaration as **Attachment AI.**

53. In an office identified as the office of Aimee Patterson, there is a whiteboard titled "Partnerships," which notes that the results include "increase profit on every customer by $8 per step...lower chargebacks by 23%...lower refunds & live CS."  A photograph of this whiteboard is included with this declaration as **Attachment AJ.**

54. In an office identified as the office of Abby Hawkins, there is a whiteboard titled "Invoicing Every Monday and on the 1st and 16th." This lists the companies RevGuard, RevGo (Roadrunner B2C), RevMountain, ROIRunner, Convertis, and Juniper, along with their banks. There are also banker's boxes labeled RevGuard 2015, Convertis, Juniper 2016, and RevGuard 2016. Photographs of this whiteboard and the boxes are included with this declaration as **Attachment AK.**

55. In an office identified as the office of Blair McNea, there is a whiteboard listing the trial prices. FTC staff also observed Blair McNea's business card for RevGuard. Photographs of these items are included with this declaration as **Attachment AL**.

56. In a filing cabinet in the communal workspace of the second floor suite that contained Blair McNea's office, there was an administrative citation from the State of Utah, Department of Commerce, Division of Consumer Protection. This citation is included with this declaration as **Attachment AM**.

57. I reviewed the Will of Blair W. McNea found in his office, and confirmed that Rachael Ann McNea is his wife. Taylor Madison McNea is the child of Blair W. McNea. Marilyn Ruth McNea is the mother of Blair W. McNea.

58. FTC staff did not observe an office or workstations occupied by Taylor McNea or Marilyn McNea at either 6260 Lookout Road or 2011 Cherry Street.

### Evidence from Computers

58. FTC forensic examiners imaged the computers of Blair McNea and Danielle Foss, among others. *See* PX18 and PX19. The forensic examiners and FTC litigation support loaded the images of McNea's and Foss's computers into the FTC's document review software. FTC staff accessed these documents via the document review software. Documents obtained from

McNea's computer are included with this declaration as **Attachments AN-BD**.  Documents obtained from Foss's computer are included with this declaration as **Attachments BE-BJ**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, DC this  11th  day of  August  2017.

Crystal D. Ostrum