# PX17

## PX17 Attachment J

## Employee lease agreement obtained from office of Christy Blackburn

## EMPLOYEE LEASE AGREEMENT

THIS EMPLOYEE LEASE AGREEMENT ("Agreement"), dated effective February 1st, 2015, (the "Effective Date") is between RevLive!, LLC (the "**Company**"), RevMountain, LLC, a Nevada limited liability company ("**RevMountain**"), ROIRunner, LLC, a Nevada limited liability company ("**ROIRunner**"), Cherry Blitz, LLC, a Nevada limited liability company ("**Cherry Blitz**"), RoadRunnerB2C, LLC d/b/a RevGo, a Nevada limited liability company ("**RevGo**"), Wheeler Peak Marketing, LLC, a Nevada limited liability company ("**Wheeler Peak**"), Salamonie River, LLC, an Indiana limited liability company ("**Salamonie River**"), Wave Rock, LLC, an Arizona limited liability company ("**Wave Rock**"), Blue Rocket Brands, LLC, a Colorado limited liability company ("**Blue Rocket**"), and Institute For Virtual Education, LLC a Wyoming limited liability company ("**IVE**") and such other companies which, by mutual agreement, shall be added from time to time (collectively referred to herein as the "**Leasing Companies**"), and Jenny Johnson ("**Executive**").

## RECITALS

**WHEREAS** the Company employs the Executive as the President of the Company;

**WHEREAS** the Executive is a Manager of the Company and is a Manager of the Leasing Companies;

**WHEREAS** the Company and the Executive desire that the Executive perform duties similar to those she performs for the Company for the Leasing Companies;

**WHEREAS** the Company has agreed that it will supply to the Leasing Companies assistance by leasing the Executive to the Leasing Companies in accordance with the terms and conditions of this Agreement.

IN CONSIDERATION of the mutual and unilateral covenants, obligations and promises set out within this Agreement, the parties agree as follows:

1. INCORPORATION OF RECITALS. The parties hereby expressly incorporate the Recitals set forth above, which are made material terms of this Agreement.

2. DUTIES AND RESPONSIBILITIES OF THE COMPANY.

(a) The Company agrees to lease the Executive to perform such services as required by the Leasing Companies in her capacity as President of each of the Leasing Companies to be supervised by the Managers of the Leasing Companies during the period set forth herein.

(b) The Company agrees to pay on behalf of the Leasing Companies the compensation and benefits of the Executive, including all applicable payroll taxes and workers' compensation and unemployment insurance premiums.

(c) The Company agrees to maintain and, in accordance with applicable laws, make available to the Leasing Companies at all reasonable times all records, as required by the Leasing Companies, a fiscal intermediary, governmental agency, or any other party to whom billings are rendered for services hereunder.

3. DUTIES AND RESPONSIBILITIES OF THE LEASING COMPANIES.

(a) The Leasing Companies are responsible for supervising the performance of the Executive, including supervision of both the services accomplished as well as the details and means by which the services are accomplished.

(b) The Leasing Companies agree to provide all equipment and supplies necessary for the Executive to provide services hereunder, provided, however, that the Executive shall be responsible for advising the Leasing Companies as to the inadequacy, disrepair or need for replacement or reorder of such supplies and equipment.

(c) From time to time, additional Leasing Companies may be organized and existing Leasing Companies may be wound up. The parties hereby agree that addenda to this Agreement may be added by mutual agreement of the parties. The purpose of such addenda will be to reflect the relationship of the parties to any newly organized or wound up Leasing Companies as may be necessary from time to time.

4. EMPLOYMENT STATUS.

(a) For the avoidance of doubt the Executive shall at all times be and remain an employee of the Company. Notwithstanding the foregoing, during the course of providing services to the Leasing Companies pursuant to this Agreement, the Executive shall report to and act upon the instructions of the Manager(s) of the Leasing Companies, or such person(s) as the Manager(s) shall from time to time nominate.

(b) The Executive, in consultation with the Manager(s) of the Leasing Companies, shall devote such time reasonably deemed necessary to her duties as President of each of the Leasing Companies.

(c) The Leasing Companies are bound to the terms of that certain Employment Agreement by and between RevLive! and Executive. This Agreement is appended to the Employment Agreement as Exhibit A.

