# PX17

## PX17 Attachment Q

## Reseller Agreement obtained from office of Lindsey Martinez and Seth Davies

# RESELLER AGREEMENT

**THIS RESELLER AGREEMENT** ("**Agreement**") is made and entered into as of the 1st of November, 2015 (the "**Effective Date**"), by and between Bloom Allure at Home, An Arizona limited liability company ("**Product Company**"), having offices at c/o Wave Rock, LLC 7702 E. Doubletree Ranch, Ste. 300 Scottsdale, AZ 85258 and UNIVERSITY AND FOLSOM, LLC, a Colorado company ("Reseller"), having offices at 9800 Mount Pyramid Court, #400, Englewood, CO 80112.

**Whereas**, Product Company sells a variety of health and beauty products;

**Whereas**, Reseller is in the business of reselling products to customers via the Internet;

**Whereas**, Product Company desires to engage the Reseller for the purposes of marketing and selling Product Company's products in the United States of America, except for Colorado and Utah; and

**Therefore**, in consideration of the following conditions set forth in this Agreement, the parties agree to the following.

1. **DEFINITIONS**

"**Customer**" means an end-user of a Product.

"**Products**" means the products in the then-current product list, a current copy of which is attached as Exhibit A, which is incorporated herein. Product Company may add to, delete from, or otherwise modify the Products on the Product List at any time.

"**Territory**" means the United States of America, except for Colorado and Utah.

2. **PRODUCT TERMS**

2.1 **APPOINTMENT**. Product Company hereby appoints Reseller, and Reseller accepts such appointment, to act as a non-exclusive reseller of Products to Customers located in the Territory.

2.2 **PRICES**. The prices paid by Reseller to Product Company for Products shall initially be as set forth in Exhibit A. Product Company shall have the right, at any time, to change, alter, or amend Product prices at its discretion without notice to the Reseller. Prices are exclusive of all taxes, insurance, and shipping and handling charges, which are Reseller's sole responsibility.

3. **ORDERING AND PAYMENT**

3.1 **ORDERS**. Orders shall be in writing and be subject to acceptance by Product Company. The terms and conditions of each order shall be as provided by this Agreement, and the provisions of either party's form of purchase order, acknowledgment or other business forms will not apply to any order notwithstanding the other party's acknowledgment or acceptance of such form.

3.2 **SHIPMENT**. Shipment will be F.O.B. Origin (Incoterms 2000) Product Company's specified warehouse ("**Delivery Point**"), freight collect. All freight, insurance, and other shipping expenses from Delivery Point, as well as any expenses related to Reseller's special packing requests, will be borne by Reseller unless otherwise agreed to in writing by Product Company.

3.3 **PAYMENT**. Subject to compliance with Product Company's credit requirements, payments on orders will be due and payable in full fifteen (15) days from the invoice date. If Reseller is in default of its payment obligations, Product Company shall give written notice of such default to Reseller. Upon receipt of such default notice, Reseller shall have five (5) days to cure. If Reseller fails to cure within the five (5) day notice period, Reseller shall pay monthly service charges of one percent (1%) per month for any past due amounts. Product Company may in its sole discretion change Reseller's credit terms.

3.4. **RECORDS; AUDIT RIGHTS.** Reseller shall maintain complete and accurate books and records with respect to distribution of the Products, or otherwise pertaining to the payment of fees hereunder, until at least three (3) years after termination of this Agreement. Product Company shall at any time, on at least five (5) business days' prior notice to Reseller, be entitled to retain an accounting firm to audit the books and records of Reseller. Such accounting firm shall execute a nondisclosure agreement prior to any such audit. Any such audit shall be performed at Product Company's expense during normal business hours. In the event of any underpayment of fees, Reseller shall promptly remit to Product Company all amounts due.

3.5. **TAXES.** All payments to Product Company hereunder shall be net of all sales, use, and other taxes which may be imposed upon such payments. Reseller will be solely responsible for the payment of all taxes with respect to its purchase and resale of Products hereunder. Reseller will indemnify and hold Product Company harmless from any obligation to pay to any governmental entity any employer statutory taxes, withholding taxes, social security taxes or other taxes, levies or duties in connection with Reseller's performance under this Agreement, and from any and all damages, losses, liabilities, and expenses (including reasonable attorneys' fees and costs of litigation) arising out of or resulting therefrom.

4. **DEFECTIVE PRODUCT RETURNS.** Returns of Products will be processed through return processing centers in accordance with Product Company's company policies. Return shipment charges via unauthorized carriers and all customs or broker's fees are the responsibility of Reseller.

