# EXHIBIT 7

CASE NO. 2:17-cv-02000-APG-GWF

Copy of *Kokesh v. SEC, 137 S. Ct. 1635 (2017)*

Case 2:17-cv-02000-APG-GWF Document 40-8 Filed 08/18/17 Page 2 of 8

Kokesh v. S.E.C., 137 S.Ct. 1635 (2017)
198 L.Ed.2d 86, 85 USLW 4308, Fed. Sec. L. Rep. P 99,733...

KeyCite Yellow Flag - Negative Treatment
Declined to Extend by Securities and Exchange Commission v. Amerindo Investment Advisors Inc., S.D.N.Y., July 14, 2017

137 S.Ct. 1635
Supreme Court of the United States

Charles R. KOKESH, Petitioner
v.
SECURITIES AND EXCHANGE COMMISSION.

No. 16–529.
|
Argued April 18, 2017.
|
Decided June 5, 2017.

**Synopsis**
**Background:** Securities and Exchange Commission (SEC) brought enforcement action against owner of two investment-adviser firms for misappropriation of funds from business development companies in violation of federal securities laws. The United States District Court for the District of New Mexico, Stephan M. Vidmar, United States Magistrate Judge, 2015 WL 11142470, entered final judgment permanently enjoining defendant from violating certain provisions of federal securities laws, ordering disgorgement of profits, and imposing prejudgment interest and a civil penalty. Defendant appealed. The United States Court of Appeals for the Tenth Circuit, Hartz, Circuit Judge, 834 F.3d 1158, affirmed, and certiorari was granted.

[Holding:] The Supreme Court, Justice Sotomayor, held that the five-year statute of limitations for any "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise" applies to claims for disgorgement imposed as a sanction for violating a federal securities law, abrogating *Riordan v. SEC,* 627 F.3d 1230.

Reversed.

*1637 *Syllabus**

The Securities and Exchange Commission (SEC or Commission) possesses authority to investigate violations of federal securities laws and to commence enforcement actions in federal district court *1638 if its investigations uncover evidence of wrongdoing. Initially, the Commission's statutory authority in enforcement actions was limited to seeking an injunction barring future violations. Beginning in the 1970's, federal district courts, at the request of the Commission, began ordering disgorgement in SEC enforcement proceedings. Although Congress has since authorized the Commission to seek monetary civil penalties, the Commission has continued to seek disgorgement. This Court has held that 28 U.S.C. § 2462, which establishes a 5–year limitations period for "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture," applies when the Commission seeks monetary civil penalties. See *Gabelli v. SEC,* 568 U.S. 442, 454, 133 S.Ct. 1216, 185 L.Ed.2d 297.

In 2009, the Commission brought an enforcement action, alleging that petitioner Charles Kokesh violated various securities laws by concealing the misappropriation of $34.9 million from four business-development companies from 1995 to 2009. The Commission sought monetary civil penalties, disgorgement, and an injunction barring Kokesh from future violations. After a jury found that Kokesh's actions violated several securities laws, the District Court determined that § 2462's 5–year limitations period applied to the monetary civil penalties. With respect to the $34.9 million disgorgement judgment, however, the court concluded that § 2462 did not apply because disgorgement is not a "penalty" within the meaning of the statute. The Tenth Circuit affirmed, holding that disgorgement was neither a penalty nor a forfeiture.

*Held*: Because SEC disgorgement operates as a penalty under § 2462, any claim for disgorgement in an SEC enforcement action must be commenced within five years of the date the claim accrued. Pp. 1641 – 1645.

(a) The definition of "penalty" as a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws," *Huntington v. Attrill,* 146 U.S. 657, 667, 13 S.Ct. 224, 36 L.Ed. 1123, gives rise to two principles. First, whether a sanction represents a penalty turns in part on "whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual." *Id.,* at 668, 13 S.Ct. 224. Second, a

Case 2:17-cv-02000-APG-GWF   Document 40-8   Filed 08/18/17   Page 3 of 8

Kokesh v. S.E.C., 137 S.Ct. 1635 (2017)
198 L.Ed.2d 86, 85 USLW 4308, Fed. Sec. L. Rep. P 99,733...

pecuniary sanction operates as a penalty if it is sought "for the purpose of punishment, and to deter others from offending in like manner" rather than to compensate victims. *Ibid.* This Court has applied these principles in construing the term "penalty," holding, *e.g.*, that a statute providing a compensatory remedy for a private wrong did not impose a "penalty," *Brady v. Daly*, 175 U.S. 148, 154, 20 S.Ct. 62, 44 L.Ed. 109. Pp. 1641 – 1643.

