# EXHIBIT A

IN RE: Federal Trade Commission v. RevMountain, LLC et al. ("Receivership Entities")

The following are general conditions precedent to the duly appointed interim Receiver of the Receivership Entities, Joshua Teeple, temporarily continuing operation of RevGuard, RevLive, or RevGo (the "Rev Entities"). The Receiver reserves the right to amend or append these conditions at any time. These terms and conditions are subject to any order issued by or subsequently issued by the Court. Should the Receiver believe that any of these conditions are not being implemented or followed explicitly, the Receiver reserves the right to terminate the operations of the Rev Entities at any time and without notice. Continued operation of the RevEntities is also conditioned upon total cooperation of retained employees and transparent reporting of operational and accounting results to the Receiver and his designees.

1. The Receiver requires the cooperation and support of Blair McNea and his executive team at each of the Rev entities, which includes, but is not necessarily limited to: (1) promptly addressing any inquiries of the Receiver and his designees; (2) providing access to any and all corporate records and computer equipment used by any of the executive team; and (3) fully cooperating with requests of the Receiver in a timely manner. However, unless specifically requested by Receiver, Mr. McNea and his executive team will not be present at any corporate offices on a daily basis nor will Mr. McNea and his executive team be allowed to communicate with retained employees of the Rev Companies or any and all customers or clients of the Receivership Entities without the consent or presence of the Receiver or his designees. With the exception of executives that the Receiver employs in the day-to-day operations of the Rev Entities (i.e. Laura Turner and Jade Raber), neither Mr. McNea nor his executive team will receive compensation for this support at this time.

2. All managerial and other business decisions must be made by the Receiver. The Receiver is in the process of opening Receivership bank accounts at an FDIC insured financial institution. The Receiver will be the sole signatory on these accounts.

3. Blue Rocket Brands and all related eCommerce and subscription based business, whether known or unknown to the Receiver (the "Blue Rocket Companies") under the management, ownership or control of Mr. McNea or anyone designated as an owner, manager or operator of said companies, will cease operations immediately. Mr. McNea will assist the Receiver in stopping all ongoing charges to customers of the Blue Rocket Companies. Mr. McNea will identify and request the assistance of appropriate Receivership employees to assist the Receiver in disabling from public access any and all of the Blue Rocket Companies' websites and all web pages contained therein. Mr. McNea will instruct said employees that they are to assist the Receiver in preserving offline copies of any and all such websites and web pages.

4. With regard to Blue Rocket Companies that may also be clients of RevGuard or RevLive, if a customer of a Blue Rocket Company is to call into either of those companies, the only options presented will be cancellation of ongoing subscriptions or a full refund. The Rev Entities will

16177.1:3476389.1

1

take any and all additional measures needed to assist with the wind down of their clients that are Blue Rocket Companies.

5. With regard to Blue Rocket Companies that may also be clients of RevGo, any and all future shipments will be suspended.

6. The Rev Entities will not take on new clients, will not develop new products and services, and will suspend sales efforts during the pendency of the Receivership, unless otherwise authorized by the Receiver.

7. Mr. McNea will also identify Receivership employees and instruct them to assist the Receiver in obtaining a complete listing of any and all merchant or other credit card processors used by the Blue Rocket Companies. Mr. McNea will also assist the Receiver in obtaining a complete listing of any and all other financial institution accounts held by any of the Receivership Entities.

8. Mr. McNea will immediately cause to be created a client list for each of the Rev Entities. Such list will identify information such as mailing address, primary contact, phone number, emails, websites, etc. The list will also identify if a client is a Blue Rocket Company or is otherwise under the ownership or control of Mr. McNea, a relative of Mr. McNea, or one of his designees. Mr. McNea will sign an affidavit, under the penalty of perjury, that this list is complete and accurate to the best of his knowledge and that he does not have any ownership interest or other type of interest in the clients identified as non-Blue Rocket Companies. The list and affidavit are to be prepared by Mr. McNea and his attorneys.

9. Mr. McNea will identify appropriate Receivership employees that will assist the Receiver in obtaining access to and preserving all CRM and other such databases related to customers of the Blue Rocket Companies.

10. Any and all mail sent to any addresses of the Receivership Entities will be held for the Receiver and opened only by the Receiver or one of his designees.

11. Mr. McNea acknowledges that the Receiver will control all internal and external communications. The Receiver, at his discretion, may opt to communicate directly with current and former employees, current and former clients, and current and former customers of the Receivership entities. Mr. McNea will identify employees that may assist will also support in making such communications. The Receiver will consult with Mr. McNea on the form and content of these communications, but the Receiver retains final decision making authority as to their form and content. Mr. McNea will not communicate with employees, clients and customers of the Receivership entities.

12. The Receiver will continue to maintain physical control of corporate offices and will restrict access to these offices at the Receiver's sole discretion.

13. Mr. McNea will provide the patent documentation for RevGuard's patent including proof of ownership.

14. No physical assets will be removed from corporate offices without the Receiver's express consent. Any personal property removed from the corporate offices will be documented with a receipt. Proof of ownership may be required by the Receiver at his discretion.

15. No electronic or hardcopy information will be removed, deleted, or otherwise altered outside of the normal course of business from any corporate office or electronic storage medium.

ACCEPTED BY:

_____   8/2/17
Blair McNea                Date