# PX23

# Declaration of Crystal D. Ostrum

# Federal Trade Commission Investigator

## **DECLARATION OF CRYSTAL D. OSTRUM**

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct:

1. I have personal knowledge of the facts set forth herein.

2. I have a J.D. degree and am currently a member in good standing of the Virginia State Bar.

3. I am an Investigator for the Federal Trade Commission ("FTC" or "Commission"). Prior to working at the FTC, I worked for the U.S. Food and Drug Administration, Center for Tobacco Products, for the Office of Compliance and Enforcement, as a Regulatory Counsel.

4. I have been working as an FTC investigator since June 2014. I am presently assigned to the Enforcement Division of the FTC's Bureau of Consumer Protection in Washington, DC. My work address is 600 Pennsylvania Avenue, N.W., Mail Drop CC-9528, Washington, DC 20580.

5. As an investigator with the FTC, my duties include investigating possible violations of the laws the FTC enforces and violations of Orders obtained by the Commission.

6. I was assigned to work on the matter *FTC v. RevMountain, LLC*, *et al.*, in August 2016.

7. The documents attached to this declaration were collected from the Defendants' business premises at 6260 Lookout Road, Boulder, CO 80301 and 2011 Cherry Street, Suite 202, Louisville, CO 80027, as described in PX17.

## **2011 Cherry Street**

8. At the workstation of Neva Archuleta, GoLive Team, I observed correspondence from the Minnesota Attorney General, addressed to RevLive, LLC, regarding consumer complaints. These documents are included with this declaration as **Attachment A**.

Page **1** of **5**

9. At the workstation of Brook Nelson, I observed printed emails from Danielle Foss to employees of Blue Rocket Brands, RevGuard, RevLive, and Revgo, concerning the launch of a new product, Spartan Max. I also observed printed emails with a client about RevLive's services for that client and a Refund Policy sheet discussing RevLive services provided to Blue Rocket Brands. These are included with this declaration as **Attachment B**.

10. On the floor, in a communal space in the suite, I observed a pile of consumer complaints submitted directly to the defendants. Excerpts of these complaints are included with this declaration as **Attachment C**.

11. In the office of Christy Blackburn, Accounting/HR, I saw employee records including offers of employment and insurance registration forms. Several of these documents are included with this declaration as **Attachment D**.

12. In the office of Jane Raber, VP of Operations for RevLive, I located printed emails discussing the threat policies of several RevLive clients and a RevLive Service Order, which specifically lists "Attorney General Handling," and "Better Business Bureau Handling" as two services offered on the standard form. These documents are included with this declaration as **Attachment E**.

13. In the shared office of Lindsay Martinez, Office Manager, and Seth Davies, Merchant Processing for Blue Rocket, in the workspace belonging to Lindsay Martinez, I located voluminous consumer complaints submitted to BBB's and various state AGs. Excerpts of these complaints are included with this declaration as **Attachment F**.

**6260 Lookout Road**

14. In the office of Laura Turner, FTC staff photographed the computer screen. The screen reads "OCO CLV Performance: Chargebacks and Refunds." A photograph of this screen is included with this declaration as **Attachment G**.

15. In the office of John Jones, there is a whiteboard explaining what RevGuard does for their clients. A photograph of this whiteboard is included with this declaration as **Attachment H**.

**Evidence from Computers**

16. As described in PX17, FTC forensic examiners imaged Blair McNea's computer. The forensic examiners and FTC litigation support loaded the images of McNea's computer into the FTC's document review software. FTC staff accessed these documents via the document review software.

17. A document obtained from McNea's computer, listing RevGuard's revenue, is included with this declaration as **Attachment I**.

18. A document obtained from McNea's computer, titled "Threat %", is included with this declaration as **Attachment J**.

19. An email obtained from McNea's computer, from Jenny Johnson, jenny@bluerocketbrands.com to Blair McNea bmcnea@gmail.com is included with this declaration as **Attachment K**.

20. An email obtained from McNea's computer, from Jenny Johnson, jenny@revlive.net, to Kaitlyn Neff, Kaitlyn@revlive.net, lindsey@revlive.net, and copying blair@revguard.net, is included with this declaration as **Attachment L**.

21. An email obtained from McNea's computer, from Blair McNea, bmcnea@gmail.com to Ryan Pollock, ryan@irongatecapital.com, is included with this declaration as **Attachment M**.

22. An email obtained from McNea's computer, from Walter Long, walter@revguard.net to Blair McNea, blair@revguard.net, bwmcnea@msn.com, Blair@convertismarketing.com, is included with this declaration as **Attachment N**.

23. FTC forensic examiners also imaged Lindsey Martinez's computer. The forensic examiners and FTC litigation support loaded the images of Martinez's computer into the FTC's document review software. FTC staff accessed these documents via the document review software.

24. Documents from Lindsey Martinez's computer including, threat policy scripts ("offer maps"), training material for offer maps, and emails discussing these materials are included with this declaration as **Attachment O**.

25. Company emails, email address lists, payroll records, and the receiver's report show that many employees of RevLive, RevGo, and RevGuard also organized merchant entities or worked for Blue Rocket Brands. For example, merchant-entity owners Megan Nosel, Emily McEvoy, Sarah Austin, Taree Dobie, Jenny Johnson, Ryan Reichenbach, Twyla Ryan, Brian Lint, Jaime Hayden, Chris Poole, Lindsey Martinez, and Ryan McWilliams, PX17 Att. AZ, all worked for at least one of the Rev Companies, and many worked for Blue Rocket Brands as well. *See* PX17 Att. I p.4; PX18 Att. A pp.3, 10 (Nosel); PX17 ¶40, Atts. H, I p. 4; PX18 Att. A pp. 1, 9 (McEvoy); PX17 Att. H; PX18 Att. A p.1 (Austin); PX17 Atts. H, BB p.4; PX18 Att. A pp. 3, 5-6 (Dobie); PX18 Att. A pp.4, 9; Receiver Rept. ¶¶22, 31 (Johnson); PX17 ¶52, Att. H; PX18 Att. A p.1 (Reichenbach); PX17 Att. H; PX18 Att. A pp.3, 6

(Ryan); PX18 Att. A p.8; Receiver Rept. ¶34 (Lint); PX17 Att. BA pp.1, 4-5; PX18 Att. A. p.1 (Hayden); PX17 Atts. H, BB p.9, BE p.1 (Poole); PX17 Atts. H, I p.3, BJ; PX18 Att. A pp.3, 9 (Martinez); PX17 Atts. AT p.1, BA p.1, BB p.9, BE p.1; PX18 Att. A pp.3, 10 (McWilliams).

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, DC this 24th day of August 2017.

_Crystal D. Ostrum_
Crystal D. Ostrum