5. FEES.

(a) During the term of this Agreement, unless earlier terminated as set forth below, for all services rendered by Executive the Leasing Companies shall reimburse the Company as follows:

i. RevMountain shall pay the Company the gross sum of $6,250.00 per month. This monthly payment shall be due to the Company on or before the 15th day of the month in which the payment is due.

ii. Blue Rocket shall pay the Company the gross sum of $7,500.00 per month. This monthly payment shall be due to the Company on or before the 15th day of the month in which the payment is due. Blue Rocket shall reimburse the Company the gross sum of 20% of the Operating Income after taxes. "Operating Income" shall have the same meaning as set forth in the Employment Agreement at § 4(a).

iii. ROIRunner shall reimburse the Company the gross sum of 20% of its Operating Income after taxes.

iv. Cherry Blitz shall reimburse the Company the gross sum of 20% of the Operating Income after taxes.

v. RevGo shall reimburse the Company the gross sum of 20% of the Operating Income after taxes.

vi. Wheeler Peak, Salamonie River, and Wave Rock shall be required to reimburse the Company the gross sum of 20% of the Operating Income after taxes;.

vii. Adaptive Learning Sciences, LLC shall be required to reimburse the Company the gross sum of 20% of the Operating Income after taxes.

(b) The Leasing Companies shall have no obligation to compensate Executive directly for the services rendered by the Executive. Executive hereby acknowledges that the Leasing Companies have no such obligation and that her entire compensation shall be paid by the Company.

6. TERM AND TERMINATION.

(a) The term of this Agreement shall commence on the date first written above and shall continue in full force and effect until terminated pursuant to the provisions of Section 6(b) through 6(f) below.

(b) This Agreement may be terminated by any Party, without cause, upon three months written notice given to the non-terminating party or parties.

(c) In the event of material breach of this Agreement by any Party, the non-defaulting party or parties may terminate this Agreement by giving the breaching party thirty (30) days prior written notice, provided that, upon receipt of such notice, the breaching party shall have thirty (30) days to cure such breach.

(d) This Agreement shall also terminate immediately in the event the Executive dies, becomes disabled, or separates from the Company as set forth in Section 6 of Executive's Employment Agreement with the Company. This Agreement is appended to the Employment Agreement as Exhibit A.

(e) This Agreement shall also terminate immediately in the event of voluntary or involuntary bankruptcy or similar insolvency actions by or against any Party.

3

(f)     Termination of this Agreement shall not affect the rights and obligations of the Parties arising prior to the effective date of such termination.

7.     INDEPENDENT CONTRACTOR.  This Agreement shall not create a joint venture, partnership or other joint business relationship. The Company is not exclusively limited to providing professional employees to the Leasing Companies, and is entitled to provide employees and/ or services to other entities. The Company agrees to indemnify and hold the Leasing Companies harmless from any and all taxes, penalties and interest arising from the Company's failure to pay, as they become due, all federal and state taxes due and payable on the compensation paid to the Company. In performing the services hereunder, the Executive is acting as a leased employee of the Leasing Companies.

8.     INDEMNIFICATION.

(a)     Agreement to Indemnify. The Company and the Leasing Companies (the "Indemnifying Party") each hereby agrees to indemnify, protect, defend and save harmless each other (the "Indemnitee") and their respective parent, subsidiaries, affiliates, employees, proprietors, partners, shareholders, directors, predecessors, successors and assigns (hereinafter collectively referred to as "Indemnitees"), to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, against any and all liability and loss suffered and expenses (including attorneys' fees) judgments, fines, excise taxes assessed or penalties and amounts paid in settlement actually and reasonably incurred by Indemnitee in connection with any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including an action by or in the right of Indemnifying Party), to which Indemnitee is, was or at any time becomes a party, to the extent caused by any negligent or willful act or omission on the part of the Indemnifying Party, its agents, employees, or subcontractors in the performance of services hereunder.

(b)     Exclusion. The indemnification and any other indemnification under this Agreement does not apply to the extent of the intentional misconduct, illegal acts or omissions or willful, reckless, or grossly negligent actions or omissions of the Indemnitees, their officers or employees.

(c)     Expenses. The expenses (including attorneys' fees) actually and reasonably incurred by Indemnitee in defending any proceeding and any judgments, fines or amounts to be paid in settlement shall be advanced by the Indemnifying Party at the request of the Indemnitee.