5. **RESELLER'S OBLIGATIONS.**

5.1 **MARKETING DEVELOPMENT AND DILIGENCE**. Reseller shall use its best efforts to promote and market the Products. Except as expressly set forth herein, Reseller shall be solely responsible for all costs and expenses related to the advertising, marketing, promotion, and distribution of the Products and for performing its obligations hereunder.

5.2 **RESELLER COVENANTS**. Reseller will: (i) conduct business in a manner that reflects favorably at all times on Products and the good name, goodwill and reputation of Product Company; (ii) avoid deceptive, misleading or unethical practices that are or might be detrimental to Product Company or Product Company Products; (iii) make no false or misleading representations with regard to Product Company or Product Company Products; (iv) not publish or employ, or cooperate in the publication or employment of, any misleading or deceptive advertising material with regard to Product Company or Product Company Products; and (v) shall limit all representations, warranties, or guarantees to Customers or to the trade with respect to the specifications, features, or

capabilities of Product Company Products to those that are contained in the literature distributed by Product Company.

5.3 **NO COMPETITIVE PRODUCTS.** Reseller shall not include in its portfolio of marketed products any products whose sale is competitive with the Products, without the express written consent of Product Company.

6. **USE OF TRADEMARKS AND PROPRIETARY NOTICES.**

6.1 **PROPERTY RIGHTS.** Reseller acknowledges and agrees that, as between Reseller and Product Company, Product Company owns all right, title, and interest in and to all of Product Company's patents, trademarks, trade names, inventions, copyrights, know-how, and trade secrets relating to the design, manufacture, and marketing of the Products. During the term of this Agreement, Reseller may use the trademarks, trade names, logos, and designations used by Product Company for Product Company Products solely in connection with Reseller's advertisement and promotion of Product Company Products, in accordance with Product Company's then-current trademark usage policies.

6.2 **PROPRIETARY NOTICES.** Company will ensure that all Products distributed by Reseller will incorporate all copyright or other proprietary notices in the same manner that Product Company incorporates such notices in the Products or in any other manner reasonably requested by Product Company. Reseller shall not, remove, alter, cover, or obfuscate any copyright notices or other proprietary rights notices placed on the Products or their packaging.

6.3 **RESTRICTIONS.** Reseller shall not alter or remove any of Product Company's trademarks, marks, or trade names (collectively "Trademarks") affixed to the Products by Product Company. Except as set forth in this Section 6.3, nothing contained in this Agreement shall grant or shall be deemed to grant to Reseller any right, title, or interest in or to Product Company's Trademarks. At no time during or after the term of this Agreement shall Reseller challenge or assist others to challenge Product Company's Trademarks (except to the extent such restriction is expressly prohibited by applicable law) or the registration thereof or attempt to register any trademarks, marks, or trade names confusingly similar to those of Product Company. Upon termination of this Agreement, Reseller shall immediately cease to use all Product Company's Trademarks, provided however, that Reseller may continue to advertise and promote the Products still in Reseller's inventory using Product Company's trademarks and trade names until depletion.

6.4 **GOODWILL.** Any and all goodwill arising from Reseller's use of the Product Company Trademarks shall inure solely to the benefit of Product Company when and as, on an ongoing basis, such acquisition of goodwill occurs, as well as at the expiration or termination of this Agreement, without any separate payment or other consideration of any kind to Reseller, and Reseller agrees to take all such actions necessary to effect such vesting.

6.5 **BRANDING.** Upon Product Company's request, Reseller shall place one or more of Product Company's Trademarks on any promotional materials or advertisements for the Products.

7. **CONFIDENTIAL INFORMATION**

7.1 **DEFINITION.** As used in this Agreement, the term "Confidential Information" shall mean any information disclosed by one party to the other pursuant to this Agreement which is in written, graphic, machine readable, or other tangible form and is marked "Confidential,"

"Proprietary," or in some other manner to indicate its confidential nature. Confidential Information may also include oral information disclosed by one party to the other pursuant to this Agreement.

7.2 **GENERAL.** During the term of this Agreement and for a period of three (3) years thereafter, each party shall treat as confidential all Confidential Information of the other party, shall not use such Confidential Information except as expressly set forth herein or otherwise authorized in writing, shall implement reasonable procedures to prohibit the disclosure, unauthorized duplication, misuse or removal of the other party's Confidential Information and shall not disclose such Confidential Information to any third party except as may be necessary and required in connection with the rights and obligations of such party under this Agreement, and subject to confidentiality and nonuse obligations at least as protective as those set forth herein. Without limiting the foregoing, each of the parties shall use at least the same procedures and degree of care which it uses to prevent the disclosure of its own confidential information of like importance to prevent the disclosure of Confidential Information disclosed to it by the other party under this Agreement, but in no event less than reasonable care. The parties further agree to keep confidential the terms and conditions of this Agreement.