(b) The application of these principles here readily demonstrates that SEC disgorgement constitutes a penalty within the meaning of § 2462. First, SEC disgorgement is imposed by the courts as a consequence for violating public laws, *i.e.*, a violation committed against the United States rather than an aggrieved individual. Second, SEC disgorgement is imposed for punitive purposes. Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because "deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e]." *Bell v. Wolfish*, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 60 L.Ed.2d 447. Finally, SEC disgorgement is often not compensatory. Disgorged profits are paid to the district courts, which have discretion to determine how the money will be distributed. They may distribute the funds to victims, but no statute commands them to do so. When an individual is made to pay a noncompensatory sanction to the government as a *1639 consequence of a legal violation, the payment operates as a penalty. See *Porter v. Warner Holding Co.*, 328 U.S. 395, 402, 66 S.Ct. 1086, 90 L.Ed. 1332. Pp. 1642 – 1644.

(c) The Government responds that SEC disgorgement is not punitive but a remedial sanction that operates to restore the status quo. It is not clear, however, that disgorgement simply returns the defendant to the place he would have occupied had he not broken the law. It sometimes exceeds the profits gained as a result of the violation. And, as demonstrated here, SEC disgorgement may be ordered without consideration of a defendant's expenses that reduced the amount of illegal profit. In such cases, disgorgement does not simply restore the status quo; it leaves the defendant worse off and is therefore punitive. Although disgorgement may serve compensatory goals in some cases, "sanctions frequently serve more than one purpose." *Austin v. United States*, 509 U.S. 602, 610, 113 S.Ct. 2801, 125 L.Ed.2d 488. Because they "go beyond compensation, are intended to punish, and label defendants wrongdoers" as a consequence of violating public laws, *Gabelli*, 568 U.S., at 451–452, 133 S.Ct. 1216 disgorgement orders represent a penalty and fall within § 2462's 5–year limitations period. Pp. 1644 – 1645.

834 F.3d 1158, reversed.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

**Attorneys and Law Firms**

Adam Unikowsky, Washington, DC, for Petitioner.

Elaine J. Goldenberg, Washington, DC, for Respondent.

Clinton W. Marrs, Marrs Griebel Law, Ltd., Albuquerque, NM, David A. Strauss, Sarah M. Konsky, Jenner & Block Supreme Court and Appellate Clinic at the University of Chicago Law School, Chicago, IL, Adam G. Unikowsky, Zachary C. Schauf, Jenner & Block LLP, Washington, DC, James Dawson, Jenner & Block LLP, Chicago, IL, for Petitioner.

Sanket J. Bulsara, Acting General Counsel, Michael A. Conley, Solicitor, Jacob H. Stillman, Senior Advisor to the Solicitor, Hope Hall Augustini, Daniel Staroselsky, Senior Litigation Counsels, Sarah R. Prins, Senior Counsel, Securities and Exchange Commission, Washington, DC, Jeffrey B. Wall, Acting Solicitor General, Malcolm L. Stewart, Deputy Solicitor General, Elaine J. Goldenberg, Assistant to the Solicitor General, Department of Justice, Washington, DC, for Respondent.

**Opinion**

Justice SOTOMAYOR delivered the opinion of the Court.

[1] [2] A 5–year statute of limitations applies to any "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." 28 U.S.C. § 2462. This case presents the question whether § 2462 applies to claims for disgorgement imposed as a sanction for violating a federal securities law. The Court holds that it does. Disgorgement in the securities-enforcement context is a "penalty" within the meaning of § 2462, and so disgorgement actions must be commenced within five years of the date the claim accrues.

Case 2:17-cv-02000-APG-GWF   Document 40-8   Filed 08/18/17   Page 4 of 8

Kokesh v. S.E.C., 137 S.Ct. 1635 (2017)
198 L.Ed.2d 86, 85 USLW 4308, Fed. Sec. L. Rep. P 99,733...