(d)     Limitation. No indemnity pursuant to this Section Eight shall be paid by the Indemnifying Party (i) for payment actually made to Indemnitee under a valid and collectible insurance policy, except in respect to any excess beyond the amount of payment under such insurance; or (ii) for any amount actually paid to Indemnitee by the Indemnifying Party pursuant to applicable law or otherwise not pursuant to this Section Eight.

(e)     LIMITATION OF LIABILITY.  IN NO EVENT SHALL EITHER PARTY'S TOTAL LIABILITY RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, WHETHER BASED ON BREACH OF WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, EXCEED THE

ACTUAL AMOUNT OF THE FEES PAID TO EITHER PARTY, UP TO, AND INCLUDING, THE DATE THE LIABILITY WAS INCURRED, UNDER THIS AGREEMENT.

9. NOTICE. Any and all notices and other communications hereunder shall be in writing addressed to the Company and the Leasing Companies at the addresses specified below or such other addresses as either of the Parties may direct by notice given in accordance with this section, and shall be delivered in one of the following manners (i) by personal delivery, in which case notice shall be deemed to have been duly given when delivered; (ii) by certified mail, return receipt requested, with postage prepaid, in which case notice shall be deemed to have been duly given on the date indicated on the return receipt; (iii) by reputable delivery service (including, by way of example and not limitation, Federal Express, UPS and DHL) which makes a record of the date and time of delivery, in which case notice shall be deemed to have been duly given on the date indicated on the delivery service's record of delivery; or (iv) by fax transmission to the fax numbers given below, with confirmation of good receipt and confirmed by letter to the addresses set forth below, in which case notice shall be deemed to have been duly given on the date indicated fix the confirmation of fax transmission (or the next Business Day if such date is not a Business Day or the transmission is made after business hours):

If to **The Company**:

Giovanni M. Ruscitti, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

If to The **Leasing Companies:**

Giovanni M. Ruscitti, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

If to **Executive:**

Jenny Johnson


10. AGREEMENT TO PERFORM NECESSARY ACTS. Each Party agrees to perform any further acts and to execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

11. ENTIRE AGREEMENT. The Parties intend that the terms of this Agreement and the terms of the Employment Agreement, to which this Agreement is appended as Exhibit A, shall be the final expression of the Agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement shall constitute the complete and exclusive statement of its terms and that no

extrinsic evidence whatsoever may be introduced in any judicial, administrative, arbitral, or other legal proceeding involving this Agreement.

12. AMENDMENT. The provisions of this Agreement may be waived, altered, or amended, in whole or in part, only with the written mutual agreement of the Parties. Any delay or failure to exercise any right, remedy, or power hereunder shall not operate as a waiver thereof.

13. ASSIGNMENT; SUCCESSORS AND ASSIGNS. Each Party agrees they will not assign, sell, transfer, delegate, or otherwise dispose of, whether voluntarily or involuntarily, or by operation of law, any right or obligation under this Agreement except in accordance with the terms hereof. Any purported assignment, transfer, or delegation in violation of this section shall be null and void. Nothing in this Agreement shall prevent the merger of any Party with or into any other business organization, or the sale by any Party of all or substantially all of its property or assets. Subject to the foregoing limits on assignment and delegation, this Agreement shall be binding upon and shall insure to the benefit of the Parties and their respective heirs, executors, administrators, successors, and assigns. Except for those enumerated above, this Agreement does not create, and shall not be construed as creating, any rights enforceable by any person or entity not a party to this Agreement.

14. SEVERABILITY. If any provision of this Agreement, or the application thereof to any person or circumstances, shall be held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as applied to other persons and circumstances shall remain in full force and effect.

15. COUNTERPARTS. This Agreement and any exhibit hereto may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16. INJUNCTIVE RELIEF. Each Party acknowledges that in the event of a breach of this Agreement the damage to the non-breaching party would be irreparable and difficult to estimate, making any remedy at law or in damages inadequate. Thus, in addition to any other right or remedy available to it, a Party shall be entitled to an injunction restraining such breach or threatened breach and for specific performance of any provision of the Agreement, and in either case, no bond or other security shall be required.

17. GOVERNING LAW. The validity, interpretation, enforceability, and performance of the Agreement shall be governed by and construed in accordance with the laws of the State of Colorado.