7.3 **EXCEPTIONS.** Notwithstanding the above, neither party shall have liability to the other with regard to any Confidential Information of the other which: (i) was generally known and available in the public domain at the time it was disclosed or becomes generally known and available in the public domain through no fault of the receiving party; (ii) was known to the receiving party at the time of disclosure; (iii) is disclosed with the prior written approval of the disclosing party; (iv) was independently developed by the receiving party without any use of the disclosing party's Confidential Information; or (v) becomes known to the receiving party from a source other than the disclosing party without breach of this Agreement by the receiving party and otherwise not in violation of the disclosing party's rights. In addition, the receiving party shall be entitled to disclose the other party's Confidential Information to the extent such disclosure is required by order or requirement of a court, administrative agency, or other governmental body, provided however, that the receiving party shall provide prompt notice thereof to the disclosing party to enable the disclosing party to seek a protective order or otherwise prevent or restrict such disclosure.

7.4 **EMPLOYEE AGREEMENTS.** Each party shall obtain the execution of nondisclosure agreements with its employees, agents and consultants having access to Confidential Information of the other party, and shall diligently enforce such agreements.

7.5 **REMEDIES.** If either party breaches any of its obligations with respect to confidentiality and unauthorized use of Confidential Information hereunder, the other party shall be entitled to equitable relief to protect its interest therein, including but not limited to injunctive relief, as well as money damages.

8. **TERM AND TERMINATION**

8.1 **TERM.** This Agreement shall commence upon the Effective Date and shall continue in force for an initial term of one (1) year unless terminated earlier under the terms of this Section 8. Thereafter, this Agreement may be renewed for successive one (1) year terms unless terminated by either party as set forth herein.

8.2 **TERMINATION.** This Agreement may be terminated by Product Company immediately upon notice with or without cause.

8.3 **TERMINATION FOR INSOLVENCY**. At the option of Product Company, this Agreement shall terminate immediately if: (i) a receiver is appointed for Reseller or its property; (ii) Reseller becomes insolvent or unable to pay its debts as they mature or ceases to pay its debts as they mature in the ordinary course of business, or makes an assignment for the benefit of creditors; (iii) any proceedings are commenced by or for Reseller under any bankruptcy, insolvency or debtors' relief law; (iv) any proceedings are commenced against Reseller under any bankruptcy insolvency or debtor's relief law, and such proceedings have not been vacated or set aside within sixty (60) days from the date of commencement thereof; or (v) the Reseller commences to dissolve under applicable corporate law statutes.

8.4 **EFFECT OF TERMINATION/EXPIRATION**. In the event this Agreement is terminated or expires:

(i) Reseller's rights under this Agreement shall terminate, provided, however, that Reseller shall have the right to distribute and sell its inventory of Products in existence as of the date of termination. All Product-related materials provided hereunder will remain the property of Product Company. Within thirty (30) days after the termination of this Agreement, Reseller will prepare all such items in its possession or control for shipment, or destroy such materials as Product Company may direct.

(ii) Product Company shall have the right but not the obligation to repurchase unsold Products in Reseller's inventory. Within ten (10) days following termination/expiration, Reseller shall furnish Product Company with an inventory of unsold Products. Within ten (10) days after receipt of such inventory, Product Company shall notify Reseller in writing whether or not Product Company intends to repurchase from Reseller all or part of such inventory at the original invoice price (less discounts, price protection or other credits previously granted). Product Company shall pay all transportation and other costs connected with shipping such Products to Product Company.

(iii) Neither party will retain any copies of Confidential Information which may have been entrusted to it by the other party, and within thirty (30) days of a written request by the other party, an authorized representative of each party shall certify to the other party that all copies of Confidential Information of the other party received hereunder have been returned or destroyed.

(iv) All amounts payable by Reseller to Product Company shall survive termination and become immediately due and payable.

8.5 **LIMITATION**. In the event of termination in accordance with any of the provisions of this Agreement, Product Company shall not be liable to the other because of such termination, for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales or on account of expenditures, inventory, investment, leases or commitments in connection with the business or goodwill of Reseller. Termination shall not, however, relieve either party of obligations incurred prior to the termination.