I

A

[3] [4] After rampant abuses in the securities industry led to the 1929 stock market crash and the Great Depression, Congress *1640 enacted a series of laws to ensure that "the highest ethical standards prevail in every facet of the securities industry."[1] *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 186–187, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963) (internal quotation marks omitted). The second in the series—the Securities Exchange Act of 1934—established the Securities and Exchange Commission (SEC or Commission) to enforce federal securities laws. Congress granted the Commission power to prescribe " 'rules and regulations ... as necessary or appropriate in the public interest or for the protection of investors.' " *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 728, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). In addition to rulemaking, Congress vested the Commission with "broad authority to conduct investigations into possible violations of the federal securities laws." *SEC v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 741, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984). If an investigation uncovers evidence of wrongdoing, the Commission may initiate enforcement actions in federal district court.

[5] [6] Initially, the only statutory remedy available to the SEC in an enforcement action was an injunction barring future violations of securities laws. See 1 T. Hazen, Law of Securities Regulation § 1:37 (7th ed., rev. 2016). In the absence of statutory authorization for monetary remedies, the Commission urged courts to order disgorgement as an exercise of their "inherent equity power to grant relief ancillary to an injunction." *SEC v. Texas Gulf Sulphur Co.,* 312 F.Supp. 77, 91 (S.D.N.Y.1970), aff'd in part and rev'd in part, 446 F.2d 1301 (C.A.2 1971). Generally, disgorgement is a form of "[r]estitution measured by the defendant's wrongful gain." Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment *a,* p. 204 (2010) (Restatement (Third)). Disgorgement requires that the defendant give up "those gains ... properly attributable to the defendant's interference with the claimant's legally protected rights." *Ibid.* Beginning in the 1970's, courts ordered disgorgement in SEC enforcement proceedings in order to "deprive ... defendants of their profits in order to remove any monetary reward for violating" securities laws and to "protect the investing public by providing an effective deterrent to future violations." *Texas Gulf,* 312 F.Supp., at 92.

In 1990, as part of the Securities Enforcement Remedies and Penny Stock Reform Act, Congress authorized the Commission to seek monetary civil penalties. 104 Stat. 932, codified at 15 U.S.C. § 77t(d). The Act left the Commission with a full panoply of enforcement tools: It may promulgate rules, investigate violations of those rules and the securities laws generally, and seek monetary penalties and injunctive relief for those violations. In the years since the Act, however, the Commission has continued its practice of seeking disgorgement in enforcement proceedings.

[7] This Court has already held that the 5–year statute of limitations set forth *1641 in 28 U.S.C. § 2462 applies when the Commission seeks statutory monetary penalties. See *Gabelli v. SEC,* 568 U.S. 442, 454, 133 S.Ct. 1216, 185 L.Ed.2d 297 (2013). The question here is whether § 2462, which applies to any "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise," also applies when the SEC seeks disgorgement.

B

Charles Kokesh owned two investment-adviser firms that provided investment advice to business-development companies. In late 2009, the Commission commenced an enforcement action in Federal District Court alleging that between 1995 and 2009, Kokesh, through his firms, misappropriated $34.9 million from four of those development companies. The Commission further alleged that, in order to conceal the misappropriation, Kokesh caused the filing of false and misleading SEC reports and proxy statements. The Commission sought civil monetary penalties, disgorgement, and an injunction barring Kokesh from violating securities laws in the future.

After a 5–day trial, a jury found that Kokesh's actions violated the Investment Company Act of 1940, 15 U.S.C. § 80a–36; the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b–5, 80b–6; and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m, 78n. The District

Case 2:17-cv-02000-APG-GWF Document 40-8 Filed 08/18/17 Page 5 of 8

Kokesh v. S.E.C., 137 S.Ct. 1635 (2017)
198 L.Ed.2d 86, 85 USLW 4308, Fed. Sec. L. Rep. P 99,733...

Court then turned to the task of imposing penalties sought by the Commission. As to the civil monetary penalties, the District Court determined that § 2462's 5-year limitations period precluded any penalties for misappropriation occurring prior to October 27, 2004 —that is, five years prior to the date the Commission filed the complaint. App. to Pet. for Cert. 26a. The court ordered Kokesh to pay a civil penalty of $2,354,593, which represented "the amount of funds that [Kokesh] himself received during the limitations period." *Id.*, at 31a–32a. Regarding the Commission's request for a $34.9 million disgorgement judgment—$29.9 million of which resulted from violations outside the limitations period—the court agreed with the Commission that because disgorgement is not a "penalty" within the meaning of § 2462, no limitations period applied. The court therefore entered a disgorgement judgment in the amount of $34.9 million and ordered Kokesh to pay an additional $18.1 million in prejudgment interest.