18. ALTERNATIVE DISPUTE RESOLUTION.

(a) Alternative Dispute Resolution Process. Except as provided below, any and all disputes arising under or related to this Agreement which cannot be resolved through negotiations between the Parties shall be submitted to binding arbitration. If the Parties fail to reach a settlement of their dispute within thirty (30) days after the earliest date upon which one of the Parties notifies the other(s) in writing of the existence of and its desire to attempt to resolve the dispute, then the dispute shall be promptly submitted to arbitration by a single arbitrator through the Judicial Arbiter Group of Denver, Colorado ("JAG"), any successor of the Judicial Arbiter

Group, or any similar arbitration provider who can provide a former judge to conduct the arbitration if JAG is no longer in existence. The arbitrator shall be selected by JAG, if possible, on the basis of his or her expertise in the subject matter(s) of the dispute. The decision of the arbitrator shall be final, non-appealable and binding upon the Parties, and it may be entered in any court of competent jurisdiction; provided, however, that any party to the arbitration proceeding may seek a court order vacating the decision of the arbitrator in accordance with the provisions of and on the grounds set forth in C.R.S. § 13-22-214 and/or a modification or correction of the arbitrator's award in accordance with the provisions of C.R.S. §§ 13-22-211 or 13-22-215, and may take an appeal from court orders related to the arbitration proceeding or award as provided in C.R.S. § 13-22-221.

(b) <u>Location</u>. The arbitration shall take place in Denver, Colorado. The arbitrator shall be bound by the laws of the State of Colorado applicable to the issues involved in the arbitration and all Colorado rules relating to the admissibility of evidence, including, without limitation, all relevant privileges and the attorney work product doctrine. Discovery shall be permitted and shall be completed in accordance with the time limitations prescribed in the Colorado Rules of Civil Procedure, unless extensions of such time limitations are approved by all parties to the arbitration or are ordered by the arbitrator on the basis of strict necessity adequately demonstrated by the party requesting an extension of time. The arbitrator shall have the power to grant equitable relief where available under Colorado law, and shall be entitled to make an award of punitive damages where such an award is permitted by Colorado law. The arbitrator shall issue a written opinion setting forth his or her decision and the reasons therefore within thirty (30) days after the arbitration proceeding is concluded. The obligation of the parties to submit any dispute arising under or related to this Agreement to arbitration as provided in this section shall survive the expiration or earlier termination of this Agreement. Notwithstanding the foregoing, any party to this Agreement may seek to obtain an injunction or other appropriate relief from a court to preserve the status quo with respect to any matter pending conclusion of the arbitration proceeding, but no such application to a court shall in any way be permitted to stay or otherwise impede the progress of the arbitration proceeding.

(c) <u>Attorneys' Fees</u>. In the event of any arbitration or litigation being filed or instituted between the parties concerning this Agreement, the prevailing party will be entitled to receive from the other party or parties its attorneys' fees, witness fees, costs and expenses, court costs and other reasonable expenses, whether or not such controversy, claim or action is prosecuted to judgment or other of relief. The "prevailing party" is that party which is awarded judgment or other legal or equitable relief as a result of trial or arbitration, or who receives a payment of money from the other party in settlement of claims asserted by such party. If both parties receive a judgment, settlement payment or other award or relief, the court or the arbitrator shall determine which party is the prevailing party, taking into consideration the merits of the claims asserted by each party, the relative values of the judgments, settlements or other forms of relief received by each party, and the relative equities between the parties.

(THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK)

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of this 1st day of February 2015.

REVLIVE!, LLC

By: _____
Manager

ROIRUNNER, LLC

By: _____
Manager

ROADRUNNERB2C, LLC D/B/A REVGO

By: _____
Manager

SALAMONIE RIVER, LLC

By: _____
Manager

BLUE ROCKET BRANDS, LLC

By: _____
Manager

REVMOUNTAIN, LLC

By: _____
Manager

CHERRY BLITZ, LLC

By: _____
Manager

WHEELER PEAK MARKETING, LLC

By: _____
Manager

WAVE ROCK, LLC

By: _____
Manager

ADAPTIVE LEARNING SCIENCES, LLC

By: _____
Manager

EXECUTIVE

By: _____
Jenny Johnson

9