9. **LIMITATION OF LIABILITY**. IN NO EVENT SHALL THE LIABILITY OF PRODUCT COMPANY AND ITS SUPPLIERS TO RESELLER, OR ANY THIRD PARTY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SUPPLY OF PRODUCTS HEREUNDER, EXCEED THE ACTUAL AMOUNTS PAID BY RESELLER TO PRODUCT COMPANY FOR THE PRODUCTS GIVING RISE TO SUCH DAMAGES, AND PERMISSIBLE BY LAW. IN NO EVENT WILL PRODUCT COMPANY BE LIABLE TO RESELLER OR ANY THIRD PARTY FOR SPECIAL CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING, WITHOUT LIMITATION DAMAGES FOR THE LOSS OF USE OR LOSS OF PROFITS UNDER ANY CAUSE OF ACTION, WHETHER FOR BREACH OF CONTRACT (INCLUDING NEGLIGENCE) OR OTHERWISE, AND WHETHER OR NOT PRODUCT COMPANY OR ITS AGENTS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. NOTHING IN THIS SECTION 9 IS INTENDED TO EXCLUDE OR RESTRICT PRODUCT COMPANY'S LIABILITY FOR DEATH OR PERSONAL INJURY OR

PROPERTY DAMAGE CAUSED BY THE GROSS NEGLIGENCE OF PRODUCT COMPANY OR ITS EMPLOYEES OR AGENTS.

10. **GENERAL**

10.1 **ASSIGNMENT**. Neither party may assign, delegate, or transfer this Agreement, or any of its rights or duties hereunder, without the prior written consent of the other party. Any attempted assignment or delegation in violation of this section shall be void. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties, their successors, and permitted assigns. Notwithstanding the foregoing, Product Company may assign its rights and duties hereunder in connection with a merger, consolidation, spin-off, corporate reorganization, acquisition, or sale of assets of Product Company.

10.2 **GOVERNING LAW**. This Agreement shall be governed by the laws of the State of Arizona (other than its conflicts of law principles). Any claim, controversy, or dispute shall be settled by final and binding arbitration in accordance with the commercial rules of the American Arbitration Association then in effect, in Scottsdale Arizona, or another location, at Sedona Beauty Secret's discretion.

10.3 **INDEPENDENT CONTRACTORS**. In performing their respective duties under this Agreement, each of the parties will be operating as an independent contractor. Nothing contained herein will in any way constitute any association, partnership, or joint venture between the parties hereto, or be construed to evidence the intention of the parties to establish any such relationship. Neither party will have the power to bind the other party or incur obligations on the other party's behalf without the other party's prior written consent.

10.4 **MODIFICATION AND WAIVER**. No modification to this Agreement, nor any waiver of any rights, will be effective unless assented to in writing by the party to be charged, and the waiver of any breach or default shall not constitute a waiver of any other right hereunder or any subsequent breach or default.

10.5 **NOTICES**. All notices, demands, or consents required or permitted under this Agreement shall be in writing. Notice shall be considered delivered and effective (a) when personally delivered; (b) the day following transmission if sent by facsimile followed by written confirmation by registered overnight carrier or certified United States mail; (c) one (1) day after posting when sent by registered private overnight carrier (e.g., DHL, Federal Express, etc.); or (d) five (5) days after posting when sent by certified United States mail. Notices shall be sent to the parties at the addresses set forth on the first page of this Agreement or at such other address as shall be given by either party to the other in writing.

10.6 **PARTIAL INVALIDITY.** If any paragraph, provision, or clause in this Agreement shall be found or be held to be invalid or unenforceable in any jurisdiction in which this Agreement is being performed, the remainder of this Agreement shall be valid and enforceable and the parties shall negotiate, in good faith, a substitute, valid and enforceable provision which most nearly effects the parties' intent in entering into this Agreement.

10.7 **LIMITATION OF ACTION**. Any legal action arising out of this Agreement shall be barred unless commenced within one (1) year of the act or omission giving rise to the action. Such limitation

shall not apply to any actions asserted against Reseller by Product Company arising from any delinquencies in payment for Products.

10.8 **ENTIRE AGREEMENT**. This Agreement and the exhibits which are incorporated by reference constitute the entire and exclusive agreement between the parties hereto with respect to the subject matter hereof and supersede any prior agreements between the parties with respect to such subject matter, and no agreement or understanding varying or extending the same shall be binding upon either party hereto unless in a written document signed by the party to be bound thereby.

10.9 **COUNTERPARTS**. This Agreement may be executed in two (2) or more counterparts, all of which, taken together, shall be regarded as one and the same instrument.

In witness whereof, the parties have caused this Agreement to be executed by their respective authorized representatives as of the Effective Date.

**Reseller:**
**University and Folsom, LLC**

_______________________
By: Marnie Baesler
Its: Manager

**Product Company:**
**Bloom Allure at Home, LLC**

_______________________
Wave Rock, LLC
Its: Manager

_______________________
By: Honey Lake, LLC
Manager of Wave Rock, LLC

_______________________
By: Anasazi Management Partners, LLC
Manager of Honey Lake, LLC

_______________________
By: Blair W. McNea
Manager of Anasazi Management Partners, LLC

## Exhibit A – Product List

**Product Name**: Bloom Allure at Home

**Description**: at home teeth-whitening kit with 22% carbamide peroxide

**Price Per Unit**: $3.11