The Court of Appeals for the Tenth Circuit affirmed. 834 F.3d 1158 (2016). It agreed with the District Court that disgorgement is not a penalty, and further found that disgorgement is not a forfeiture. *Id.*, at 1164–1167. The court thus concluded that the statute of limitations in § 2462 does not apply to SEC disgorgement claims.

This Court granted certiorari, 580 U.S. ——, 137 S.Ct. 810, 196 L.Ed.2d 596 (2017), to resolve disagreement among the Circuits over whether disgorgement claims in SEC proceedings are subject to the 5-year limitations period of § 2462.[2]

II

[8] Statutes of limitations "se[t] a fixed date when exposure to the specified Government enforcement efforts en[d]." *Gabelli*, 568 U.S., at 448, 133 S.Ct. 1216. Such limits are " 'vital to the welfare of society' " and rest on the principle that " 'even wrongdoers are entitled to assume that their sins may be forgotten.' " *1642 *Id.*, at 449, 133 S.Ct. 1216. The statute of limitations at issue here—28 U.S.C. § 2462—finds its roots in a law enacted nearly two centuries ago. 568 U.S., at 445, 133 S.Ct. 1216. In its current form, § 2462 establishes a 5-year limitations period for "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture." This limitations period applies here if SEC disgorgement qualifies as either a fine, penalty, or forfeiture. We hold that SEC disgorgement constitutes a penalty.[3]

A

[9] [10] [11] A "penalty" is a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws." *Huntington v. Attrill*, 146 U.S. 657, 667, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). This definition gives rise to two principles. First, whether a sanction represents a penalty turns in part on "whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual." *Id.*, at 668, 13 S.Ct. 224. Although statutes creating private causes of action against wrongdoers may appear—or even be labeled—penal, in many cases "neither the liability imposed nor the remedy given is strictly penal." *Id.*, at 667, 13 S.Ct. 224. This is because "[p]enal laws, strictly and properly, are those imposing punishment for an offense committed against the State." *Ibid.* Second, a pecuniary sanction operates as a penalty only if it is sought "for the purpose of punishment, and to deter others from offending in like manner"—as opposed to compensating a victim for his loss. *Id.*, at 668, 13 S.Ct. 224.

The Court has applied these principles in construing the term "penalty." In *Brady v. Daly*, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109 (1899), for example, a playwright sued a defendant in Federal Circuit Court under a statute providing that copyright infringers " 'shall be liable for damages ... not less than one hundred dollars for the first [act of infringement], and fifty dollars for every subsequent performance, as to the court shall appear to be just.' " *Id.*, at 153, 20 S.Ct. 62. The defendant argued that the Circuit Court lacked jurisdiction on the ground that a separate statute vested district courts with exclusive jurisdiction over actions "to recover a penalty." *Id.*, at 152, 20 S.Ct. 62. To determine whether the statutory damages represented a penalty, this Court noted first that the statute provided "for a recovery of damages for an act which violates the rights of the plaintiff, and gives the right of action solely to him" rather than the public generally, and second, that "the whole recovery is given to the proprietor, and the statute does not provide for a recovery by any other person." *Id.*, at 154, 156, 20 S.Ct. 62. By providing a compensatory remedy for a private wrong, the Court held, the statute did not impose a "penalty." *Id.*, at 154, 20 S.Ct. 62.

Case 2:17-cv-02000-APG-GWF   Document 40-8   Filed 08/18/17   Page 6 of 8

Kokesh v. S.E.C., 137 S.Ct. 1635 (2017)
198 L.Ed.2d 86, 85 USLW 4308, Fed. Sec. L. Rep. P 99,733...

Similarly, in construing the statutory ancestor of § 2462, the Court utilized the same principles. In *Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412, 421–422, 35 S.Ct. 328, 59 L.Ed. 644 (1915), the Interstate Commerce Commission, a now-defunct federal agency charged with regulating railroads, ordered a railroad company to refund and pay damages to a shipping company for excessive shipping rates. The railroad company argued that the action *1643 was barred by Rev. Stat. § 1047, Comp. Stat. 1913, § 1712 (now 28 U.S.C. § 2462), which imposed a 5–year limitations period upon any " 'suit or prosecution for a penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States.' " 236 U.S., at 423, 35 S.Ct. 328. The Court rejected that argument, reasoning that "the words 'penalty or forfeiture' in [the statute] refer to something imposed in a punitive way for an infraction of a public law." *Ibid.* A penalty, the Court held, does "not include a liability imposed [solely] for the purpose of redressing a private injury." *Ibid.* Because the liability imposed was compensatory and paid entirely to a private plaintiff, it was not a "penalty" within the meaning of the statute of limitations. *Ibid.*; see also *Gabelli*, 568 U.S., at 451–452, 133 S.Ct. 1216 ("[P]enalties" in the context of § 2462 "go beyond compensation, are intended to punish, and label defendants wrongdoers").

B

Application of the foregoing principles readily demonstrates that SEC disgorgement constitutes a penalty within the meaning of § 2462.

[12] [13] First, SEC disgorgement is imposed by the courts as a consequence for violating what we described in *Meeker* as public laws. The violation for which the remedy is sought is committed against the United States rather than an aggrieved individual—this is why, for example, a securities-enforcement action may proceed even if victims do not support or are not parties to the prosecution. As the Government concedes, "[w]hen the SEC seeks disgorgement, it acts in the public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured parties." Brief for United States 22. Courts agree. See, *e.g.*, *SEC v. Rind*, 991 F.2d 1486, 1491 (C.A.9 1993) ("[D]isgorgement actions further the Commission's public policy mission of protecting investors and safeguarding the integrity of the markets");

*SEC v. Teo*, 746 F.3d 90, 102 (C.A.3 2014) ("[T]he SEC pursues [disgorgement] 'independent of the claims of individual investors' " in order to " 'promot[e] economic and social policies' ").

[14] [15] [16] Second, SEC disgorgement is imposed for punitive purposes. In *Texas Gulf*—one of the first cases requiring disgorgement in SEC proceedings—the court emphasized the need "to deprive the defendants of their profits in order to ... protect the investing public by providing an effective deterrent to future violations." 312 F.Supp., at 92. In the years since, it has become clear that deterrence is not simply an incidental effect of disgorgement. Rather, courts have consistently held that "[t]he primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains." *SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (C.A.2 1997); see also *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (C.A.2 1996) ("The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws"); *Rind*, 991 F.2d, at 1491 (" 'The deterrent effect of [an SEC] enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits' "). Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because "deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e]." *Bell v. Wolfish*, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); see also *United States v. Bajakajian*, 524 U.S. 321, 329, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) *1644 ("Deterrence ... has traditionally been viewed as a goal of punishment").

[17] Finally, in many cases, SEC disgorgement is not compensatory. As courts and the Government have employed the remedy, disgorged profits are paid to the district court, and it is "within the court's discretion to determine how and to whom the money will be distributed." *Fischbach Corp.*, 133 F.3d, at 175. Courts have required disgorgement "regardless of whether the disgorged funds will be paid to such investors as restitution." *Id.*, at 176; see *id.*, at 175 ("Although disgorged funds may often go to compensate securities fraud victims for their losses, such compensation is a distinctly secondary goal"). Some disgorged funds are paid to victims; other funds are dispersed to the United States Treasury. See, *e.g.*, *id.*, at 171 (affirming

Case 2:17-cv-02000-APG-GWF   Document 40-8   Filed 08/18/17   Page 7 of 8

Kokesh v. S.E.C., 137 S.Ct. 1635 (2017)
198 L.Ed.2d 86, 85 USLW 4308, Fed. Sec. L. Rep. P 99,733...

distribution of disgorged funds to Treasury where "no party before the court was entitled to the funds and ... the persons who might have equitable claims were too dispersed for feasible identification and payment"); *SEC v. Lund*, 570 F.Supp. 1397, 1404–1405 (C.D.Cal.1983) (ordering disgorgement and directing trustee to disperse funds to victims if "feasible" and to disperse any remaining money to the Treasury). Even though district courts may distribute the funds to the victims, they have not identified any statutory command that they do so. When an individual is made to pay a noncompensatory sanction to the Government as a consequence of a legal violation, the payment operates as a penalty. See *Porter v. Warner Holding Co.*, 328 U.S. 395, 402, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (distinguishing between restitution paid to an aggrieved party and penalties paid to the Government).

SEC disgorgement thus bears all the hallmarks of a penalty: It is imposed as a consequence of violating a public law and it is intended to deter, not to compensate. The 5–year statute of limitations in § 2462 therefore applies when the SEC seeks disgorgement.

C

The Government's primary response to all of this is that SEC disgorgement is not punitive but "remedial" in that it "lessen[s] the effects of a violation" by " 'restor[ing] the status quo.' " Brief for Respondent 17. As an initial matter, it is not clear that disgorgement, as courts have applied it in the SEC enforcement context, simply returns the defendant to the place he would have occupied had he not broken the law. SEC disgorgement sometimes exceeds the profits gained as a result of the violation. Thus, for example, "an insider trader may be ordered to disgorge not only the unlawful gains that accrue to the wrongdoer directly, but also the benefit that accrues to third parties whose gains can be attributed to the wrongdoer's conduct." *SEC v. Contorinis*, 743 F.3d 296, 302 (C.A.2 2014). Individuals who illegally provide confidential trading information have been forced to disgorge profits gained by individuals who received and traded based on that information—even though they never received any profits. *Ibid.*; see also *SEC v. Warde*, 151 F.3d 42, 49 (C.A.2 1998) ("A tippee's gains are attributable to the tipper, regardless whether benefit accrues to the tipper"); *SEC v. Clark*, 915 F.2d 439, 454 (C.A.9 1990) ("[I]t is well settled that a tipper can be required to disgorge his tippees' profits"). And, as demonstrated by this case, SEC disgorgement sometimes is ordered without consideration of a defendant's expenses that reduced the amount of illegal profit. App. to Pet. for Cert. 43a; see Restatement (Third) § 51, Comment *h*, at 216 ("As a general rule, the defendant is entitled to a deduction for all marginal costs incurred in producing the ***1645** revenues that are subject to disgorgement. Denial of an otherwise appropriate deduction, by making the defendant liable in excess of net gains, results in a punitive sanction that the law of restitution normally attempts to avoid"). In such cases, disgorgement does not simply restore the status quo; it leaves the defendant worse off. The justification for this practice given by the court below demonstrates that disgorgement in this context is a punitive, rather than a remedial, sanction: Disgorgement, that court explained, is intended not only to "prevent the wrongdoer's unjust enrichment" but also "to deter others' violations of the securities laws." App. to Pet. for Cert. 43a.

[18] True, disgorgement serves compensatory goals in some cases; however, we have emphasized "the fact that sanctions frequently serve more than one purpose." *Austin v. United States*, 509 U.S. 602, 610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). " 'A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.' " *Id.*, at 621, 113 S.Ct. 2801; cf. *Bajakajian*, 524 U.S., at 331, n. 6, 118 S.Ct. 2028 ("[A] modern statutory forfeiture is a 'fine' for Eighth Amendment purposes if it constitutes punishment even in part"). Because disgorgement orders "go beyond compensation, are intended to punish, and label defendants wrongdoers" as a consequence of violating public laws, *Gabelli*, 568 U.S., at 451–452, 133 S.Ct. 1216 they represent a penalty and thus fall within the 5–year statute of limitations of § 2462.

III

Disgorgement, as it is applied in SEC enforcement proceedings, operates as a penalty under § 2462. Accordingly, any claim for disgorgement in an SEC enforcement action must be commenced within five years of the date the claim accrued.

Case 2:17-cv-02000-APG-GWF   Document 40-8   Filed 08/18/17   Page 8 of 8

Kokesh v. S.E.C., 137 S.Ct. 1635 (2017)
198 L.Ed.2d 86, 85 USLW 4308, Fed. Sec. L. Rep. P 99,733...

The judgment of the Court of Appeals for the Tenth Circuit is reversed.

*It is so ordered.*

**All Citations**

137 S.Ct. 1635, 198 L.Ed.2d 86, 85 USLW 4308, Fed. Sec. L. Rep. P 99,733, 17 Cal. Daily Op. Serv. 5205, 2017 Daily Journal D.A.R. 5301, 26 Fla. L. Weekly Fed. S 626

Footnotes

\*   The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

1   Each of these statutes—the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*; the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*; the Public Utility Holding Company Act of 1935, 15 U.S.C. § 79 *et seq.*; the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa *et seq.*; the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.*; and the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 *et seq.*—serves the "fundamental purpose" of "substitut[ing] a philosophy of full disclosure for the philosophy of *caveat emptor* and thus ... achiev[ing] a high standard of business ethics in the securities industry." *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963).

2   Compare *SEC v. Graham,* 823 F.3d 1357, 1363 (C.A.11 2016) (holding that § 2462 applies to SEC disgorgement claims), with *Riordan v. SEC,* 627 F.3d 1230, 1234 (C.A.D.C.2010) (holding that § 2462 does not apply to SEC disgorgement claims).

3   Nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context The sole question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period.

**End of Document**                                                            © 2017 Thomson Reuters. No claim to original U.S. Government Works.