ERIC W. SWANIS (Nevada Bar No. 6840)
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone:  702-792-3773
Facsimile:  702-792-9002
Email:  swanise@gtlaw.com

GIOVANNI M. RUSCITTI (Has complied with LR IA 11-2)
*(Admitted Pro Hac Vice)*
BERG HILL GREENLEAF RUSCITTI LLP
1712 Pearl Street
Boulder, Colorado 80302
Telephone:  303-402.1600
Facsimile:  303-402-1601
Email:  gmr@bhgrlaw.com

CLAUDE C. WILD III (Has complied with LR IA 11-2)
*(Admitted Pro Hac Vice)*
9247 Mornington Way
Lone Tree, CO 80124
Telephone:  303-916-9082
Email:  cwild@claudewildlaw.com

*Attorneys for Entity Defendants and Blair McNea*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) Case No. 17-cv-02000-APG-GWF |
| Plaintiff, | ) |
| v. | ) **THE CORPORATE DEFENDANTS'** |
| | ) **EMERGENCY MOTION FOR LIMITED** |
| REVMOUNTAIN, LLC, *et al.,* | ) **MODIFICATION OF ASSET FREEZE TO** |
| | ) **PERMIT ACCESS TO FUNDS FOR** |
| Defendants. | ) **ATTORNEYS' FEES AND REQUEST FOR** |
| | ) **EXPEDITED BRIEFING AND HEARING** |
| | ) |

The Corporate Defendants,[1] through their undersigned counsel, and pursuant to Local

Rule 6.1, hereby move this Court for an order modyifing the Preliminary Injunction with Asset

---

[1] The Corporate Defendants are all of the named corporate Defendants.

Freeze, Appointment of Receiver, and Other Equitable Relief as to Defendants Blair McNea, Jennifer Johnson, and Entity Defendants (the "**PI Order**"). Specifically, and as set forth in more detail in the attached Memorandum of Points and Authorities, which is incorporated herein by this reference, the Corporate Defendants seek a limited modification of the asset freeze contained in the PU Order for limited attorneys' fees for representation of the Corporate Defendants in this action. As the Court is aware, the Corporate Defendants are required to be represented by counsel in this matter. Indeed, "[i]t is a longstanding rule that corporations and other unincorporated associations must appear in court through an attorney." *D-Beam Ltd. Partnership v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004). "There can be no dispute that a corporate entity may proceed in federal court only when represented by licensed counsel. A corporation simply may not proceed pro se." *Jones v. All American Auto Protection, Inc.*, No. 3:14–cv–00199–LRH–WGC, 2015 WL 5255205, *4 (D. Nev. September 9, 2015). Here, the FTC has asserted complex and provocative claims alleging serious and nefarious conduct by the Corporate Defendants. These claims are in dispute and are contested. As a result, and in the interest of due procee and fairness, the Corporate Defendants must have adequate legal representation in responding to the FTC's Claims.

Accordingly, and as set forth in more detail in the attached Memorandum of Points and Authorities, the Corporate Defendants seek a limited modification of the asset freeze contained in the PU Order to permit access to funds for limited attorneys' fees for representation of the Corporate Defendants in this action.

DATED this 8th day of September, 2017.

GREENBERG TRAURIG, LLP

By: */s/ Eric W. Swanis* _____
ERIC W. SWANIS (Nevada Bar No. 6840)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: 702-792-3773
Facsimile: 702-792-9002
Email: swanise@gtlaw.com

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

2

1

BERG HILL GREENLEAF RUSCITTI LLP

2

By: */s/ Giovanni M. Ruscitti*
GIOVANNI M. RUSCITTI

3

(Has complied with LR IA 11-2)

4

*(Admitted Pro Hac Vice)*
1712 Pearl Street

5

Boulder, Colorado 80302
Telephone:  303-402.1600

6

Facsimile:  303-402-1601

7

Email:  gmr@bhgrlaw.com

8

CLAUDE C. WILD III

9

By: */s/ Claude C. Wild III*

10

CLAUDE C. WILD III
(Has complied with LR IA 11-2)

11

*(Admitted Pro Hac Vice)*

12

9247 Mornington Way
Lone Tree, CO 80124

13

Telephone:  303-916-9082
Email:  cwild@claudewildlaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION

On July 24, 2017, the Federal Trade Commission ("**FTC**") filed a Complaint for Permanent Injunction and Other Equitable Relief (the "**Complaint**") against the Defendants.  In the Complaint, the FTC has asserted two claims for relief based on provocative and sweeping allegations relating to alleged deceptive trade practices in connection with negative option marketing to consumers.[2]   Many of the allegations, especially those related to Defendants RevGuard, LLC ("**RevGuard**"), RevLive!, LLC ("**RevLive**"), and RoadRunner B2C, LLC d/b/a RevGo ("**RevGo**"),[3] are unsubstantiated and in the form of conclusory statements of counsel.

Contemporaneously with the filing of the Complaint, the FTC also moved *Ex Parte* for the entry of a Temporary Restraining Order and an order appointing a Receiver (the "**TRO Motion**").   On July 25, 2017, the Court granted the TRO Motion and entered the FTC's Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "**TRO**").   (ECF No. 16.)   The TRO also froze the assets of all of the Defendants, including the assets of the Rev Companies – B2B companies that *don't even market products to consumers*.

On August 29, 2017, this Court held a hearing on the order to show cause regarding the FTC's request for a preliminary injunction.   The Court granted the request for a preliminary injunction, and entered a Preliminary Injunction with Asset Freeze, Appointment of Receiver, and Other Equitable Relief as to Defendants Blair McNea, Jennifer Johnson, and Entity Defendants on September 1, 2017 (the "**PI Order**").   At the hearing and in the PI Order, this Court indicated that it would consider a motion by Mr. McNea and the Corporate Defendants for a release of funds for living expenses and attorneys' fees.   Since the hearing, Defendant Blair McNea and the Corporate Defendants have been negotiating with counsel for the FTC regarding a possible modification of the PI Order regarding living expenses for Mr. McNea and attorneys'

---

[2] The FTC has asserted claims for alleged violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45, and alleged violations of Section 4 of the Restore On-Line Shoppers' Confidence Act, 15 U.S.C. § 8403 ("**ROSCA**").

[3] RevGuard, RevLive and RevGo are collectively referred to herein as (the "**RevCompanies**").

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

fees for the Corporate Defendants.  Mr. McNea and the FTC have reached an agreement on living expenses, which will be submitted pursuant to a stipulation in a separate pleading. However, the FTC has not agreed to release any funds for attorneys' fees for the Corporate Defendants.  Accordingly, the Corporate Defendants submit this Emergency Motion.

To that end, the Corporate Defendants, which are required to have counsel in this matter,[4] seek a limited release of restrained funds to pay reasonable attorneys' fees to allow them to defend against the serious allegations and claims raised by the FTC.  Given that they cannot appear *pro se,* it would violate basic principles of due process and fairness for the FTC to bring serious fraud based claims against the Corporate Defendants and then tie up their assets so that they cannot defend themselves.  Indeed, it would be unconscionable.  This is particularly true for the Rev Companies, <u>two of which (RevGo and RevGuard) have already closed because of the</u> <u>issuance of the TRO and appointment of the Receiver</u>, as those entities do not sell products to consumers and are not engaged in the activities that form the basis of the FTC's claims.  What is particularly troubling about the closure of RevGuard and RevGo is that the Receiver has yet to find any evidence of wrong doing by those companies.[5]

There is ample precedent for the release of funds for such purposes, including orders issued by this Court in the matter styled *Federal Trade Commission, Health Formulas, LLC, et al.,* Case No. 2:14-CV-01649-RFB-GWF ("*Health Formulas*"), where this Court, <u>on two</u> <u>separate occasions</u>, granted similar requests.  *See* **Exhibits 1A and 1B**.  The release of funds for attorneys' fees is critical in this case, as stated above, the Corporate Defendants dispute the allegations raised in this case and intend to vigorously defend same.  In addition, and as

---

[4] "It is a longstanding rule that corporations and other unincorporated associations must appear in court through an attorney." *D-Beam Ltd. Partnership v. Roller Derby Skates, Inc.*, 366 F.3d 972 , 973-74 (9th Cir. 2004). "There can be no dispute that a corporate entity may proceed in federal court only when represented by licensed counsel. A corporation simply may not proceed pro se." *Jones v. All American Auto Protection, Inc.*, 2015 WL 5255205, *4 (D. Nev. 2015).

[5] In his initial report, the Receiver stated that he had not concluded whether the Rev Companies were engaged in any unlawful conduct prior to the commencement of this action.  However, the Receiver made the decision to operate the Rev Companies after the commencement of this case, and concluded that they were operating lawfully following the commencement of the case.  In their opposition to the application for a preliminary injunction, the Rev Companies submitted affidavits from key employees indicating that they were operated in the same fashion pre-commencement of this case as they were post-commencement of this case.  Thus, the FTC's actions have essentially killed 2 companies who should not be in this case.  To that end, and contemporaneously with the filing of this application, the Rev Companies have filed a Motion to Dismiss.

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

discussed in more detail below, during the Rule 26(f) conference in this case, the FTC indicated that it planned on taking up to 30 depositions in this case (which the Defendants oppose). The FTC further indicated that it intended to engage in extensive third-party discovery, as well as written discovery on the Defendants. Moreover, during the Rule 26(f) conference, the FTC indicated that it might be willing to stay all discovery for a 30 day period so that the parties could engage in settlement discussions. The FTC refused, however, to allow for any attorneys' fees to be released for that purpose or any other purpose. As a result, it would violate due process and fairness for the Corporate Defendants to be dragged into this case, be required to be represented by counsel, but yet not have funds available to them to have competent legal counsel adequately represent their interests in the case.

As a result, the Corporate Defendants request a monthly allowance in the amount of $30,000 for attorneys' fees to defend themselves in this case. In addition, the Corporate Defendants request that attorneys' fees incurred in connection with the TRO and preliminary injunction phase of this case also be paid. This amounts to $36,700. As of September 5, 2017, the Corporate Defendants had over $719,000 in deposits, excluding reserves. *See* email from Byron Moldo, attached hereto as **Exhibit 2**.[6] The Corporate Defendants request this Court require the Receiver to pay the Corporate Defendants' attorneys' fees from these sources. The Corporate Defendants are also willing to allow their invoices to be reviewed *in camera* by the Court and/or by the Receiver (with appropriate redactions).

## II.   ARGUMENT

### A.   This Court Has the Authority to Release Funds for the Purposes Identified in This Motion.

As this Court noted in the *Health Formulas,* the Court has inherent equitable power to fashion provisional remedies ancillary to its authority to provide final equitable relief. *See* **Exhibit 1A**, December 4, 2012 Order, at pg. 2, lines 9-15. *See also, F.T.C. v. Ideal Fin. Sols., Inc.*, Case No. 2:13-CV-00143-JAD-GW, 2014 WL 4541191, at *1(d) (Nev. Sept. 9, 2014);

---

[6] It is expected that the Corporate Defendants also have in excess of $400,000 in reserves in merchant accounts that will be released.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1    *Reebok Intern., Ltd. v. Marnatech Enters., Inc.,* 970 F.2d 552, 559 (9ᵗʰ Cir. 1992); *F.T.C. v. Am.*

2    *Nat Cellular,* 868 F.2d (9th Cir. 1989); *F.T.C. v. Warner Commc'ns, Inc.,* 742 F.2d 1156, 1160 (9ᵗʰ

3    Cir. 1984).   This includes the authority to modify an asset freeze and to allow funds to be

4    released for attorneys' fees.  *Id.*  As a result, this Court has authority to grant the relief requested

5    herein.

6          As the Court is aware, the FTC has brought claims against 59 separate legal entities.  The

7    claims are provocative and allege serious and nefarious misconduct on behalf of the entities

8    relating to alleged deceptive trade practices in connection with certain marketing activities

9    conducted by some, but not all of the entities.  In that regard, the FTC's claims primarily relate to

10   four groups of defendants – (1) the individual defendants, (2) the Rev Companies, (3)

11   Defendants Cherry Blitz, ROI Runner and RevMountain,[7] and (4) the remaining Corporate

12   Defendants (referred to herein as the "**Subscription Companies**").  Importantly, only the

13   Subscription Companies market products to consumers, and the FTC's claims relate solely to the

14   Subscription Companies' alleged conduct.  The FTC has not alleged, nor can it, that the Rev

15   Companies engaged in any illegal or wrongful conduct directly with consumers.  Instead, and

16   relying on scant and conclusory statements of counsel, the FTC argues that the Rev Companies

17   are part of the same "common enterprise" because they share common ownership and some of

18   the same management with the Subscription Companies.  They also allege, without using the

19   words, that the Rev Companies are aiding and abetting the Subscription Companies in deceiving

20   consumers.  As stated above, the Rev Companies have filed a Motion to Dismiss, as these claims

21   have no merit.

22         And as the Court is aware, the FTC obtained the PI Order, which enjoined all of the

23   Corporate Defendants from certain conduct, and froze their assets.  Not surprisingly, the

24   Corporate Defendants dispute and contest the allegations raised in the Complaint.  And also as

25   stated above, the Corporate Defendants cannot appear *pro se* in this matter, and instead must be

26   represented by counsel.

27   ///

28

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

---

[7] Like the Rev Companies, Cherry Blitz, ROI Runner and RevMountain have never sold products to consumers.

7

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1    However, the Corporate Defendants' assets have been frozen and they do not have the
2    ability to pay for ongoing representation.   Accordingly, by this Motion, the Corporate
3    Defendants seek an order modifying the PI Order to allow for a monthly allowance in the amount
4    of $30,000 for attorneys' fees and expenses related to this litigation.   Numerous courts, including
5    this Court, have authorized the release of funds for attorneys' fees in a civil enforcement case.
6    *See Health Formulas.*   For example, in *Health Formulas,* a case very similar to this case, this
7    court authorized the release of $30,000 per month for the payment of attorneys' fees.   *See*
8    Exhibit 1-A, December 4, 2012 Order. Other courts have reached the same conclusion.  *See*, *FTC*
9    *v. World Wide Factors, Ltd.*, 882 F.2d 344, 348 (9th Cir. 1989) (allowing defendants to have
10   assets unfrozen for payment of reasonable attorneys' fees); *FTC v. Nat'l Prize Information*
11   *Group Corp.*, 2006 WL 323560, *1 (D. Nev. Nov. 2. 2006) (noting court authorized released of
12   frozen funds to pay two law firms); *F.T.C. v. Asset & Capital Management*, *et al.,* Case No. 13-
13   cv-01107 (C.D. Cal. Oct. 1, 2013), at 4 (authorizing release of $105,000 for payment of
14   attorneys' fees) (attached hereto as **Exhibit 3**); *CFTC v. Noble Metals Intern., Inc.*, 67 F. 3d 766,
15   775 (9th Cir. 1995) ("Discretion must be exercised by the district court in light of the fact that
16   wrongdoing is not yet proved when the application for attorney fees is made."); *FSLIC v. Fern*,
17   909 F.2d 372, 375 (9th Cir. 1990) (approving release of attorneys' fees subject to limitations
18   enforced through *in camera* review of bills).

19   Given the complex nature of the claims asserted by the FTC, as well as the numerous
20   factual issues that are triggered by the claims, the amount sought by the Corporate Defendants is
21   reasonable.   This is particularly true given that the FTC has indicated during a recent scheduling
22   conference that it intends to take up to 30 depositions and seek substantial third-party discovery.
23   The FTC also plans on propounding written discovery on the Defendants.[8]   Given this extensive
24   discovery, the attorneys' fees requested by the Corporate Defendants is reasonable.

25   Moreover, the Corporate Defendants were forced to defend themselves during the
26   preliminary injunction phase of this case.   While a retainer was paid by a third party to cover a

27
28   [8] The parties have discussed a stay of discovery at the outset of the discovery period to allow the parties to engage in
     settlement discussions.  However, the FTC has indicated it is only willing to stipulate to a 30 day stay.  But yet, the
     FTC will not release funds to have counsel negotiate a possible settlement.  This defies logic and violates basic
     principles of due process.

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

1   portion of those fees, that retainer has been depleted and funds are required to pay the attorneys'

2   fees who worked around the clock in order to respond to the *ex parte* motion filed by the FTC,

3   and to prepare for and attend the hearing.  The amount due is $36,700.  The Defendants are

4   happy to submit this invoice to the Court for an *in camera* review.

5          In addition to the above-referenced discovery and preliminary injunction phase of the

6   case, the Corporate Defendants intend on vigorously defending this case, including the filing of a

7   motion to dismiss by the Rev Companies and possibly a motion to reconsider the Court's ruling

8   relating to the Rev Companies as part of the preliminary injunction.  The Corporate Defendants

9   also intend to engage expert witnesses and in other motion practice necessary to respond to the

10   claims raised in this case.  Accordingly, $30,000 a month is reasonable and necessary.

11          Moreover, the Court should find that the Defendants' request here for release of attorneys'

12   fees is reasonable in amount, particularly given the discounts that are being offered by counsel for

13   the Corporate Defendants.  Here, Mr. Wild has agreed to reduce his hourly rate from his normal

14   rate of $450 an hour to $300 an hour.  In addition, Mr. Ruscitti has agreed to reduce his hourly

15   rate from $400 an hour to $300 an hour, and has agreed to utilize associates and law clerks to the

16   fullest extent possible.  Those associates and law clerks will be billed at $245 an hour for

17   associates, and $75 an hour for law clerks.  These amounts are incredibly reasonable, especially

18   given the complex nature of this litigation.  Upon request, counsel will make available to the

19   Receiver versions of its bills from which privileged information and information constituting

20   attorney work product have been redacted. Release of funds for the purpose of an arrangement

21   providing such capped fees should be approved by the Court. *See* **Exhibit 4**, *F.T.C. v. Universal*

22   *Premium Services Inc.* Case No. CV06-0849-SJO (OPx) (C.D. Cal. March 21, 2006) (capping

23   attorney fees for each defendant at $360 an hour for one senior attorney and $180 for one junior

24   attorney, up to 20 hours a week each); *see* **Exhibit 5** *F.T.C. v. Burnlounge, Inc.* Case No. 2:07-cv-

25   03654-GW-FMO (C.D. Cal. Aug. 8, 2007) (allowing individual defendants to expend $20,000 on

26   attorneys' fees and permitting additional requests in increments of $20,000).

27   ///

28   ///

### III.    <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court modify the asset freeze to release $36,700 for attorneys' fees associated with the preliminary injunction phase of this case, and to authorize the receiver to pay $30,000 per month to cover attorneys' fees incurred by counsel for the Corporate Defendants for the defense of this lawsuit. A proposed order is attached as **<u>Exhibit 6</u>**.

Respectfully submitted this 8th day of September, 2017.

*/s/ Eric W. Swanis*
ERIC W. SWANIS (NV Bar #6840)
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone:  702-792-3773
Facsimile:  702-792-9002
Email:  swanise@gtlaw.com

*/s/ Giovanni M. Ruscitti*
GIOVANNI M. RUSCITTI
(*Admitted Pro Hac Vice*)
BERG HILL GREENLEAF RUSCITTI LLP
1712 Pearl Street
Boulder, Colorado 80302
Telephone:  303-402.1600
Facsimile:  303-402-1601
Email:  gmr@bhgrlaw.com

*/s/ Claude C. Wild III*
CLAUDE C. WILD III
(*Admitted Pro Hac Vice*)
9247 Mornington Way
Lone Tree, CO 80124
Telephone:  303-916-9082
Email:  cwild@claudewildlaw.com

*Attorneys for Corporate Defendants and
Blair McNea*

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2017, a true and correct copy of the foregoing **THE CORPORATE DEFENDANTS' <u>EMERGENCY</u> MOTION FOR LIMITED MODIFICATION OF ASSET FREEZE TO PERMIT ACCESS TO FUNDS FOR ATTORNEYS' FEES AND REQUEST FOR EXPEDITED BRIEFING AND HEARING** was filed and served via the United States District Court's ECF System to the persons listed below and served via Federal Express as indicated below:

Bart K Larsen    blarsen@klnevada.com, jierien@klnevada.com, mbarnes@klnevada.com, usdistrict@klnevada.com

Blaine T Welsh    Blaine.Welsh@usdoj.gov, CaseView.ECF@usdoj.gov, eunice.jones@usdoj.gov, sue.knight@usdoj.gov

Byron Z. Moldo    bmoldo@ecjlaw.com

Eric D. Hone    ehone@dickinsonwright.com, bdonaldson@dickinsonwright.com, lstewart@dickinsonwright.com, LV_LitDocket@dickinsonwright.com

Gabriel A. Blumberg    gblumberg@dickinson-wright.com, bdonaldson@dickinson-wright.com, lstewart@dickinson-wright.com, LV_LitDocket@dickinson-wright.com

Michelle Schaefer    mschaefer@ftc.gov

Peter Alan Davidson    pdavidson@ecjlaw.com, lmacdonald@ecjlaw.com

Rachel Hirsch    rhirsch@ifrahlaw.com, docketing@ifrahlaw.com

Richard B Newman    rnewman@hinchnewman.com

Ronald D Green , Jr    rdg@randazza.com, ecf@randazza.com, trey-rothell-2425@ecf.pacerpro.com

Sarah Waldrop    swaldrop@ftc.gov, rkim1@ftc.gov

**Via Overnight UPS:**
Sarah Waldrop
Michelle Schaefer
Mailstop CC-9528
600 Pennsylvania Avenue, NW
Washington, DC 20580
202.326.3444

**Via Overnight UPS:**
Rachel Hirsch
Ifrah Law PLLC
1717 Pennsylvania Avenue, NW
Suite 650
Washington, DC  20006
202.524.4145

*/s/ Joyce Heilich*
An employee of Greenberg Traurig, LLP

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

# EXHIBIT 1A

1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **DISTRICT OF NEVADA**

7 * * *

FEDERAL TRADE COMMISSION,               Case No. 2:14-cv-01649-RFB-GWF

8

                          Plaintiff,

9                                         **ORDER**

10    v.
                                          Defendants' Motion for Limited
11 HEALTH FORMULAS, LLC, *et al.*,        Modification of Asset Freeze (ECF No. 21)

12                        Defendants.

13          This matter is before the Court on Defendants' Motion for Limited Modification of the

14 Asset Freeze (ECF No. 21) that has been in place since the Court first entered a Temporary

15 Restraining Order (TRO) against Defendants in its Order entered on October 9, 2014. See ECF

16 No. 12.

17          On October 7, 2014, Plaintiff Federal Trade Commission (FTC) filed a Complaint

18 requesting a permanent injunction and other equitable relief against the moving Defendants. ECF

19 No. 1. On the same day, the FTC filed an ex parte motion for a temporary restraining order,

20 including an asset freeze and appointment of a Temporary Receiver, which the Court granted on

21 October 9, 2014. ECF Nos. 5, 12. On October 23, 2014, Defendants Danelle and Jason Miller,

22 Health Formulas, LLC, Pure Vitamins, LLC, LongHorn Marketing, LLC, Method Direct, LLC,

23 Weight Loss Dojo, LLC, VIP Savings, LLC, DJD Distribution, LLC, and MDCC, LLC

24 (hereinafter "Defendants") filed the motion currently before the Court, requesting a limited

25 release of funds for living expenses and attorneys' fees. On November 17, 2014, at a hearing on

26 the Court's Order to Show Cause why a preliminary injunction should not issue (ECF No. 12),

27 the Court informed Defendants that it was unable to grant their request for a modification of the

28 asset freeze because it had not been provided sufficient information regarding the Millers'

**Exhibit 1A - Page 1 of 6**

1   finances. See Minutes of Proceedings, ECF No. 66. Specifically, the Court stated (1) that it was

2   not able to account for the difference between the $750,000 earned by the Millers between

3   January and October of 2014 and the approximately $270,000 in estimated expenses during the

4   same period and (2) that it had not been provided with a sworn statement from the Millers that

5   they did not have other (unfrozen) assets available to them, including assets outside of the United

6   States. The Court permitted Defendants to submit a supplemental brief in response to these

7   issues and held a hearing on December 1, 2014.

8          The Court has considered the parties' briefs and representations heard at oral argument

9   on November 17, 2014, and December 1, 2014. For the reasons stated on the record at the

10  December 1 hearing, and in light of the inherent equitable power of this Court to fashion

11  "provisional remedies ancillary to its authority to provide final equitable relief," Reebok Intern.,

12  Ltd. v. Marnatech Enterprises, Inc., 970 F.2d 552, 559 (9th Cir. 1992), the Court finds that there

13  is good cause to order a temporary modification to the asset freeze imposed in this case to permit

14  access to funds for limited amounts of living expenses and attorneys' fees. Defendants' motion is

15  thus GRANTED in part and DENIED in part.

<b><u>ORDER</u></b>

17         Accordingly,

18         **IT IS HEREBY ORDERED** that the Temporary Receiver shall disburse $30,000 per

19  month in attorneys' fees to Ifrah PLLC and Snell & Wilmer LLC as compensation for the

20  representation of Defendants, beginning on December 1, 2014. $26,250 of the monthly

21  disbursement shall be allocated to counsel from Ifrah PLLC and $3,750 shall be allocated to

22  counsel from Snell & Wilmer LLC, at the rates quoted in Defendants' Motion for Limited

23  Modification of the Asset Freeze (ECF No. 21). The disbursements shall be drawn from funds

24  held in the accounts of Method Films Inc., and the Temporary Receiver shall have discretion to

25  choose the Method Films account(s) from which it is most appropriate or convenient to withdraw

26  funds.

27         **IT IS FURTHER ORDERED** that the Temporary Receiver shall disburse a total

28  amount of $60,000 in attorneys' fees to Ifrah PLLC and Snell & Wilmer LLC, in the same

- 2 -

<b>Exhibit 1A - Page 2 of 6</b>

1  proportions and at the same rates as set forth above, as compensation for the representation of
2  Defendants during the months of October and November 2014. The disbursements shall be
3  drawn from funds held in the accounts of Method Films Inc., and the Temporary Receiver shall
4  have discretion to choose the Method Films account(s) from which it is most appropriate or
5  convenient to withdraw funds.

6      **IT IS FURTHER ORDERED** that the Temporary Receiver shall have the authority to
7  make direct bill payments of up to $10,000 per month for **three (3) months** on behalf of
8  Defendants Danelle and Jason Miller. The Temporary Receiver shall also have the authority to
9  make direct bill payments of up to $10,000 per month for past bills incurred during the months of
10  October and November 2014. The Temporary Receiver shall make bill payments using funds
11  held in the Millers' personal accounts at Comerica Bank, which shall remain frozen except for
12  expenditures made by the Temporary Receiver as authorized in this Order. If, as a result of this
13  Order, the funds held in the Millers' personal accounts are depleted such that they drop to $5,000
14  or less, the Temporary Receiver shall begin making bill payments from funds held in the
15  accounts of Method Films Inc. and shall use its discretion to choose those account(s) from which
16  it is most appropriate or convenient to withdraw funds. The Temporary Receiver is authorized to
17  make bill payments for the following expenses:

18      • The monthly mortgage payment for the Millers' home in Woodland Hills,
19        California;

20      • Court-ordered child support on behalf of Jason Miller;

21      • The monthly lease payment for the Millers' Toyota Tundra truck;

22      • Monthly premium payments for the Millers' health insurance plan purchased
23        through Anthem Blue Cross;

24      • Monthly premium payments for two life insurance policies, one insuring Jason
25        Miller and one insuring Danelle Miller, purchased through Ameritas Life
26        Insurance Corp.;

27      • Monthly premium payments for one life insurance policy insuring Jason Miller
28        purchased through AIG; and

- 3 -

**Exhibit 1A - Page 3 of 6**

1       •   Utilities and other billed expenses, such as car insurance, to the extent they do not

2          exceed the $10,000 total monthly allotment.

3        The Millers shall submit copies of invoices for the bills described above, including the

4 amounts due, to the Temporary Receiver on or before the **fifteenth (15th) day** of each month that

5 this Order is in effect, with the first date for submitting invoices occurring on December 15,

6 2014. Upon receiving those invoices, the Temporary Receiver shall immediately make the

7 appropriate payments from the accounts described above, not to exceed total bill payment of

8 $10,000 per month. The Millers shall also have until **December 15, 2014** to submit copies of

9 invoices for past bills incurred during the months of October and November 2014 indicating that

10 those amounts are past due and have not been paid. Upon receiving such invoices for past bills,

11 the Temporary Receiver shall immediately make the appropriate payments from the accounts

12 described above, which also shall not exceed $10,000 per month.

13        **IT IS FURTHER ORDERED** that the Temporary Receiver shall disburse $1,500 per

14 month directly to Defendants Danelle and Jason Miller using funds held in the Millers' personal

15 accounts at Comerica Bank, which shall remain frozen except for expenditures authorized in this

16 Order, for **three (3) months** beginning on December 1, 2014 for living and personal expenses.

17 Defendants Danelle and Jason Miller shall keep records of all purchases and expenditures made

18 using cash disbursements released to them by the Temporary Receiver and shall submit receipts

19 or other documentation for all purchases or expenditures to the Temporary Receiver **every**

20 **thirtieth (30th) day** that this Order is in effect. The Temporary Receiver shall not disburse

21 additional funds to the Millers until such documentation has been submitted, with the exception

22 that the first disbursement, which shall occur **on or before December 5, 2014**, shall not require

23 submission of receipts or other documentation. The first disbursement occurring on or before

24 December 5, 2014 shall also include an additional $1,500 disbursement for the month of

25 November 2014. Subsequent disbursements shall occur on the first day of each calendar month

26 that this Order is in effect, provided that the Millers submit proper documentation to the

27 Temporary Receiver, with the final disbursement occurring on February 1, 2015.

28    */ / /*

- 4 -

**Exhibit 1A - Page 4 of 6**

1      **IT IS FURTHER ORDERED** that Defendants Danelle and Jason Miller shall turn over

2 to the Temporary Receiver all movable personal possessions listed in Item 17 of Schedule C of

3 their disclosures to the FTC and listed in Attachment G of their Supplemental Brief in Support of

4 the Motion for Limited Modification of Asset Freeze (ECF No. 64), except for their wedding

5 bands, on or before **December 15, 2014**. The Temporary Receiver shall secure—but shall not

6 dispose of—all assets turned over to it by the Millers until further order of this Court.

7      **IT IS FURTHER ORDERED** that during the three (3) months that this Order is in

8 effect (beginning on December 1, 2014 and ending on February 28, 2015), Defendants Danelle

9 and Jason Miller shall submit documentation to the Temporary Receiver every **thirtieth (30th)**

10 **day** demonstrating (1) that they have made substantial efforts to obtain lawful employment, or

11 have already done so, and (2) that they have placed their home located in Las Vegas, Nevada, on

12 the market and have made substantial efforts to sell it, or have already done so.

13      **IT IS FURTHER ORDERED** that Defendants Danelle and Jason Miller shall not

14 transfer, sell, lease, or otherwise dispose of their home located in Woodland Hills, California at

15 any time while this action is still pending before this Court.

16      **IT IS FURTHER ORDERED** that if Defendants Danelle and Jason Miller come into

17 actual or constructive possession or control of any additional funds or assets not previously

18 disclosed to this Court, the Temporary Receiver and the FTC, they shall immediately and fully

19 disclose such funds or assets to this Court, the Temporary Receiver and the FTC and shall

20 immediately turn over such funds or assets to the Temporary Receiver. This includes, but is not

21 limited to, any funds or assets currently being held abroad and which have not yet been

22 repatriated to the United States, funds derived from the Millers' ownership interest in real

23 property located in Indiana and described as "Main Street House, IN" in Item 17 of Schedule C

24 of their financial disclosures to the FTC, and the sum of $120,000, or any portion of it, which

25 was tendered by Defendants Danelle and Jason Miller for the purpose of purchasing a house in

26 Puerto Rico and described by the Millers in their supplemental brief (ECF No. 64) as currently

27 remaining in Puerto Rico.

28   */ / /*

1       **IT IS FURTHER ORDERED** that the Temporary Receiver shall submit a report to this

2   Court and the FTC on or before the **fifth (5th) day** of each calendar month that this Order is in

3   effect, excluding the first month. The report shall disclose the exact amount spent by the

4   Temporary Receiver to pay the bills of Defendants Danelle and Jason Miller for the previous

5   month, shall note any missing documentation for living and personal expenditures made by the

6   Millers, and shall report to this Court as to the Millers' compliance with this Order.

7       **IT IS FURTHER ORDERED** that Defendants Danelle and Jason Miller shall submit an

8   accounting of the $6,068,676 in cash distributions and compensation received by the Millers

9   from January 1, 2010 through December 31, 2013, as identified in Tab 10 of the Temporary

10  Receiver's Report (ECF No. 56), to this Court (under seal) and to the FTC by **February 15,**

11  **2015**. The Millers are not required to account for the $750,000 received between January 1, 2014

12  and October 16, 2014, which was already discussed in Defendants' supplemental brief (ECF No.

13  64).

14      **DATED** this 4th day of December, 2014.

15

16

17      **RICHARD F. BOULWARE, II**

18      **UNITED STATES DISTRICT JUDGE**

19

20

21

22

23

24

25

26

27

28

- 6 -

**Exhibit 1A - Page 6 of 6**

# EXHIBIT 1B

1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

\* \* \*

7
8   FEDERAL TRADE COMMISSION,                    Case No. 2:14-cv-01649-RFB-GWF
9                               Plaintiff,
                                                        **ORDER**
10        v.
                                               Defendants' Second Motion for Limited
11  HEALTH FORMULAS, LLC, *et al.*,            Modification of Asset Freeze (ECF No. 123)
12                              Defendants.

13        This matter is before the Court on Defendants' Second Motion for Limited Modification

14  of the Asset Freeze (ECF No. 123) that has been in place since the Court first entered a Temporary

15  Restraining Order (TRO) against Defendants in its Order entered on October 9, 2014. See ECF

16  No. 12.

17        On October 7, 2014, Plaintiff Federal Trade Commission (FTC) filed a complaint

18  requesting a permanent injunction and other equitable relief against the moving Defendants. ECF

19  No. 1. On the same day, the FTC filed an ex parte motion for a temporary restraining order,

20  including an asset freeze and appointment of a Temporary Receiver, which the Court granted on

21  October 9, 2014. ECF Nos. 5, 12. On December 4, 2014, following a hearing, the Court issued an

22  order modifying the asset freeze for a three-month period. ECF No. 77. Specifically, the Court

23  ordered the Receiver to disburse $30,000 per month in attorneys' fees to Ifrah PLLC and Snell &

24  Wilmer LLC and to disburse $1,500 per month to Defendants Jason and Danelle Miller ("the

25  Millers") for living and personal expenses. Id. The Court also authorized the Receiver to make

26  direct bill payments of up to $10,000 per month for certain specified expenses of the Millers. Id.

27  This order stated that it would expire on February 28, 2014. Id. at 5.

28

1    On February 5, 2015, the FTC filed an amended complaint in which it named an additional

2    thirty-four corporate Defendants. ECF No. 114. At a status conference on February 18, 2015, the

3    Millers and the corporate Defendants (together, the "Miller-related Defendants) made an oral

4    motion to extend the order modifying the asset freeze to permit the continued disbursement of

5    funds for living expenses and attorneys' fees. Minutes of Proceedings, ECF No. 121. The Court

6    extended its order for one month with respect to the disbursement of $1,500 for the Millers'

7    personal expenses, but did not extend it for any other payments. Id. On February 23, 2015, the

8    Miller-related Defendants filed a second motion requesting a modification of the asset freeze, in

9    which they essentially requested an extension of the Court's original modification order of

10   December 4, 2014. ECF No. 123.

11    The Court has considered the parties' briefs and representations heard at the hearing held

12   on this matter on March 23, 2015.  At this time, the Court is not convinced that other assets are not

13   available to the Millers or that it would be appropriate to permit the continued expenditure of

14   receivership assets for attorneys' fees for the Miller-related Defendants. For these reasons as well

15   as those stated on the record at the March 23 hearing, and in light of the inherent equitable power

16   of this Court to fashion "provisional remedies ancillary to its authority to provide final equitable

17   relief," Reebok Intern., Ltd. v. Marnatech Enterprises, Inc., 970 F.2d 552, 559 (9th Cir. 1992), the

18   Court finds that there is good cause to order a temporary modification to the asset freeze imposed

19   in this case to permit access to funds for personal expenses, health insurance payments, and child

20   care payments, but not for attorneys' fees. Defendants' motion is therefore GRANTED in part and

21   DENIED in part.

22

23                                            **ORDER**

24    Accordingly,

25    **IT IS ORDERED** that the Temporary Receiver shall have the authority to make direct bill

26   payments for **three (3) months** on behalf of Defendants Danelle and Jason Miller for the following

27   expenses only: (1) court-ordered child support on behalf of Jason Miller, and (2) monthly premium

28   payments for the Millers' health insurance plan purchased through Anthem Blue Cross. The

- 2 -

1   Temporary Receiver shall make these bill payments using funds held in the Millers' personal

2   accounts at Comerica Bank, which shall remain frozen except for expenditures made by the

3   Temporary Receiver as authorized in this Order. If, as a result of this Order, the funds held in the

4   Millers' personal accounts are depleted such that they drop to $5,000 or less, the Temporary

5   Receiver shall begin making bill payments from funds held in the accounts of Method Films Inc.

6   and shall use its discretion to choose those account(s) from which it is most appropriate or

7   convenient to withdraw funds. The Millers shall submit copies of invoices for the bills or expenses

8   described above, including the amounts due, to the Temporary Receiver on or before the **fifteenth**

9   **(15th) day** of each month that this Order is in effect, with the first date for submitting invoices

10  occurring on **April 15, 2015**. Upon receiving those invoices, the Temporary Receiver shall

11  immediately make the appropriate payments from the accounts described above.

12      **IT IS FURTHER ORDERED** that the Temporary Receiver shall disburse $1,500 per

13  month directly to Defendants Danelle and Jason Miller using funds held in the Millers' personal

14  accounts at Comerica Bank, which shall remain frozen except for expenditures authorized in this

15  Order, for **three (3) months** beginning on April 1, 2015 for living and personal expenses.

16  Defendants Danelle and Jason Miller shall keep records of all purchases and expenditures made

17  using cash disbursements released to them by the Temporary Receiver and shall submit receipts

18  or other documentation for all purchases or expenditures to the Temporary Receiver on or before

19  the **twenty-fifth (25th) day** of each month that this Order is in effect, with the first date for

20  submitting documentation occurring on **April 25, 2015**. If the Millers have complied with this

21  requirement, the Temporary Receiver shall disburse funds on the first day of each month that this

22  Order is in effect, with the final disbursement under this Order occurring on June 1, 2015. The

23  requirement that the Millers provide documentation of their purchases to the Temporary Receiver

24  also applies to the first disbursement occurring on April 1, 2015; in order to receive this

25  disbursement, the Millers must submit documentation relating to purchases made using the funds

26  that were disbursed on March 1, 2015.

27      **IT IS FURTHER ORDERED** that during the three (3) months that this Order is in effect

28  (beginning on April 1, 2015 and ending on June 30, 2015), Defendants Danelle and Jason Miller

1    shall submit documentation to the Temporary Receiver on the **twenty-fifth (25th) day** of each

2    month demonstrating their efforts towards obtaining lawful employment.

3        **IT IS FURTHER ORDERED** that Defendants Danelle and Jason Miller shall obtain the

4    permission of the Temporary Receiver before transferring, selling, leasing, or otherwise disposing

5    of (or attempting to do the same) any real or personal property in their possession that they have

6    not already turned over to the Temporary Receiver, including their home located in Woodland

7    Hills, California.

8        **IT IS FURTHER ORDERED** that if Defendants Danelle and Jason Miller come into

9    actual or constructive possession or control of any additional funds or assets not previously

10   disclosed to this Court, the Temporary Receiver and the FTC, they shall immediately and fully

11   disclose such funds or assets to this Court, the Temporary Receiver and the FTC and shall

12   immediately turn over such funds or assets to the Temporary Receiver. This includes, but is not

13   limited to, any funds or assets currently being held abroad and which have not yet been repatriated

14   to the United States, funds derived from the Millers' ownership interest in real property located in

15   Indiana and described as "Main Street House, IN" in Item 17 of Schedule C of their financial

16   disclosures to the FTC, and the sum of $120,000, or any portion of it, which was tendered by

17   Defendants Danelle and Jason Miller for the purpose of purchasing a house in Puerto Rico and

18   described by the Millers in their supplemental brief (ECF No. 64) as currently remaining in Puerto

19   Rico.

20       **IT IS FURTHER ORDERED** that the Temporary Receiver shall submit a report to this

21   Court and the FTC on or before the **fifth (5th) day** of each calendar month that this Order is in

22   effect, excluding the first month. The report shall disclose the exact amount spent by the

23   Temporary Receiver to pay the bills of Defendants Danelle and Jason Miller for the previous

24   month, shall note any missing documentation for living and personal expenditures made by the

25   Millers, and shall report to this Court as to the Millers' compliance with this Order.

26   ///

27   ///

28   ///

- 4 -

**Exhibit 1B - Page 4 of 5**

1      **IT IS FURTHER ORDERED** that the Court does not authorize the expenditure of any

2 funds under the control of the Temporary Receiver as payment for counsel for the Miller-related

3 Defendants at this time. The Temporary Receiver shall submit its position with respect to whether

4 the Court should authorize such an expenditure by April 6, 2015.

5      **IT IS FURTHER ORDERED** that the modifications to the asset freeze described in this

6 Order shall take effect on April 1, 2015 and shall expire on June 30, 2015.

7

8      DATED this 25th day of March, 2015.

9

10

11                              **RICHARD F. BOULWARE, II**

                                  **United States District Judge**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 1B - Page 5 of 5**

# EXHIBIT 2

## Giovanni M. Ruscitti

| | |
|---|---|
| **From:** | Byron Moldo <bmoldo@ECJLAW.COM> |
| **Sent:** | Wednesday, September 06, 2017 1:14 PM |
| **To:** | Giovanni M. Ruscitti; Josh Teeple (jteeple@gtfas.com) |
| **Subject:** | RE: Account information - IMPORTANT |

Gio, here's a screen shot of the account balances as of yesterday.  Let me know if you need anything else.  Byron

| Account Balances | | | All Accounts ▼ | ⚙ ▽ |
|---|---|---|---|---|
| **Checking ▲** | **Action** | **Ledger Balance** | **Accessible Balance\*** | |
| Absolutely Working, LLC | ✉ | $10,480.60<br>As of 09/05/2017 15:38 | $10,480.60<br>As of 09/05/2017 15:38 | |
| Absolutely Working, LLC | ✉ | $0.00<br>As of 09/05/2017 15:38 | $0.00<br>As of 09/05/2017 15:38 | |
| Blue Rocket Brands, LLC | ✉ | $0.00<br>As of 09/05/2017 15:38 | $0.00<br>As of 09/05/2017 15:38 | |
| Brand Force LLC | ✉ | $30,226.25<br>As of 09/05/2017 15:38 | $30,226.25<br>As of 09/05/2017 15:38 | |
| Brass Triangle, LLC | ✉ | $4,335.03<br>As of 09/05/2017 15:38 | $4,335.03<br>As of 09/05/2017 15:38 | |
| Brass Triangle, LLC | ✉ | $0.00<br>As of 09/05/2017 15:38 | $0.00<br>As of 09/05/2017 15:38 | |
| Bridge Ford, LLC | ✉ | $3,939.82<br>As of 09/05/2017 15:38 | $3,939.82<br>As of 09/05/2017 15:30 | |
| Bridge Ford, LLC | ✉ | $0.00<br>As of 09/05/2017 15:38 | $0.00<br>As of 09/05/2017 15:38 | |
| Brookville Lane, LLC | ✉ | $771.80<br>As of 09/05/2017 15:38 | $771.80<br>As of 09/05/2017 15:38 | |
| Cherry Blitz LLC | ✉ | $0.00<br>As of 09/05/2017 15:38 | $0.00<br>As of 09/05/2017 15:38 | |
| Condor Canyon, LLC | ✉ | $100.00<br>As of 09/05/2017 15:38 | $100.00<br>As of 09/05/2017 15:38 | |
| Desert Gecko LLC | ✉ | $36,023.70<br>As of 09/05/2017 15:38 | $36,023.70<br>As of 09/05/2017 15:38 | |
| Doing Whats Possible LLC | ✉ | $27,779.54<br>As of 09/05/2017 15:38 | $27,779.54<br>As of 09/05/2017 15:38 | |
| Elation Marketing LLC | ✉ | $0.00<br>As of 09/05/2017 15:38 | $0.00<br>As of 09/05/2017 15:38 | |
| Flat Iron Avenue LLC | ✉ | $0.00<br>As of 09/05/2017 15:38 | $0.00<br>As of 09/05/2017 15:38 | |
| Greenville Creek, LLC | ✉ | $2,464.10<br>As of 09/05/2017 15:38 | $2,464.10<br>As of 09/05/2017 15:38 | |

1

**Exhibit 2 - Page 1 of 2**

| | | | |
|---|---|---|---|
| How and Why LLC | | $26,097.02 As of 09/05/2017 15:38 | $26,097.02 As of 09/05/2017 15:38 |
| Indigo Systems, LLC | | $2,201.09 As of 09/05/2017 15:38 | $2,201.09 As of 09/05/2017 15:38 |
| Juniper Solutions LLC | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Mint House, LLC | | $1,489.06 As of 09/05/2017 15:38 | $1,489.06 As of 09/05/2017 15:38 |
| Mint House, LLC | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Newport Crossing, LLC | | $24,397.71 As of 09/05/2017 15:38 | $24,397.71 As of 09/05/2017 15:38 |
| Revguard, LLC- Opt- | | $168,403.41 As of 09/05/2017 15:38 | $167,735.53 As of 09/05/2017 15:38 |
| Revguard, LLC-Payroll | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Revguard, LLC-Tax | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Revlivel, LLC- Tax | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Revlivel, LLC-Opt | | $128,291.05 As of 09/05/2017 15:38 | $123,712.66 As of 09/05/2017 15:38 |
| Revlivel, LLC-Payroll | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Revmountain, LLC | | $563.52 As of 09/05/2017 15:38 | $563.52 As of 09/05/2017 15:38 |
| Roadrunner B2C, LLC-Opt | | $42,287.49 As of 09/05/2017 15:38 | $42,287.49 As of 09/05/2017 15:38 |
| Roadrunner B2C, LLC-Payroll | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Roadrunner B2C, LLC-Tax | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Roirunner LLC | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Salamonie River, LLC | | $17,916.44 As of 09/05/2017 15:38 | $17,916.44 As of 09/05/2017 15:38 |
| Sandstone Beach LLC | | $20,098.09 As of 09/05/2017 15:38 | $20,098.09 As of 09/05/2017 15:38 |
| Sandstone Beach, LLC | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Snow Sale, LLC | | $6,534.99 As of 09/05/2017 15:38 | $6,534.99 As of 09/05/2017 15:38 |
| Snow Sale, LLC | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Solid Ice, LLC | | $1,884.17 As of 09/05/2017 15:38 | $1,884.17 As of 09/05/2017 15:38 |
| Spruce River, LLC | | $3,443.08 As of 09/05/2017 15:38 | $3,443.08 As of 09/05/2017 15:38 |
| Three Lake, LLC | | $2,125.30 As of 09/05/2017 15:38 | $2,125.30 As of 09/05/2017 15:38 |
| Thunder Avenue LLC | | $20,000.00 As of 09/05/2017 15:38 | $20,000.00 As of 09/05/2017 15:38 |
| University & Folsom LLC | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |
| Wave Rock, LLC | | $103,799.01 As of 09/05/2017 15:38 | $103,799.01 As of 09/05/2017 15:38 |
| Wheeler Ford Marketing, LLC | | $9,481.59 As of 09/05/2017 15:38 | $9,481.59 As of 09/05/2017 15:38 |
| Wild Farms, LLC | | $29,249.04 As of 09/05/2017 15:38 | $29,249.04 As of 09/05/2017 15:38 |
| Wild Farms, LLC | | $0.00 As of 09/05/2017 15:38 | $0.00 As of 09/05/2017 15:38 |

Exhibit 2 - Page 2 of 2

# EXHIBIT 3

| | |
|---|---|
| 1 | RUSS, AUGUST & KABAT<br>Larry C. Russ, State Bar No. 082760 |
| 2 | lruss@raklaw.com<br>Benjamin T. Wang, State Bar No. 228712 |
| 3 | bwang@raklaw.com<br>Judith L. Meadow, State Bar No. 089665 |
| 4 | jmeadow@raklaw.com<br>Nathan D. Meyer, State Bar No. 239850 |
| 5 | nmeyer@raklaw.com<br>12424 Wilshire Boulevard, 12th Floor |
| 6 | Los Angeles, California  90025<br>Telephone:  (310) 826-7474 |
| 7 | Facsimile:(310) 826-6991 |
| 8 | Attorneys for Defendants<br>Asset Capital Management Group, Crown Funding Company, LLC |
| 9 | Western Capital Group, Inc., Credit MP, LLC, One FC, LLC,<br>Thai Han, Keith Hua and James Tran Phelps |
| 10 | |
| 11 | |
| 12 | **UNITED STATES DISTRICT COURT** |
| 13 | **CENTRAL DISTRICT OF CALIFORNIA** |

| | | |
|---|---|---|
| 14 | FEDERAL TRADE COMMISSION, | Case No. 13-01107 DSF (JCX) |
| 15 | Plaintiff, | [Assigned to The Honorable Dale S. |
| 16 | v. | Fischer, Courtroom 840] |
| 17 | ASSET & CAPITAL MANAGEMENT | **NOTICE OF MOTION AND** |
| 18 | GROUP, et al. and DOES 1 through<br>100, inclusive, | **DEFENDANTS' UNOPPOSED<br>MOTION FOR RELEASE OF** |
| 19 | Defendants. | **FUNDS FOR LIVING EXPENSES<br>AND ATTORNEYS' FEES TO** |
| 20 | | **THAI HAN, KEITH HUA AND<br>JAMES TRAN PHELPS** |
| 21 | | Judge: Dale S. Fischer |
| 22 | | Ctrm:  840<br>Date:  November 4, 2013 |
| 23 | | Time: 1:30 p.m. |
| 24 | | Original Complaint Filed:<br>    July 23, 2013 |
| 25 | | |
| 26 | | |
| 27 | 3447-002 130930 Unopposed Motion for Release of Funds.doc | |
| 28 | **DEFENDANTS' UNOPPOSED MOTION FOR RELEASE OF FUNDS FOR<br>LIVING EXPENSES AND ATTORNEY'S FEES TO THAI HAN, KEITH<br>HUA AND JAMES TRAN PHELPS** | |

RUSS, AUGUST & KABAT

Exhibit 3 - Page 1 of 6

1    TO THE HONORABLE DALE S. FISCHER, UNITED STATES
2    DISTRICT COURT JUDGE, AND TO ALL PARTIES AND THEIR
3    ATTORNEYS OF RECORD:

4    PLEASE TAKE NOTICE that on November 4, 2013, Defendants Thai Han,
5    Jim Tran Phelps, Keith Hua, Asset & Capital Management Group, Crown Funding
6    Company, LLC, Western Capital Group, Inc., Credit MP, LLC, and One FC, LLC
7    (the "ACMG Defendants") will and hereby do move pursuant to Section II.E of the
8    Stipulated Preliminary Injunction (the "Order") (D.I. 51) for an order granting the
9    release of additional funds for the payment of the reasonable and necessary living
10   expenses of defendants Han, Phelps and Hua, and for ACMG Defendants'
11   attorney's fees.  As stated herein and in the supporting declaration of Benjamin T.
12   Wang, the present request for release of funds for attorney's fees and living
13   expenses is reasonable.  ACMG Defendants also respectfully request that the Court
14   grant the requested relief before the FTC's anticipated motion to stay the case in
15   light of the Government shutdown.  ACMG Defendants have met and conferred
16   with Plaintiff Federal Trade Commission ("FTC") and the FTC has indicated that it
17   does not oppose this motion.

18   The Stipulated Preliminary Injunction (the "Order") (D.I. 51) imposes an
19   asset freeze over the funds, real and personal property and other assets of the
20   ACMG Defendants, with the exception of specified funds as set forth in Sections
21   II.B-E of the Order.

22   Pursuant to Section II.B-D, funds were released to cover the reasonable and
23   necessary living expenses of defendants Messrs. Hua, Han, and Phelps.

24   Section II.E of the Order provides that defendants Messrs. Hua, Han, and
25   Phelps may request the release of additional funds for the payment of reasonable
26   and necessary living expenses and attorney's fees.

27

28   3447-002 130930 Unopposed Motion for Release of Funds.doc                    2

DEFENDANTS' UNOPPOSED MOTION FOR RELEASE OF FUNDS FOR
LIVING EXPENSES AND ATTORNEY'S FEES TO THAI HAN, KEITH
HUA AND JAMES TRAN PHELPS

Exhibit 3 - Page 2 of 6

RUSS, AUGUST & KABAT

1        Since the original release of funds as provided in Section II.B-D of the

2   Order, Mr. Hua has spent $7,682.00 to cover payments for his home mortgage,

3   homeowner association, utilities, car, car insurance, car registration, phone, food,

4   and child support payments.  Mr. Hua now has only $818.00 remaining, is already

5   behind in additional child support payments, and will not be able to satisfy bills for

6   living expenses that will soon come due.  The FTC does not oppose the release of

7   the sum of $1,000 to defendant Mr. Hua for living expenses, with said $1,000 to be

8   derived from the reserves identified as "Cash on Hand" at Item 9a, page 4, of the

9   sworn financial statement of Mr. Hua, dated August 5, 2013.  All remaining "Cash

10   on Hand" identified by Mr. Hua shall remain frozen.

11        Since the original release of funds as provided in Section II.B-D of the

12   Order, Mr. Han has spent $8,555.00 to cover payments for his home utilities, home

13   alarm, car, health insurance, phones, clothing and food for his family.  Mr. Han

14   now has only $445.00 remaining, and will not be able to satisfy bills for several

15   upcoming living expenses that will soon come due.  The FTC does not oppose the

16   release of the sum of $4,000 to Mr. Han for living expenses, with said $4,000 to be

17   derived from the reserves identified as "Cash on Hand" at Item 9a, page 4, of the

18   sworn financial statement of Thai Han, dated August 5, 2013.  All remaining

19   "Cash on Hand" identified by Mr. Han shall remain frozen.

20        Since the original release of funds as provided in Section II.B-D of the

21   Order, Mr. Phelps has spent $8,600.00 to cover payments for his rent, utilities,

22   cars, phone, insurance, clothing and food.  Mr. Phelps now has only $400.00

23   remaining, and will not be able to satisfy bills for several upcoming living

24   expenses that will soon come due.  The FTC does not oppose the release of the

25   sum of $4,000 to Mr. Phelps for living expenses, with said $4,000 to be derived

26   from the reserves identified as "Cash on Hand" at Item 9a, page 4, of the sworn

27

28   3447-002 130930 Unopposed Motion for Release of Funds.doc

RUSS, AUGUST & KABAT

3

**DEFENDANTS' UNOPPOSED MOTION FOR RELEASE OF FUNDS FOR
LIVING EXPENSES AND ATTORNEY'S FEES TO THAI HAN, KEITH
HUA AND JAMES TRAN PHELPS**

Exhibit 3 - Page 3 of 6

1    financial statement of Jim Tran Phelps, dated August 5, 2011 [sic].  All remaining

2    "Cash on Hand" identified by Mr. Phelps shall remain frozen.

3          Additionally, the FTC does not oppose the release of the sum of $105,000

4    from repatriated funds held in the escrow account of counsel (Russ August &

5    Kabat) for the ACMG Defendants for the payment of legal services provided or to

6    be provided to the ACMG Defendants.  The total sum of repatriated funds held in

7    escrow by Russ August & Kabat is $803,867.38.  Those funds were repatriated by

8    Messrs. Han and Phelps pursuant to Section VI.C of the Order, and are currently

9    held in Russ August & Kabat's IOLTA trust account, interest for which is provided

10   to the State Bar of California at the rate of .03%.  With the exception of the

11   $105,000 for payment of legal services, all remaining repatriated funds held in

12   escrow by Russ August & Kabat in connection with this matter shall remain

13   frozen.

14         As of August 31, 2013, counsel for the ACMG Defendants have billed

15   $99,257.52, which included fees for, among other things, (i) preparing each of the

16   Stipulating Individual Defendants for deposition and defending them at their

17   depositions, (ii) legal research regarding the claims asserted in the FTC's

18   complaint and potential defenses, (iii) numerous in-person meetings and telephone

19   conferences with the Stipulating Individual Defendants to gather facts, documents,

20   and other materials relevant to this matter, (iv) compiling extensive financial

21   disclosures for both the Stipulating Individual Defendants, several corporate

22   defendants, and several related entities as required by the temporary restraining

23   order and Order, (v) numerous telephone discussions and written correspondence

24   with various third parties to gather and collect facts, documents and other materials

25   relevant to this matter, and, where required, to provide notice of the temporary

26   restraining order and Order, (vi) numerous telephone conferences and written

27   correspondence with counsel for the FTC and Receiver to ensure compliance with

28   3447-002 130930 Unopposed Motion for Release of Funds.doc

RUSS, AUGUST & KABAT

4

**DEFENDANTS' UNOPPOSED MOTION FOR RELEASE OF FUNDS FOR
LIVING EXPENSES AND ATTORNEY'S FEES TO THAI HAN, KEITH
HUA AND JAMES TRAN PHELPS**

Exhibit 3 - Page 4 of 6

RUSS, AUGUST & KABAT

1    the terms of the Order and to facilitate the collection and disclosure of information

2    and materials required by the temporary restraining order and Order, (vii) drafting,

3    reviewing, and revising the parties' stipulated preliminary injunction and

4    correspondence with the FTC and Receiver regarding the same, (viii) preparation

5    of various declarations regarding employment prospects and compliance with the

6    terms of the temporary restraining order and Order, and (ix) various other activities

7    to preserve and collect assets of the Receivership estate, including facilitating the

8    repatriation of over $800,000.[1]   The requested funds will be used to pay for past

9    and future attorney's fees.   The ACMG Defendants are currently engaged in

10   settlement discussions with the FTC, and, assuming settlement discussion continue

11   to be productive, expect that the number of hours billed will decrease.

12           Accordingly, and subject to the approval of the Court, the ACMG

13   Defendants respectfully request that the following sums be released from the assets

14   frozen pursuant to the Order, Section II.E, according to the guidelines provided

15   herein:

16           a.      To Thai Han, $4,000;

17           b.      To Jim Tran Phelps, $4,000;

18           c.      To Keith Hua, $1,000; and

19           d.      To counsel (Russ August & Kabat) for the ACMG Defendants,

20           $105,500.

21

22   Dated: October 1, 2013                    Respectfully submitted,

23

24                                             /s/ Benjamin T. Wang
                                               LARRY C. RUSS
25                                             lruss@raklaw.com

26   _____

27   [1] Concurrently herewith counsel for the ACMG Defendants will submit an application and
     proposed order to provide its billing records in this matter to the Court for in camera inspection.

28   3447-002 130930 Unopposed Motion for Release of Funds.doc                5

**DEFENDANTS' UNOPPOSED MOTION FOR RELEASE OF FUNDS FOR
LIVING EXPENSES AND ATTORNEY'S FEES TO THAI HAN, KEITH
HUA AND JAMES TRAN PHELPS**

Exhibit 3 - Page 5 of 6

BENJAMIN T. WANG
bwang@raklaw.com
NATHAN MEYER
nmeyer@raklaw.com
JUDITH L. MEADOW
jmeadow@raklaw.com
Russ August and Kabat
12424 Wilshire Boulevard 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
Facsimile: 310-826-6991

*Attorneys for the ACMG Defendants*

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3447-002 130930 Unopposed Motion for Release of Funds.doc

6

**DEFENDANTS' UNOPPOSED MOTION FOR RELEASE OF FUNDS FOR LIVING EXPENSES AND ATTORNEY'S FEES TO THAI HAN, KEITH HUA AND JAMES TRAN PHELPS**

Exhibit 3 - Page 6 of 6

# EXHIBIT 4

ORIGINAL

1   FAYE CHEN BARNOUW, Cal. Bar No. 168631
    JENNIFER M. BRENNAN, Cal. Bar No. 225473
2   FEDERAL TRADE COMMISSION
    10877 Wilshire Blvd., Suite 700
3   Los Angeles, CA 90024
    Telephone: (310) 824-4343
4   Facsimile: (310) 824-4380
    e-mail: fbarnouw@ftc.gov; jmbrennan@ftc.gov
5
6   Attorneys for Plaintiff
    FEDERAL TRADE COMMISSION
7
8
9
10

FILED
CLERK, U.S. DISTRICT COURT

MAR 21 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

11
12  FEDERAL TRADE COMMISSION,        Case no. CV06-0849 SJO (OPx)
13                    Plaintiff,
14          v.                       [PROPOSED]
                                     PRELIMINARY INJUNCTION WITH
15  UNIVERSAL PREMIUM SERVICES,      ASSET FREEZE, APPOINTMENT OF
    INC., a California corporation (also   PERMANENT RECEIVER, AND
16  known as Premier Benefits, Inc.);  OTHER EQUITABLE RELIEF
    CONSUMER REWARD NETWORK,
17  INC., a California corporation;    [PERSONAL DATA IDENTIFIERS
    STAR COMMUNICATIONS LLC, a       REFERENCE LIST FILED ON
18  California limited liability company;  FEBRUARY 14, 2006 UNDER SEAL]
    MEMBERSHIP SERVICES DIRECT,
19  INC., a Nevada corporation (also
    known as Continuity Partners, Inc.);
20  CONNECT2USA, INC., a Nevada
    corporation;
21  BRIAN K. MACGREGOR;
    HARIJINDER SIDHU;
22  JOSEPH F. LAROSA, JR.;
    PRANOT SANGPRASIT;
23  WILLIAM THOMAS HEICHERT;
    MICHAEL HOWARD CUSHING;
24  PAUL P. TOSI; and
    MANH CAO,
25
26                    Defendants.
27
28

DOCKETED ON CM

MAR 22 2006

BY                     006

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

57

**Exhibit 4 - Page 1 of 40**

Case 2:06-cv-00849-GW-OP   Document 57   Filed 03/21/06   Page 2 of 40   Page ID #:57

1

## TABLE OF CONTENTS

2
3
FINDINGS OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
4
    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5
PROHIBITED BUSINESS ACTIVITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
6
    I.    Prohibited Misrepresentations . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    II.   Prohibition Against Causing Billing Information to Be Submitted
7
    Without the Express Informed Consent of the Customer . . . . . . . . . . . . . 7
    III.  Prohibition Against Violating Telemarketing Sales Rule . . . . . . . . . 8

8
ASSET PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
9
    IV.  Asset Freeze . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    V.   Retention of Assets and Documents by Financial Institutions and Other
10
    Third Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    VI.  Repatriation of Foreign Assets . . . . . . . . . . . . . . . . . . . . . . . . . . 14
11
    VII.  Interference with Repatriation . . . . . . . . . . . . . . . . . . . . . . . . . . 16

12
RECEIVERSHIP PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    VIII. Appointment of Permanent Receiver . . . . . . . . . . . . . . . . . . . . . . 16
13
    IX.  Permanent Receivership Duties . . . . . . . . . . . . . . . . . . . . . . . . . 17
    X.    Cooperation with the Receiver . . . . . . . . . . . . . . . . . . . . . . . . . . 21
14
    XI.  Delivery of Receivership Property . . . . . . . . . . . . . . . . . . . . . . . 23
    XII.  Transfer of Funds to the Receiver . . . . . . . . . . . . . . . . . . . . . . . 24
15
    XIII. Collection of Receivership Defendants' Mail . . . . . . . . . . . . . . . . 24
    XIV. Compensation of Permanent Receiver . . . . . . . . . . . . . . . . . . . . 25
16
    XV.  Receiver's Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    XVI. Immediate Access to Defendants' Business Premises, Books and
17
    Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    XVII. Defendants' Access to Receivership Defendants' Business Premises 29
18
    XVIII. Stay of Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

19
DEFENDANTS' REPORTING AND RELATED OBLIGATIONS . . . . . . . . . . . 31
20
    XIX. Distribution of Order by Defendants . . . . . . . . . . . . . . . . . . . . . 31
    XX.  Financial Statements and Accounting . . . . . . . . . . . . . . . . . . . . . 32
21
    XXI. Preservation of Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    XXII. Record Keeping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
22
    XXIII. Notification re Defendants' Business Activities . . . . . . . . . . . . . . . 34

23
MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    XXIV. Expedited Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
24
    XXV. Credit Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    XXVI. Correspondence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
25
    XXVII. Service of this Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    XXVIII. Expiration of this Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
26
    XXIX. Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

27

28

**Exhibit 4 - Page 2 of 40**

1        Plaintiff Federal Trade Commission ("FTC" or "Commission"), pursuant to

2    Sections 13(b) and 19(a) of the Federal Trade Commission Act ("FTC Act"), 15

3    U.S.C. §§ 53(b) and 57b(a), and the Telemarketing and Consumer Fraud and Abuse

4    Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101 *et seq.*, filed a Complaint

5    for Permanent Injunction and Other Equitable Relief, and applied *ex parte* for a

6    Temporary Restraining Order and for an order to show cause why a Preliminary

7    Injunction should not be granted and a Permanent Receiver should not be appointed,

8    pursuant to Rule 65 of the Federal Rules of Civil Procedure, on February 14, 2006.

9    On the FTC's *ex parte* application, this Court filed a Temporary Restraining Order

10   with asset freeze, appointment of a temporary receiver, and other equitable relief,

11   and an order to show cause why a Preliminary Injunction should not issue and why a

12   Permanent Receiver should not be appointed ("TRO") against defendants on

13   February 21, 2006.  A hearing on the Order to Show Cause was held on March 13,

14   2006.

15       Having considered the pleadings, memoranda, declarations, and other exhibits

16   filed in connection with the order to show cause, and argument of counsel at the

17   hearing on the order to show cause, the Court **HEREBY GRANTS** Plaintiff FTC's

18   request for a preliminary injunction against Defendants and appointment of a

19   permanent receiver, based on the findings and grounds set forth in the Court's oral

20   ruling at the March 13, 2006 hearing on the Order to Show Cause and the Court's

21   "Order Granting Plaintiff Federal Trade Commission's Application for Preliminary

22   Injunction and Appointment of Permanent Receiver," entered March 15, 2006

23   ("March 15, 2006 Order Granting Preliminary Injunction").

24       This "Preliminary Injunction with Asset Freeze, Appointment of Permanent

25   Receiver, and Other Equitable Relief" ("this Order") has been prepared pursuant to

26   the Court's March 15, 2006 Order Granting Preliminary Injunction and reflects the

27   agreements concerning living expenses and attorneys' fees that counsel for Plaintiff

28   and counsel for Defendants Brian MacGregor and Membership Services Direct (the

1

**Exhibit 4 - Page 3 of 40**

1   "MacGregor Defendants"), and Joseph F. LaRosa, Jr., Pranot Sangprasit, William

2   Heichert, Michael H. Cushing, Paul Tosi, and Manh Dac Cao (the "Genga

3   Represented Defendants") entered into at the direction of the Court at the

4   commencement of the March 13, 2006 hearing on the Order to Show Cause, as

5   stated on the record at that hearing.

6

7                     **FINDINGS OF FACT**

8       The Court has considered the pleadings, declarations, exhibits, and

9   memoranda filed in support of the Commission's application and finds that:

10      1.     This Court has jurisdiction of the subject matter of this case, and there

11   is good cause to believe it will have jurisdiction over all parties, pursuant to 15

12   U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§1331, 1337(a) and 1345.  The

13   Complaint states a claim upon which relief may be granted under Sections 5 and

14   13(b) of the FTC Act, 15 U.S.C. §§ 45 and 53(b).

15      2.     There is good cause to believe that Defendants have engaged in and are

16   likely to engage in acts and practices that violate Section 5(a) of the FTC Act, 15

17   U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and

18   that the Commission is likely to prevail on the merits of this action.

19      3.     There is good cause to believe that immediate and irreparable harm to

20   consumers will result from Defendants' ongoing violations of the FTC Act and

21   Telemarketing Sales Rule unless Defendants are immediately restrained and

22   enjoined by Order of this Court.

23      4.     There is good cause to believe that immediate and irreparable damage

24   to the Court's ability to grant effective final relief in the form of monetary restitution

25   will occur from the sale, transfer, or other disposition or concealment by Defendants

26   of their assets or corporate records, unless Defendants are immediately enjoined by

27   Order of this Court.  The evidence set forth in the Plaintiff's *Ex Parte* TRO

28   Application, Supplemental Brief, and accompanying declarations and exhibits,

2

**Exhibit 4 - Page 4 of 40**

1  shows that the FTC is likely to prove that Defendants have engaged in a concerted

2  course of illegal activity in connection with the telemarketing of membership

3  programs and other goods and services to consumers nationwide, in violation of

4  Section 5 of the FTC Act and the TSR.  Thus there is good cause to believe that the

5  Defendants will attempt to conceal the scope of their illegal actions to avoid

6  returning their ill-gotten gains to consumers injured by their unlawful practices if

7  not restrained from doing so by Order of this Court.

8          5.        There is good cause for the Court to order an asset freeze and appoint a

9  permanent receiver for the Receivership Defendants.  The FTC has made a *prima*

10 *facie* case that the Receivership Defendants have made misrepresentations, directly

11 and through their employees, to those consumers for whom they are supposed to be

12 providing goods or services; that Defendants have engaged in a widespread effort to

13 debit money from these consumers based on deceptive or abusive acts and practices;

14 and that Defendants have retained ill-gotten gains from these and other practices.

15 Accordingly, a permanent receiver and asset freeze are reasonably necessary in order

16 to preserve the possibility of complete and meaningful relief at the conclusion of this

17 litigation.

18         6.        Weighing the equities and considering the Commission's likelihood of

19 ultimate success, this Preliminary Injunction with asset freeze, appointment of a

20 permanent receiver, and other equitable relief is in the public interest.

21         7.        No security is required of any agency of the United States for issuance

22 of a restraining order. Fed. R. Civ. P. 65(c).

23

24                                        **ORDER**

25                                     **Definitions**

26    For purposes of this Order, the following definitions shall apply:

27    1.        **"Assets"** means any legal or equitable interest in, right to, or claim to,

28 any real or personal property, including, without limitation, chattels, goods,

                                              3

Exhibit 4 - Page 5 of 40

1   instruments, equipment, fixtures, general intangibles, leaseholds, mail or other

2   deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares

3   of stock, and all cash, wherever located.

4       2.      **"Customer," "seller," "telemarketer,"** and **"telemarketing"** are

5   defined as in Section 310.2 of the TSR, 16 C.F.R. § 310.2.

6       3.      **"Defendants"** means Universal Premium Services, Inc., a California

7   Corporation (also known as Premier Benefits, Inc.); Consumer Reward Network,

8   Inc., a California Corporation; Star Communications LLC, a California Limited

9   Liability Company; Membership Services Direct, Inc., a Nevada Corporation (also

10   known as Continuity Partners, Inc.); Connect2USA, Inc., a Nevada Corporation;

11   Brian K. MacGregor; Harijinder Sidhu; Joseph F. LaRosa, Jr.; Pranot Sangprasit;

12   William Thomas Heichert; Michael Howard Cushing; Paul P. Tosi; and Manh Dac

13   Cao (aka Mike Cao), and each of them, by whatever names each might be known.

14   Pursuant to the provisions of Fed. R. Civ. P. 65(d), the provisions of this Order shall

15   be binding upon the Defendants and upon their officers, agents, directors,

16   employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates,

17   successors, assigns and all other persons or entities in active concert or participation

18   with them who receive actual notice of this Order by personal service or otherwise,

19   whether acting directly or through any trust, corporation, subsidiary, division or

20   other device.

21       4.      **"Corporate Defendants"** means Universal Premium Services, Inc., a

22   California Corporation (also known as Premier Benefits, Inc.); Best Buy Alliance,

23   Inc., a California Corporation (also known as Consumer Reward Network, Inc.);

24   Star Communications LLC, a California Limited Liability Company; Membership

25   Services Direct, Inc., a Nevada Corporation (also known as Continuity Partners,

26   Inc.); and Connect2USA, Inc., a Nevada Corporation, and their affiliates and

27   subsidiaries, and any other corporations or businesses under the control of any of

28   them.

4

**Exhibit 4 - Page 6 of 40**

5. **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and any other data compilations from which information can be obtained. A draft or non-identical copy is a separate document within the meaning of the term.

6. **"Financial institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including but not limited to any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, commercial check cashing facility, or any entity or person that holds, controls, or maintains custody of any account or asset of any Defendant.

7. **"ID#"** refers to the unique identifiers and personal identifiers listed in the "Personal Data Identifiers Reference List,'" filed on February 14, 2006 in the above-captioned matter under seal pursuant to Local Rule 79-5.4.

8. **"Individual Defendants"** means Brian K. MacGregor, Harijinder Sidhu, Joseph F. LaRosa, Jr., Pranot Sangprasit, William Thomas Heichert, Michael Howard Cushing, Paul P. Tosi, and Manh Dac Cao (aka Mike Cao).

9. **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

10. **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

11. **"Plaintiff"** means the Federal Trade Commission.

12. **"Receivership Defendants"** means Universal Premium Services, Inc., a California Corporation (also known as Premier Benefits, Inc.); Best Buy Alliance, Inc., a California Corporation (also known as Consumer Reward Network, Inc.); Star Communications LLC, a California Limited Liability Company; Membership

5

**Exhibit 4 - Page 7 of 40**

1   Services Direct, Inc., a Nevada Corporation (also known as Continuity Partners,

2   Inc.); Connect2USA, Inc., a Nevada Corporation; Merchant Risk Management, Inc.,

3   a Nevada corporation; All Star Access, Inc., a Colorado Corporation; Prime Time

4   Ventures, Inc., a Nevada Corporation; Pantel One Corporation, a Nevada

5   Corporation; Mammoth Consulting Group, LLC, a Nevada Limited Liability

6   Company; World Era Development Limited, a Hong Kong entity; Blitz Media, Inc.,

7   a Nevada Corporation; Impact Marketing, Inc., a Wyoming Corporation; Synergy

8   Marketing Group LLC, a California Limited Liability Company; Utalk Unlimited,

9   Inc., a Nevada corporation; and their affiliates and subsidiaries, and any other

10  corporations or businesses under the control of any of the Defendants.

11      13.   **"Receiver"** means the permanent receiver appointed in this Order.  The

12  term "receiver" also includes any deputy receivers as may be named by the

13  permanent receiver.

### PROHIBITED BUSINESS ACTIVITIES

### I.
### Prohibited Misrepresentations

17      IT IS THEREFORE ORDERED that in connection with the advertising,

18  promotion, offering or sale of goods or services by telephone or otherwise in

19  commerce, Defendants, as well as their successors, assigns, officers, agents,

20  directors, servants, employees, salespersons, independent contractors, attorneys,

21  corporations, subsidiaries, all other persons or entities directly or indirectly under

22  their control or under common control with any of them, and all other persons or

23  entities in active concert or participation with any of them who receive actual notice

24  of this Order by personal service or otherwise, whether acting directly or through

25  any corporation, subsidiary, division, or other device, including, but not limited to,

26  fictitious business names, and each such person, in connection with the advertising,

27  promotion, offering or sale of goods or services by telephone or otherwise in

28  commerce, are hereby preliminarily restrained and enjoined from making any

6

Exhibit 4 - Page 8 of 40

1   express or implied representation or omission of material fact that is false or

2   misleading, in any manner, orally or in writing, to any consumer or entity, including

3   but not limited to, any misrepresentation that:

4       A.      Defendants will send the consumers a free item if the consumers pay a

5   shipping and handling fee;

6       B.      Defendants provide a free trial period during which time the consumers

7   will not be charged fees;

8       C.      Defendants provide a cancellation period during which time the

9   consumers may obtain a refund for fees already paid;

10      D.      Consumers may cancel their memberships in Defendants' programs at

11  any time; and

12      E.      Defendants are affiliated with or endorsed or sponsored by a person or

13  government entity.

14

15                                  **II.**
16  **Prohibition Against Causing Billing Information to Be Submitted
    Without the Express Informed Consent of the Customer**

17      IT IS FURTHER ORDERED that in connection with the advertising,

18  promotion, offering or sale of goods or services by telephone or otherwise in

19  commerce, Defendants are hereby preliminarily restrained and enjoined from

20  causing billing information to be submitted for payment, directly or indirectly,

21  without the express informed consent of the customer.  For purposes of this Section,

22  "express informed consent" means:

23      A.      Defendants obtain from the customer the entire account number to be

24  charged;

25      B.      Defendants obtain from the customer his or her express agreement to be

26  charged for the goods or services and to be charged using the account number

27  provided by the customer;

28

7

**Exhibit 4 - Page 9 of 40**

1      C.     Defendants make and maintain an audio recording of the entire

2  telemarketing transaction; and

3      D.     The telemarketing transaction did not involve any deceptive or abusive

4  telemarketing practices, as defined in the TSR.

5

### III.
### Prohibition Against Violating Telemarketing Sales Rule

7      IT IS FURTHER ORDERED that in connection with the advertising,

8  promotion, offering or sale of goods or services by telephone or otherwise in

9  commerce, Defendants are hereby preliminarily restrained and enjoined from

10  violating any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310,

11  including but not limited to:

12      A.     Section 310.3(a)(2)(iv), which prohibits misrepresenting any material

13  aspect of the nature or terms of the seller's refund, cancellation, exchange, or

14  repurchase policies;

15      B.     Section 310.3(a)(2)(vii), which prohibits misrepresenting a seller's or

16  telemarketer's affiliation with, or endorsement or sponsorship by, any person or

17  government entity;

18      C.     Section 310.4(a)(1), which prohibits any seller or telemarketer from

19  using threats, intimidation, or the use of profane or obscene language;

20      D.     Section 310.4(a)(6), which prohibits causing billing information to be

21  submitted for payment without the express informed consent of the customer;

22      E.     Section 310.4(b)(1)(iii)(A), which prohibits telemarketers from

23  engaging in, or sellers from causing a telemarketer to engage in certain conduct,

24  including, *inter alia*, initiating any outbound telephone call to a person when that

25  person previously has stated that he or she does not wish to receive an outbound

26  telephone call made by or on behalf of the seller whose goods or services are being

27  offered; and

28

8

Exhibit 4 - Page 10 of 40

1      F.      Section 310.3(b), which prohibits any person from providing

2  substantial assistance or support to any seller or telemarketer when that person

3  knows or consciously avoids knowing that the seller or telemarketer is engaged in

4  any act or practice that violates Telemarketing Sales Rule Sections 310.3(a), (c), or

5  (d) or 310.4.

6

7                              **ASSET PROVISIONS**

                                   **IV.**
8                               **Asset Freeze**

9      IT IS FURTHER ORDERED that each Defendant is hereby preliminarily

10  restrained and enjoined from:

11      A.      Transferring, liquidating, converting, encumbering, pledging, loaning,

12  selling, concealing, dissipating, disbursing, assigning, spending, withdrawing,

13  granting a lien or security interest or other interest in, or otherwise disposing of any

14  funds, real or personal property, accounts, contracts, consumer lists (including lists

15  of consumer names, telephone numbers, addresses, or account numbers, or other

16  consumer data), shares of stock, or other assets, or any interest therein, wherever

17  located, that are: (1) owned or controlled by any Defendant, in whole or in part; (2)

18  in the actual or constructive possession of any Defendant; or (3) owned, controlled

19  by, or in the actual or constructive possession of any corporation, partnership, or

20  other entity directly or indirectly owned, managed, or controlled by any Defendant,

21  including, but not limited to any assets held by or for, or subject to access by, any of

22  the Defendants, at any bank or savings and loan institution, or with any broker-

23  dealer, escrow agent, title company, commodity trading company, precious metals

24  dealer, or other financial institution or depository of any kind;

25      B.      Opening or causing to be opened any safe deposit boxes titled in the

26  name of any Defendant, or subject to access by any of them;

27      C.      Incurring charges or cash advances on any credit card issued in the

28  name, singly or jointly, of any Defendant; and

                                    9

**Exhibit 4 - Page 11 of 40**

1       D.     Incurring liens or other encumbrances on real property, personal

2 property or other assets in the name, singly or jointly, of any Defendant.

3       *Provided*, that the assets affected by this Section shall include all assets of the

4 Defendants as of the time the TRO issued in this case was entered.

5       *Provided further*, that the freeze imposed in this Section shall be construed

6 not to apply to the assets that the Individual Defendants acquire following service of

7 the TRO issued in this case only if the Individual Defendant can prove that such

8 assets are not derived from activity prohibited by this Order and are not derived

9 from any other violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

10       E.     Notwithstanding the above, this Court permits a limited lift of the asset

11 freeze with respect to the Genga Represented Defendants (and to Harijinder Sidhu,

12 but only to the extent not covered by Paragraph F) in the sum total of $2,500 each

13 per month to pay for ordinary living expenses.  Brian MacGregor and corporate

14 defendant Membership Services Direct are permitted to a limited lift of the asset

15 freeze in the collective sum total of $5,000.00 per month to pay for ordinary living

16 expenses, including child support payments to Brian MacGregor's children.

17       F.     Harijinder Sidhu agrees to forego the limited lift of the asset freeze in

18 the amount of $2,500 per month for ordinary living expenses for the approximately

19 $10,000 cash that the FTC has already taken pursuant to the asset freeze.  Harijinder

20 Sidhu's wife Ranee Sidhu is not prohibited under this Order from using her own

21 personal funds to pay for Harijinder Sidhu's ordinary living expenses or attorneys'

22 fees, to the extent that such funds are not frozen pursuant to this Order.  These funds

23 include her personal bank accounts for which Harijinder Sidhu is not a signatory and

24 does not have authority to withdraw funds, or from her own personal line of credit

25 for which Harijinder Sidhu or his frozen assets is not a guarantor.

26       G.     In addition, this court permits a limited lift of the asset freeze with

27 respect to the liquid assets of defendants Joseph LaRosa, Pranot Sangprasit, William

28 Heichert, Michael H. Cushing, Paul Tosi, Manh Dac Cao, and Brian MacGregor to

10

**Exhibit 4 - Page 12 of 40**

1   pay those defendants' attorneys' fees, pursuant to the agreement of counsel for

2   Plaintiff and counsel for these defendants, limited as follows:

3          1.     Genga & Associates, P.C. is counsel for defendants Joseph

4   LaRosa, Pranot Sangprasit, William Heichert, Michael H. Cushing, Paul Tosi, and

5   Manh Dac Cao.  Manatt, Phelps & Phillips LLP is counsel for defendants Brian

6   MacGregor and Membership Services Direct, Inc.  These limitations apply to any

7   future counsel retained by these defendants in the event current defense counsel

8   withdraws from further representation from in this matter.  These defendants are

9   responsible for notifying any future defense counsel as to these limitations.

10         2.     Attorneys' fees incurred by each of these law firms, which their

11  individual defendant clients may pay from their frozen funds, are capped at

12  $360/hour for one senior attorney and $180/hour for one junior attorney, with a

13  maximum of 20 hours/week to be expended on this case by each attorney.  Only

14  attorneys fees incurred for substantive defense of this action and compliance with

15  the TRO, this Order, and future Court orders may be paid from frozen funds.

16  Attorneys' fees for time spent arguing over attorneys' fees and other issues which do

17  not involve substantive defense of this case or compliance with this Court's orders

18  may not be paid out of frozen funds.  Work that can be done by clerks charging a

19  lower rate should be done by such clerks.  Costs that can be minimized should be

20  minimized.  Attorneys' fees to be paid from these frozen funds shall not exceed

21  $10,000/week for the case.  Attorneys' fees to be paid from these frozen funds shall

22  not exceed $25,000 up through the March 13, 2006 hearing on the Order to Show

23  Cause.  Counsel shall submit their attorneys' fee bills (redacted for attorney work

24  product) to the FTC, and the parties shall jointly submit periodic stipulations to the

25  Court requesting release of funds for attorneys' fees which comply with this Section.

26  This provision does not prevent these individual defendants from paying attorneys

27  fees using their assets which are not frozen pursuant to this Order.

28

11

Exhibit 4 - Page 13 of 40

1    H.    No such expenses or fees, however, shall be paid from funds subject to

2  the asset freeze set forth in this Order except from cash on the person of Defendant,

3  or from an account designated by prior written notice to Plaintiff FTC.

4    I.    In addition, on or before the fifth (5th) day of each month, Brian

5  MacGregor and Membership Services Direct shall, individually or through their

6  respective counsel, submit a "Monthly Statement of Monies Received" to the

7  Receiver that will be accompanied with a signed declaration that the monies

8  received as stated are true and accurate.  Furthermore, Brian MacGregor and

9  Membership Services Direct or their counsel shall submit a "Notice of Expenditures

10  to the Permanent Receiver" on or before the fifth (5th) day of each month.  Attached

11  to the "Notice of Expenditures to the Permanent Receiver" shall be a signed

12  declaration by the defendant that the expenditures as stated are true and accurate.

13

14                                              **V.**
                                  **Retention of Assets and Documents by**
15                       **Financial Institutions and Other Third Parties**

16        IT IS FURTHER ORDERED that, until entry of a final judgment in this case,

17  any financial institution, or any person or other entity served with a copy of this

18  Order, or who otherwise has actual knowledge of this Order, shall:

19    A.    Hold and retain within such financial institution's, person's or other

20  entity's control, and prohibit the withdrawal, removal, assignment, transfer, pledge,

21  hypothecation, encumbrance, disbursement, dissipation, conversion, sale,

22  liquidation, or other disposal of any funds, documents, property, or other assets held

23  by or under such financial institution's, person's or other entity's control that are

24  held:

25        1.    on behalf of, or for the benefit of, any Defendant or any other

26  party subject to Section IV (Asset Freeze) above;

27

28

                                            12

Exhibit 4 - Page 14 of 40

1            2.     in any account maintained in the name of, or subject to

2  withdrawal by, any Defendant or any other party subject to Section IV (Asset

3  Freeze) above; or

4            3.     that are subject to access or use by, or under the signatory power

5  of, any Defendant or any other party subject to Section IV (Asset Freeze) above.

6  *Provided* that transfers or withdrawals may be made under this Section if authorized

7  in writing by counsel for Plaintiff (with respect to assets of any of the Individual

8  Defendants), by the Receiver and counsel for Plaintiff (with respect to assets of any

9  of the Receivership Defendants), or by further order of this Court;

10      B.    Deny access to any safe deposit box that is either:

11            1.     titled in the name, individually or jointly, of any Defendant or

12  other party subject to Section IV (Asset Freeze) above; or

13            2.     subject to access by any Defendant or other party subject to

14  Section IV (Asset Freeze) above;

15  *provided* that, immediate access shall be granted to Plaintiff FTC for the purpose of

16  determining the contents of such safe deposit boxes.

17      C.    To the extent not already provided pursuant to the TRO issued in this

18  case, provide to counsel for the FTC, within three (3) calendar days, a statement

19  setting forth:

20            1.     the identification of each account or asset titled in the name,

21  individually or jointly, or held on behalf of, or for the benefit of, Defendants or other

22  party subject to Section IV (Asset Freeze) above, whether in whole or in part;

23            2.     the balance of each such account, or a description of the nature

24  and value of such asset;

25            3.     the identification of any safe deposit box that is either titled in

26  the name of, individually or jointly, or is otherwise subject to access or control by,

27  any Defendant or other party subject to Section IV (Asset Freeze) above, whether in

28  whole or in part; and

13

**Exhibit 4 - Page 15 of 40**

1         4.    the identification of any account or safe deposit box which a

2  Defendant has closed within the past four years, the date closed, and the balance on

3  said date.

4         D.    Upon request by counsel for Plaintiff (with respect to assets held for

5  any of the Defendants) or the Receiver (with respect to assets held for any of the

6  Receivership Defendants), promptly provide Plaintiff or the Receiver with copies of

7  all records or other documentation pertaining to such account or asset, including but

8  not limited to originals or copies of account applications, account statements,

9  signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all

10  other debit and credit instruments or slips, currency transaction reports, 1099 forms,

11  and safe deposit box logs.

12         E.    At the direction of Plaintiff (with respect to assets held for any of the

13  Defendants) or the Receiver (with respect to assets held for any of the Receivership

14  Defendants), and without further order of this Court, convert any stocks, bonds,

15  options, mutual funds, or other securities to their cash equivalents.

16        *Provided* that the accounts subject to this Section include existing assets and

17  assets deposited after the effective date of this Order.  This Section shall not prohibit

18  transfers in accordance with any provision of this Order, or any further order of the

19  Court.

20        *Provided further* that the FTC is granted leave, pursuant to Fed. R. Civ. P. 45,

21  to subpoena documents immediately from any such financial institution, account

22  custodian, other entity or person, concerning the nature, location, status, and extent

23  of Defendants' assets, and compliance with this Order, and such financial

24  institution, account custodian, other entity or person shall respond to such subpoena

25  within five (5) business days after service.  For purposes of this subsection, the FTC

26  may serve any such subpoena by facsimile, overnight courier, or e-mail (Adobe

27  Acrobat .pdf files only).

28

14

Exhibit 4 - Page 16 of 40

# VI.
## Repatriation of Foreign Assets

IT IS FURTHER ORDERED that, within five (5) business days following the service of this Order:

A.     To the extent not already provided pursuant to the TRO issued in this case, each Defendant shall provide the FTC with a full accounting of all assets, accounts or documents outside of the territory of the United States which are held either: (1) by the Defendant; (2) for the Defendant's benefit; (3) in trust by or for the Defendant; or (4) under the Defendant's direct or indirect control. This accounting shall include a list of all scripts, correspondence, and recordings which are in the custody of any telemarketing call center used by the Defendant. Each Receivership Defendant shall also provide this accounting to the Receiver.

B.     Each Individual Defendant:

1.     To the extent they have not already done so pursuant to the TRO issued in this case, shall transfer to a financial institution or other entity within the territory of the United States all assets, accounts or documents in foreign countries held either: (1) by the Defendant; (2) for the Defendant's benefit; (3) in trust by or for the Defendant; or (4) under the Defendant's direct or indirect control.

2.     The same business day, shall, to the extent they have not already done so pursuant to the TRO issued in this case: (1) notify counsel for the FTC of the name and location of the financial institution or other entity that is the recipient of such funds, documents or assets; and (2) serve this Order on any such financial institution or other entity.

3.     Shall hold and retain all repatriated assets, accounts or documents and prevent any transfer, disposition, or dissipation whatsoever of any such assets or documents except as allowed by Section IV (Asset Freeze) of this Order.

15

Exhibit 4 - Page 17 of 40

1   These assets, accounts or documents shall include all scripts, correspondence, and
2   recordings which are in the custody of any telemarketing call center used by any
3   Defendant.

4
5                                   **VII.**
                          **Interference with Repatriation**

6          IT IS FURTHER ORDERED that Defendants are hereby preliminarily
7   restrained and enjoined from taking any action, directly or indirectly, which may
8   result in the encumbrance or dissipation of foreign assets, or in the hindrance of the
9   repatriation required by Section VI (Repatriation of Foreign Assets) of this Order,
10  including but not limited to:

11         A.    Sending any statement, letter, fax, e-mail or wire transmission, or
12  telephoning or engaging in any other act, directly or indirectly, that results in a
13  determination by a foreign trustee or other entity that a "duress" event has occurred
14  under the terms of a foreign trust agreement until such time that all assets have been
15  fully repatriated pursuant to Section VI (Repatriation of Foreign Assets) of this
16  Order;

17         B.    Notifying any trustee, protector or other agent of any foreign trust or
18  other related entities of either the existence of this Order, or of the fact that
19  repatriation is required pursuant to a Court Order, until such time that all assets have
20  been fully repatriated pursuant to Section VI (Repatriation of Foreign Assets) of this
21  Order.

22                          **RECEIVERSHIP PROVISIONS**
23                                  **VIII.**
24                    **Appointment of Permanent Receiver**

25         IT IS FURTHER ORDERED that Robb Evans & Associates LLC is hereby
26  appointed Permanent Receiver for the Receivership Defendants, with the full power
27  of an equity receiver. The Receiver shall be the agent of this Court, and solely the
28  agent of this Court, in acting as Receiver under this Order. The Receiver shall be

                                      16

**Exhibit 4 - Page 18 of 40**

1   accountable directly to this Court. The Receiver shall comply with all Local Rules
2   of this Court governing receivers.

3
    ## IX.
    ### Permanent Receivership Duties

4

5       IT IS FURTHER ORDERED that the Receiver is authorized and directed to
6   accomplish the following:

7       A.      Assume full control of the Receivership Defendants by removing, as
8   the Receiver deems necessary or advisable, any director, officer, manager,
9   independent contractor, employee, or agent of any of the Receivership Defendants,
10  including any Defendant, from control of, management of, or participation in, the
11  affairs of the Receivership Defendants;

12      B.      Take exclusive custody, control, and possession of all assets and
13  documents of, or in the possession, custody, or under the control of, the
14  Receivership Defendants, wherever situated. The Receiver shall have full power to
15  divert mail and to sue for, collect, receive, take in possession, hold, and manage all
16  assets and documents of the Receivership Defendants and other persons or entities
17  whose interests are now held by, or are under the direction, possession, custody, or
18  control of, the Receivership Defendants. The Receiver shall assume control over the
19  income and profits therefrom and all sums of money now or hereafter due or owing
20  to the Receivership Defendants. *Provided, however*, that the Receiver shall not
21  attempt to collect any amount from a consumer if the Receiver believes the
22  consumer was a victim of the deceptive or abusive acts or practices alleged in the
23  Complaint in this matter, without prior Court approval;

24      C.      Take all steps necessary to secure all premises owned, rented, leased, or
25  otherwise controlled by the Receivership Defendants, including:

26          1.      Premises at which Defendants' business operations are physically
27  located, including:

28      3800 Howard Hughes Parkway, Suite 500, Las Vegas, NV 89109

17

Exhibit 4 - Page 19 of 40

1     4340 S. Valley View Blvd., Suite 224, Las Vegas, NV 89103

2     4699 Industrial Road, #206, Las Vegas, NV 89103

3     2800 West Sahara, Suite 7C, Las Vegas, NV 89102

4        2.     The Receivership Defendants' portion of shared space in the

5 following office suite:

6     21241 Ventura Blvd., Suite 253, Woodland Hills, CA 91364

7        3.     Virtual offices services (including voice mail and mail collection

8 services) provided to any of the Receivership Defendants at the following addresses:

9     1800 Century Park East, Suite 600, Los Angeles, CA 90067

10     400 Continental Blvd., Suite 600, El Segundo, CA 90245

11     333 City Blvd., 17th Floor, Orange, CA 92868

12        4.     Post office boxes and private mailboxes rented by the

13 Defendants, including:

14     P.O. Box 17130, Las Vegas, NV 89114

15     P.O. Box 18434, Las Vegas, NV 89114

16     P.O. Box 46230, Las Vegas, NV 89114

17     6433 Topanga Canyon Blvd., PMB #801, Canoga Park, CA 91303

18     6433 Topanga Canyon Blvd., PMB #402, Canoga Park, CA 91303

19     6433 Topanga Canyon Blvd., PMB #509, Canoga Park, CA 91303

20     1442 E. Lincoln Ave., PMB #361, Orange, CA 92865

21     700 North Colorado Blvd., PMB #338, Denver Colorado  80206

22     Such steps may include, but are not limited to, any of the following, as the

23 Receiver deems necessary or advisable: (1) serving this Order; (2) completing a

24 written inventory of all receivership assets; (3) obtaining pertinent information from

25 all employees and other agents of the Receivership Defendants, including, but not

26 limited to, the name, home address, social security number, job description,

27 passwords or access codes, method of compensation, and all accrued and unpaid

28 commissions and compensation of each such employee or agent; (4) photographing

Exhibit 4 - Page 20 of 40

1  and video taping any or all portions of the premises; (5) securing the location by

2  changing the locks and disconnecting any computer modems or other means of

3  access to the computer or other records maintained at that location; and (6) requiring

4  any persons present on the premises at the time this Order is served to leave the

5  premises, to provide the Receiver with proof of identification, or to demonstrate to

6  the satisfaction of the Receiver that such persons are not removing from the

7  premises documents or assets of the Receivership Defendants.  Law enforcement

8  officers may assist the Receiver in implementing these provisions to keep the peace

9  and maintain security;

10      D.   Conserve, hold, and manage all assets of the Receivership Defendants,

11  and perform all acts necessary or advisable to preserve the value of those assets to

12  prevent any irreparable loss, damage, or injury to consumers or creditors of the

13  Receivership Defendants, including, but not limited to, obtaining an accounting of

14  the assets and preventing unauthorized transfer, withdrawal, or misapplication of

15  assets;

16      E.   Enter into contracts and purchase insurance as advisable or necessary;

17      F.   Prevent the inequitable distribution of assets and determine, adjust, and

18  protect the interests of consumers and creditors who have transacted business with

19  the Receivership Defendants;

20      G.   Manage and administer the business of the Receivership Defendants

21  until further order of this Court by performing all incidental acts that the Receiver

22  deems to be advisable or necessary, which includes retaining, hiring, or dismissing

23  any employees, independent contractors, or agents;

24      H.   Choose, engage, and employ attorneys, accountants, appraisers, and

25  other independent contractors and technical specialists, as the Receiver deems

26  advisable or necessary in the performance of duties and responsibilities under the

27  authority granted by this Order;

28

19

**Exhibit 4 - Page 21 of 40**

1    I.    Have the sole authority to hire legal counsel on behalf of any of the

2  Receivership Defendants;

3    J.    Make payments and disbursements from the receivership estate that are

4  necessary or advisable for carrying out the directions of, or exercising the authority

5  granted by, this Order.  The Receiver shall apply to the Court for prior approval of

6  any payment of any debt or obligation incurred by the Receivership Defendants

7  prior to the date of entry of this Order, except payments that the Receiver deems

8  necessary or advisable to secure assets of the Receivership Defendants, such as

9  rental payments;

10    K.    Determine and implement the manner in which the Receivership

11  Defendants will comply with, and prevent violations of, this Order and all other

12  applicable laws, including, but not limited to, revising sales materials and

13  implementing monitoring procedures;

14    L.    Institute, compromise, adjust, appear in, intervene in, or become party

15  to such actions or proceedings in state, federal or foreign courts or arbitration

16  proceedings as the Receiver deems necessary and advisable to preserve or recover

17  the assets of the Receivership Defendants, or that the Receiver deems necessary and

18  advisable to carry out the Receiver's mandate under this Order, including but not

19  limited to, actions challenging fraudulent or voidable transfers;

20    M.    Defend, compromise, adjust, or otherwise dispose of any or all actions

21  or proceedings instituted in the past or in the future against the Receiver in his role

22  as Receiver, or against the Receivership Defendants, as the Receiver deems

23  necessary and advisable to preserve the assets of the Receivership Defendants, or as

24  the Receiver deems necessary and advisable to carry out the Receiver's mandate

25  under this Order;

26    N.    Continue to conduct the business, or cease operation of the business, of

27  the Receivership Defendants in such manner, to such extent, and for such duration

28  as the Receiver may in good faith deem to be necessary or appropriate to operate the

Exhibit 4 - Page 22 of 40

1 businesses profitably and lawfully, if at all; *provided that*, the continuation and
2 conduct of the businesses shall be conditioned upon the Receiver's good faith
3 determination that the businesses can be lawfully operated at a profit using the
4 assets of the receivership estate;

5      O.   Issue subpoenas to obtain documents and records pertaining to the
6 receivership, and conduct discovery in this action on behalf of the receivership
7 estate;

8      P.   Open one or more bank accounts as designated depositories for funds of
9 the Receivership Defendants.  The Receiver shall deposit all funds of the
10 Receivership Defendants in such a designated account and shall make all payments
11 and disbursements from the receivership estate from such an account.  The Receiver
12 shall serve copies of monthly account statements on all parties;

13      Q.   Maintain accurate records of all receipts and expenditures that he
14 makes as Receiver; and

15      R.   Cooperate with reasonable requests for information or assistance from
16 any state or federal law enforcement agency.

17      S.   In a timely manner, file before this Court the "Monthly Statement of
18 Monies Received" submitted by Brian MacGregor and Membership Services Direct
19 and the "Notices of Expenditures to the Permanent Receiver" submitted by the
20 Defendants pursuant to Section IV.I of this Order.

21
22 **X.**
**Cooperation with the Receiver**

23      IT IS FURTHER ORDERED that Defendants and all other persons or entities
24 served with a copy of this Order shall fully cooperate with and assist the Receiver.
25 This cooperation and assistance shall include, but not be limited to, providing
26 information to the Receiver that the Receiver deems necessary in order to exercise
27 the authority and discharge the responsibilities of the Receiver under this Order;
28 providing any password required to access any computer, telephonic or electronic

21

**Exhibit 4 - Page 23 of 40**

1   data in any medium; and advising all persons who owe money to the Receivership
2   Defendants that all debts should be paid directly to the Receiver.  Defendants are
3   hereby restrained and enjoined from directly or indirectly:

4        A.     Transacting any of the business of the Receivership Defendants;

5        B.     Destroying, secreting, defacing, transferring, or otherwise altering or
6   disposing of any documents of the Receivership Defendants, including, but not
7   limited to, scripts, telephone call logs, audio or visual recordings, correspondence,
8   computer records, and other data compilations, electronically-stored records, books,
9   records, accounts, writings, drawings, graphs, charts, photographs, or any other
10  papers of any kind or nature;

11       C.     Transferring, receiving, altering, selling, encumbering, pledging,
12  assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in
13  the possession or custody of, or in which an interest is held or claimed by, the
14  Receivership Defendants, or the Receiver;

15       D.     Excusing debts owed to the Receivership Defendants;

16       E.     Failing to notify the Receiver of any asset, including accounts, of a
17  Receivership Defendant held in any name other than the name of the Receivership
18  Defendant, or by any person or entity other than the Receivership Defendant, or
19  failing to provide any assistance or information requested by the Receiver in
20  connection with obtaining possession, custody, or control of such assets; and

21       F.     Doing any act or refraining from any act whatsoever to interfere with
22  the Receiver managing, or taking custody, control, or possession of, the assets or
23  documents subject to this receivership; or to harass or interfere with the Receiver in
24  any way; or to interfere in any manner with the exclusive jurisdiction of this Court
25  over the assets or documents of the Receivership Defendants; or to refuse to
26  cooperate with the Receiver or the Receiver's duly authorized agents in the exercise
27  of their duties or authority under any order of this Court.

28

22

**Exhibit 4 - Page 24 of 40**

## XI.
### Delivery of Receivership Property

IT IS FURTHER ORDERED that:

A.     To the extent they have not already done so pursuant to the TRO issued in this case, immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants, and upon the Receiver's request, any other person or entity served with a copy of this Order or who otherwise has actual knowledge of this Order, shall transfer or deliver possession, custody, and control of the following to the Receiver:

1.     All assets of the Receivership Defendants (including but not limited to desktop and laptop computers and network servers);

2.     All documents of the Receivership Defendants (including but not limited to books and records of accounts, financial and accounting records, balance sheets, income statements, bank records, client lists, scripts, correspondence, complaint files, electronic records, title documents, lease agreements, and other papers);

3.     All assets belonging to members of the public now held by the Receivership Defendants; and

4.     All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

B.     In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy

23

Exhibit 4 - Page 25 of 40

1 | sheriff of any county, or any other federal or state law enforcement officer, to seize
2 | the asset, document, or other thing and to deliver it to the Receiver.

3

## XII.
### Transfer of Funds to the Receiver

5 |     IT IS FURTHER ORDERED that, upon service of a copy of this Order, all
6 | banks, broker-dealers, savings and loans, escrow agents, title companies, commodity
7 | trading companies, precious metals dealers and other financial institutions and
8 | depositories of any kind, and all third-party billing agents, LEC's, common carriers,
9 | and other telecommunications companies shall cooperate with all reasonable
10 | requests of the FTC and the Receiver relating to implementation of this Order,
11 | including transferring funds at his direction and producing records related to the
12 | assets and sales of the Receivership Defendants.

13

## XIII.
### Collection of Receivership Defendants' Mail

15 |     IT IS FURTHER ORDERED that:
16 |     A.    Each Individual Defendant is hereby restrained and enjoined from
17 | opening mail addressed to any of the Receivership Defendants, including but not
18 | limited to such mail at the following addresses:
19 |     3800 Howard Hughes Parkway, Suite 500, Las Vegas, NV 89109
20 |     4340 S. Valley View Blvd., Suite 224, Las Vegas, NV 89103
21 |     4699 Industrial Road, #206, Las Vegas, NV 89103
22 |     2800 West Sahara, Suite 7C, Las Vegas, NV 89102
23 |     1800 Century Park East, Suite 600, Los Angeles, CA 90067
24 |     400 Continental Blvd., Suite 600, El Segundo, CA 90245
25 |     6320 Canoga Ave., Suite 1500, Woodland Hills, CA 91367
26 |     22130 Clarendon Street, Woodland Hills, CA 91367
27 |     333 City Blvd., 17th Floor, Orange, CA 92868
28 |     21241 Ventura Blvd., Suite 253, Woodland Hills, CA 91364

24

Exhibit 4 - Page 26 of 40

1      P.O. Box 17130, Las Vegas, NV 89114

2      P.O. Box 18434, Las Vegas, NV 89114

3      P.O. Box 46230, Las Vegas, NV 89114

4      6433 Topanga Canyon Blvd., PMB #801, Canoga Park, CA 91303

5      6433 Topanga Canyon Blvd., PMB #402, Canoga Park, CA 91303

6      6433 Topanga Canyon Blvd., PMB #509, Canoga Park, CA 91303

7      1442 E. Lincoln Ave., PMB #361, Orange, CA 92865

8      700 North Colorado Blvd., PMB #338, Denver Colorado 80206

9      and any address used by any of the Individual Defendants, including those

10     addresses listed in the Personal Data Identifiers Reference List as ID#3,

11     FILED UNDER SEAL PURSUANT TO LOCAL RULE 79-5.4.

12      B.     The Receiver is authorized to open all such mail addressed to any

13 Receivership Defendant.

14      C.     Any funds enclosed in any mail shall be maintained and accounted for

15 by the Receiver until further order by the Court.

16      D.     Any Individual Defendant who receives such mail addressed to any

17 Receivership Defendant shall promptly deliver it to the Receiver.

18      E.     The Receiver shall forward all mail that he receives on behalf of any

19 Receivership Defendant that is addressed solely to any Individual Defendant

20 unopened to that Individual Defendant at his last known address.

21

22

**XIV.**
**Compensation of Permanent Receiver**

23      IT IS FURTHER ORDERED that the Receiver and all personnel hired by the

24 Receiver as herein authorized, including counsel to the Receiver and accountants,

25 are entitled to reasonable compensation for the performance of duties pursuant to

26 this Order and for the cost of actual out-of-pocket expenses incurred by them, from

27 the assets now held by, in the possession or control of, or which may be received by,

28 the Receivership Defendants. The Receiver shall file with the Court and serve on

25

Exhibit 4 - Page 27 of 40

1  the parties periodic requests for the payment of such reasonable compensation, with
2  the first such request filed no later than sixty (60) days after the date of this Order.
3  The Receiver shall not increase the hourly rates used as the bases for such fee
4  applications without prior approval of the Court.

5
6                                   **XV.**
                             **Receiver's Bond**

7        IT IS FURTHER ORDERED that the Receiver shall file with the Clerk of this
8  Court a bond in the sum of $25,000 with sureties to be approved by the Court,
9  conditioned upon the Receiver well and truly performing the duties of the office,
10 and abiding by and performing all acts the Court directs.

11
12                                  **XVI.**
                    **Immediate Access to Defendants'**
13                 **Business Premises, Books and Records**

14       IT IS FURTHER ORDERED that:

15       A.    To the extent they have not already done so pursuant to the TRO issued
16 in this case, Defendants and their officers, agents, servants, employees, attorneys,
17 and all persons or entities directly or indirectly under their control or under common
18 control with them, and all other persons or entities in active concert or participation
19 with them who receive actual notice of this Order, whether by personal service or
20 otherwise, whether acting directly or through any corporation, subsidiary, division,
21 or other device, shall immediately identify to the Receiver and Commission's
22 counsel:

23             1.     All of Defendants' business premises;

24             2.     Any premises where Defendants conduct business or telephone
25 or Internet sales operations;

26             3.     Any premises where documents related to Defendants'
27 businesses are stored or maintained;

28

                                       26

Exhibit 4 - Page 28 of 40

1           4.     Any premises where the Defendants' desktop and laptop

2 computers and network servers are stored or maintained; and

3           5.     all agents, employees, officers, servants or those persons in

4 active concert and participation with him or her, who have done work for any

5 Receivership Defendant.

6       B.    Plaintiff and the Receiver, and their representatives, agents, and

7 assistants, shall have immediate access to the business premises of the Receivership

8 Defendants.  Such locations include but are not limited to:

9           1.     Premises at which Defendants' business operations are physically

10 located, including:

11       3800 Howard Hughes Parkway, Suite 500, Las Vegas, NV 89109

12       4340 S. Valley View Blvd., Suite 224, Las Vegas, NV 89103

13       4699 Industrial Road, #206, Las Vegas, NV 89103

14       2800 West Sahara, Suite 7C, Las Vegas, NV 89102

15           2.     The Receivership Defendants' portion of shared space in the

16 following office suite:

17       21241 Ventura Blvd., Suite 253, Woodland Hills, CA 91364

18           3.     Virtual offices services (including voice mail and mail collection

19 services) provided to any of the Receivership Defendants, including services

20 provided at the following addresses:

21       1800 Century Park East, Suite 600, Los Angeles, CA 90067

22       400 Continental Blvd., Suite 600, El Segundo, CA 90245

23       333 City Blvd., 17th Floor, Orange, CA 92868

24           4.     Post office boxes and private mailboxes rented by the

25 Defendants, including:

26       P.O. Box 17130, Las Vegas, NV 89114

27       P.O. Box 18434, Las Vegas, NV 89114

28       P.O. Box 46230, Las Vegas, NV 89114

27

Exhibit 4 - Page 29 of 40

1    6433 Topanga Canyon Blvd., PMB #801, Canoga Park, CA 91303

2    6433 Topanga Canyon Blvd., PMB #402, Canoga Park, CA 91303

3    6433 Topanga Canyon Blvd., PMB #509, Canoga Park, CA 91303

4    1442 E. Lincoln Ave., PMB #361, Orange, CA 92865

5    700 North Colorado Blvd., PMB #338, Denver Colorado 80206

6    Plaintiff and Receiver are authorized to employ the assistance of law

7    enforcement officers as they deem necessary, to effect service and to implement

8    peacefully the provisions of this Order. Plaintiff and the Receiver, and their

9    representatives, agents, and assistants, shall have the right to remove documents

10   from the Receivership Defendants' business premises in order that they may be

11   inspected, inventoried, and copied. The Receiver shall have the discretion to

12   determine the time, manner, and reasonable conditions of such access;

13   C.    The Receiver, and his or her representatives, agents, and assistants,

14   shall have immediate access to any other business location where the Receivership

15   Defendants' documents (including but not limited to contracts, accounting data,

16   written or electronic correspondence, advertisements, computer tapes, disks, or other

17   computerized records, books, written or printed records, handwritten notes,

18   telephone logs, telephone scripts, membership program records and lists, refund

19   records, receipts, ledgers, personal and business canceled checks and check

20   registers, bank statements, appointment books, and copies of federal, state or local

21   business or personal income or property tax returns), property (including but not

22   limited to computers and network servers), and equipment are located. The

23   Receiver, and his or her representatives, agents, and assistants, shall have the right

24   to remove documents and equipment from these other locations connected with the

25   Defendants' businesses in order that they may be inspected, inventoried, and copied;

26   D.    Plaintiff and the Receiver may also photograph and videotape the inside

27   and outside of all premises to which they are permitted access by this Order, and all

28   documents and other items found on such premises;

28

Exhibit 4 - Page 30 of 40

E.     If any documents, property, or equipment relating to the Defendants' business practices are located at a location other than those listed herein and a request to enter said location is denied, then, to the extent they have not already done so pursuant to the TRO issued in this case, Defendants shall, within 24 hours of service of this Order:

      1.     Produce to the Receiver all such property, business records, documents, or computer files; and

      2.     Produce to the Receiver all computers and data in whatever form used by such Defendant or any of such Defendant's agents, employees, officers, servants or those persons in active concert with him or her, in activities relating to Defendants' business practices.

## XVII.
### Defendants' Access to Receivership Defendants' Business Premises

IT IS FURTHER ORDERED that the Receiver shall allow the Defendants reasonable access to the premises of the Receivership Defendants. The sole purpose of this access shall be to inspect and copy any and all books, records, accounts, and other property owned by or in the possession of the Receivership Defendants. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XVIII.
### Stay of Actions

IT IS FURTHER ORDERED that:

A.     Except by leave of this Court, during pendency of the receivership ordered herein, Defendants, and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables,

29

Exhibit 4 - Page 31 of 40

1   marshals, and other officers and their deputies, and their respective attorneys,

2   servants, agents and employees, be and are hereby stayed from:

3      1. Commencing, prosecuting, continuing, entering, or enforcing any

4   suit or proceeding, except that such actions may be filed to toll any applicable

5   statute of limitations;

6      2. Accelerating the due date of any obligation or claimed

7   obligation; filing or enforcing any lien; taking or attempting to take possession,

8   custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate

9   any interest in any asset, whether such acts are part of a judicial proceeding, are acts

10  of self-help, or otherwise;

11     3. Executing, issuing, serving, or causing the execution, issuance or

12  service of, any legal process, including, but not limited to, attachments,

13  garnishments, subpoenas, writs of replevin, writs of execution, or any other form of

14  process whether specified in this Order or not;

15     4. Causing any Receivership Defendant to be placed in involuntary

16  bankruptcy; or

17     5. Doing any act or thing whatsoever to interfere with the Receiver

18  managing, or taking custody, control, or possession of, the assets or documents

19  subject to this receivership, or to harass or interfere with the Receiver in any way, or

20  to interfere in any manner with the exclusive jurisdiction of this Court over the

21  assets or documents of the Receivership Defendants.

22    B. This Section does not stay:

23     1. The commencement or continuation of a criminal action or

24  proceeding;

25     2. The commencement or continuation of an action or proceeding

26  by a governmental unit to enforce such governmental unit's police or regulatory

27  power; or

28

30

Exhibit 4 - Page 32 of 40

1        3.    The enforcement of a judgment, other than a money judgment,

2 obtained in an action or proceeding by a governmental unit to enforce such

3 governmental unit's police or regulatory power.

## DEFENDANTS' REPORTING AND RELATED OBLIGATIONS

### XIX.
### Distribution of Order by Defendants

7     IT IS FURTHER ORDERED that the Defendants shall immediately provide a

8 copy of this Order and the "Personal Data Identifiers Reference List" (filed on

9 February 14, 2006) to each affiliate, subsidiary, division, sales entity, successor,

10 assign, officer, director, employee, independent contractor, client company, agent,

11 attorney, spouse and representative of the Defendants, and shall, within ten (10)

12 days from the date of entry of this Order, provide the Commission with a sworn

13 statement that the Defendants have complied with this provision of the Order, which

14 statement shall include the names and addresses of each such person or entity who

15 received a copy of the Order and Personal Data Identifiers Reference List.  The

16 Receiver has no obligation under this provision.

17     The persons to whom Defendants are required under this Section to provide a

18 copy of this Order specifically include but are not limited to Christine MacGregor,

19 Midwest Properties Inc., Merchant Risk Management, Inc., All Star Access, Inc.,

20 Prime Time Ventures, Inc., Pantel One Corporation; Mammoth Consulting Group,

21 LLC, Blitz Media, Inc., Randy O'Connell, Ronald Sandlin, William Sommerfield,

22 Connect2, Inc., Connect2Phil, Inc., Timothy Berfield, Boilfrog LLC, Prodasol, Inc.,

23 Prodata-Solutions, Inc., Manoj Tripathy, Anzali, Inc., Entex, and each telemarketing

24 call center that has been used by any of the Defendants to make telemarketing calls

25 (including but not limited to: Crystal Marketing, Credence E-Services Pvt. Ltd.,

26 Silgate Solutions, Vishnu Solutions Pvt Limited, PCL Call Center, E-Call

27 International Pvt. Ltd., The Manipal Group, Manipal Informatics, KVR Infosys Pvt.

28 Ltd., and I Connection Communication Pvt. Ltd.).

31

Exhibit 4 - Page 33 of 40

## XX.
### Financial Statements and Accounting

IT IS FURTHER ORDERED that, to the extent they have not already done so pursuant to the TRO issued in this case, within five (5) business days following the service of this Order, each Defendant shall provide to counsel for the FTC:

A.   A completed financial statement accurate as of the date of service of this Order upon Defendants and signed under penalty of perjury.  Unless otherwise agreed upon with FTC counsel, each Individual Defendant shall include all financial information as requested in the "Financial Statement of Individual Defendant," attached to the "Financial Statement Forms for Section XX (Financial Statements and Accounting) of 'Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue and a Permanent Receiver Should Not Be Appointed," filed in this action, and each Corporate Defendant shall include all information as requested in the corresponding "Financial Statement of Corporate Defendant";

B.   A completed statement, verified under oath:

1.   specifying the name and address of each financial institution and brokerage firm at which the Defendant has accounts or safe deposit boxes.  Said statements shall include assets held in foreign as well as domestic accounts.

2.   listing all person who have received payments, transfers, or assignment of funds, assets, or property which total $10,000 or more in any twelve-month period since January 1, 2004.  This list shall specify: (a) the amount(s) transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the assignment or transfer; and (d) the type and amount of consideration paid to the Defendant.

32

Exhibit 4 - Page 34 of 40

1    C.    For all goods and services advertised, marketed, promoted, offered for

2    sale, distributed, or sold by the Defendant, a detailed accounting, verified under

3    oath, of:

4         1.    all gross revenues obtained from the sale or distribution of each

5    such product (broken down by month and year) from January 1, 2004 through the

6    date of the issuance of this Order;

7         2.    all net profits obtained from the sale or distribution of each such

8    product (broken down by month and year) from January 1, 2004 through the date of

9    the issuance of this Order;

10        3.    the total amount of each such product sold or distributed (broken

11   down by month and year); and

12        4.    the full names, addresses, and telephone numbers of all

13   purchasers or recipients of each such product, and the amount paid by each.

14   D.    Access to records and documents pertaining to assets of any of the

15   Defendants that are held by financial institutions outside the territory of the United

16   States by signing a Consent to Release of Financial Records form, to be provided by

17   counsel for Plaintiff.

18
                                    **XXI.**
19                      **Preservation of Records**

20       IT IS FURTHER ORDERED that Defendants, and their officers, directors,

21   agents, employees, salespersons, independent contractors, attorneys, all other

22   persons or entities directly or indirectly under their control or under common control

23   with any of them, and all other persons or entities in active concert or participation

24   with any of them who receive actual notice of this Order by personal service or

25   otherwise, are hereby preliminarily restrained and enjoined from destroying, erasing,

26   mutilating, concealing, altering, transferring or otherwise disposing of, in any

27   manner, directly or indirectly, any documents that relate to the business practices or

28   business or personal finances of any Defendant, including, but not limited to, any

                                    33

Exhibit 4 - Page 35 of 40

1   contracts, accounting data, correspondence, advertisements, computer tapes, discs or

2   other computerized records, books, written or printed records, handwritten notes,

3   telephone logs, telephone scripts, receipt books, ledgers, personal and business

4   canceled checks and check registers, bank statements, appointment books, copies of

5   federal, state, or local business or personal income or property tax returns.

6        The persons subject to this Section specifically include but are not limited to

7   each telemarketing call center that has been used by any of the Defendants

8   (including but not limited to: Crystal Marketing, Credence E-Services Pvt. Ltd.,

9   Silgate Solutions, Vishnu Solutions Pvt Limited, PCL Call Center, E-Call

10  International Pvt. Ltd., The Manipal Group, Manipal Informatics, KVR Infosys Pvt.

11  Ltd., and I Connection Communication Pvt. Ltd.).  The records subject to this

12  Section specifically include but are not limited to scripts, telephone logs, recordings

13  of telemarketing calls, and organizational charts.

14
                              **XXII.**
15                        **Record Keeping**

16       IT IS FURTHER ORDERED that each Defendant is restrained and enjoined

17  from failing to make and keep, and to provide to Plaintiff's counsel promptly upon

18  request, an accurate accounting that, in reasonable detail, accurately, fairly, and

19  completely reflects that Defendant's income, disbursements, transactions, and use of

20  money, beginning immediately upon service or actual notice of this Order.

21
                             **XXIII.**
22           **Notification re Defendants' Business Activities**

23       IT IS FURTHER ORDERED that Defendants are hereby restrained and

24  enjoined from creating, operating, or exercising any control over any business entity,

25  including any partnership, limited partnership, joint venture, sole proprietorship or

26  corporation, without first providing Plaintiff Commission with a written statement

27  disclosing:  (1) the name of the business entity;  (2) the address and telephone

28  number of the business entity;  (3) the names of the business entity's officers,

34

**Exhibit 4 - Page 36 of 40**

1  directors, principals, managers and employees; and  (4) a detailed description of the

2  business entity's intended activities.

3      IT IS FURTHER ORDERED that Defendants shall notify the Commission in

4  writing at least seven (7) days prior to any affiliation with any new or previously

5  inactive business or employment.  Each notice shall include the Defendant's new

6  business address and a statement of the nature of the new business or employment

7  and of his duties and responsibilities in connection with that business or

8  employment.

9

10                         **MISCELLANEOUS PROVISIONS**

11                                    **XXIV.**
12                            **Expedited Discovery**

13      IT IS FURTHER ORDERED that the Commission is granted leave at any

14  time after service of this Order to:

15      A.      Take the deposition of any person or entity for the purpose of

16  discovering the nature, status, extent, location or other relevant information relating

17  to the Defendants' assets, income, personal or business financial records or the

18  location of a Defendant and

19      B.      Demand the production of documents from any person or entity relating

20  to the nature, status, extent, location or other relevant information relating to the

21  Defendants' assets, income, personal or business financial records or the location of

22  a Defendant.

23      Forty-eight (48) hours notice shall be deemed sufficient for any such

24  deposition and production of documents from the Defendants and any other person

25  or entity, including but not limited to financial institutions, accountants, stock

26  brokers and financial planners.  Depositions taken pursuant to this Section shall not

27  be subject to the limitations and conditions set forth in Fed. R. Civ. P. 30(a)(2)(B)

28  regarding subsequent depositions of an individual.  The depositions also shall not be

**Exhibit 4 - Page 37 of 40**

1   counted in calculating any limitation on the number of depositions that can be taken

2   without the leave of the Court as set forth in the Federal Rules of Civil Procedure or

3   the Local Rules.  Additionally, the production of documents submitted pursuant to

4   this provision shall not in any way waive Plaintiff's rights to seek the production of

5   additional documents.  Service of discovery taken pursuant to this Section shall be

6   sufficient if made by facsimile or by overnight delivery.

7

8
### XXV.
### Credit Reports

9       IT IS FURTHER ORDERED that Plaintiff may obtain credit reports

10   concerning Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting

11   Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any consumer

12   reporting agency from which such reports are requested shall provide them to

13   Plaintiff.

14

15
### XXVI.
### Correspondence

16       IT IS FURTHER ORDERED that, for the purposes of this Order, all

17   correspondence and service of pleadings on Plaintiff shall be addressed to:

18
19           Faye Chen Barnouw
        Jennifer M. Brennan
20           Federal Trade Commission
        10877 Wilshire Blvd., Suite 700
        Los Angeles, CA  90024

21   Documents served by fax shall be sent to Faye Chen Barnouw/Jennifer M. Brennan

22   at (310) 824-4380.

23

24
### XXVII.
### Service of this Order

25       IT IS FURTHER ORDERED that copies of this Order and the "Personal Data

26   Identifiers Reference List" (filed February 14, 2006) may be served by any means,

27   including facsimile transmission, upon any financial institution or other entity or

28   person that may have possession, custody, or control of any documents or assets of

36

Exhibit 4 - Page 38 of 40

1   any Defendant, or that may otherwise be subject to any provision of this Order.

2   Service upon any branch or office of any financial institution shall effect service

3   upon the entire financial institution.

4

5
### XXVIII.
### Expiration of this Order

6       IT IS FURTHER ORDERED that this Order shall expire upon entry of a final

7   judgment in this case.

8
### XXIX.
### Retention of Jurisdiction

9

10      IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this

11  matter for all purposes.  No security is required of any agency of the United States

12  for the issuance of a restraining order.  Fed. R. Civ. P. 65(c).

13

14  Dated:   3/21/0Y

15                                    UNITED STATES DISTRICT JUDGE

16

17  Presented by:

18

19  Faye Chen Barnouw
    Jennifer M. Brennan
20  Attorneys for Plaintiff
    FEDERAL TRADE COMMISSION
21

22

23

24

25

26

27

28

                                    37

Exhibit 4 - Page 39 of 40

1                      **CERTIFICATE OF SERVICE**

2        I, Faye Chen Barnouw, certify as follows:

3        I am over the age of 18 and am an attorney for the Federal Trade Commission.

4 My business address is 10877 Wilshire Boulevard, Suite 700, Los Angeles,

5 California 90024.  On March 17, 2006, I caused the attached document entitled

6 "[Proposed] Preliminary Injunction with Asset Freeze, Appointment of Permanent

7 Receiver, and Other Equitable Relief" to be served to:

8 Jonathan Eisenberg         *Via e-mail by consent of the recipient*
9 Manatt Phelps & Phillips    Counsel for Defendants Brian MacGregor
  11355 W. Olympic Blvd.    and Membership Services Direct, Inc.
10 Los Angeles, CA 90064
  Jeisenberg@manatt.com

11 John Genga and Don C. Moody  *Via e-mail by consent of the recipient*
  Genga & Associates, P.C.    Counsel for Defendants Pranot Sangprasit,
12 15260 Ventura Blvd., 20th Floor  Joseph LaRosa, Paul Tosi, William Thomas
  Sherman Oaks, CA 91403    Heichert, Michael Howard Cushing, and
13 jgenga@gengalaw.com      Manh Dac Cao
  donm@gengalaw.com

14

15 Jeffrey K. Riffer         *Via e-mail by consent of the recipient*
  Jeffer Mangels et al LLP    Counsel for Defendant Harijinder Sidhu
16 1900 Ave Of The Stars 7FL
  Los Angeles, CA 90067-4301
17 jriffer@jmbm.com

18 Kent Johnson and Brick Kane   *Via e-mail by consent of the recipient*
19 Robb Evans & Associates LLC   Temporary Receiver
  11450 Sheldon St
20 Simi Valley 91352
  kenton.johnson@robbevans.com
21 brick_kane@robbevans.com

22 Gary O. Caris and Lesley A. Hawes  *Via e-mail by consent of the recipient*
  McKenna Long & Aldridge   Counsel for Temporary Receiver
23 444 South Flower Street, 8th Floor
  Los Angeles, CA 90071-2901
24 gcaris@mckennalong.com
  lhawes@mckennalong.com

25       I declare under penalty of perjury that the foregoing is true and correct.

26 Dated:  March 17, 2006

27                           Faye Chen Barnouw

28

                      38

Exhibit 4 - Page 40 of 40

# EXHIBIT 5

# ORIGINAL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

FEDERAL TRADE COMMISSION,

Plaintiff

v.

BURNLOUNGE, INC.,
a corporation;
JUAN ALEXANDER ARNOLD,
an individual;
JOHN TAYLOR
an individual;
ROB DEBOER,
an individual; and
SCOTT ELLIOTT,
an individual,

Defendants.

Case No. **2:07-cv-03654-GW-FMO**

[Proposed]
**STIPULATED PRELIMINARY
INJUNCTION ORDER WITH
ASSET FREEZE, REQUIRED
ACCOUNTING, AND OTHER
EQUITABLE RELIEF AS TO
DEFENDANT JOHN TAYLOR**

FILED
CLERK, U.S DISTRICT COURT

AUG - 8 2007

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

Priority ✓
Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), having

filed a Complaint for Injunctive and Other Equitable Relief, including redress to

consumers, pursuant to Section 13(b) of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 45(a), and having moved for an order to show cause

why a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil

Procedure and C.D. Ca. L.R. 65-1, and the Court having considered Complaint,

declarations, exhibits, memorandum of points and authorities, and other material

filed by the parties, finds that:

1.    This Court has jurisdiction of the subject matter of this case and there

is good cause to believe it will have jurisdiction of all parties hereto;

2.    There is good cause to believe that venue properly lies with this Court;

3.    There is good cause to believe that the Individual Defendant John

Taylor has engaged and is likely to engage in acts and practices that violate Section

5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Commission is therefore likely

to prevail on the merits of this action.

DOCKETED ON CM

AUG - 8 2007

BY            009

83

**Exhibit 5 - Page 1 of 30**

1      4.    The evidence set forth in the "Plaintiff Federal Trade Commission's

2   Memorandum of Points and Authorities Supporting the Application for a Noticed

3   *Ex Parte* Temporary Restraining Order" and in the accompanying exhibits, and all

4   other documents filed by the parties show that the Individual Defendants engaged in

5   a classic pyramid scheme in violation of Section 5 of the FTC Act, 15 U.S.C. §

6   45(a). In accordance with Fed. R. Civ. P. 65, good cause therefore exists for

7   issuing this preliminary injunction. Furthermore, to preserve the Court's ability to

8   grant effective relief, there is good cause for the Court to enter an order preserving

9   certain assets and to require that they provide an accounting of their assets and of

10   the monies that they have received as a result of their activities challenged in the

11   Complaint and expedited discovery.

12      5.    Weighing the equities and considering the Commission's likelihood of

13   ultimate success, a preliminary injunction with asset freeze, requiring an accounting

14   and other equitable relief is in the public interest.

15      6.    No provision of this Order shall be construed as an admission or

16   denial that Defendant John Taylor has engaged in any violations of the FTC Act.

17   Factual stipulations herein are only for the purpose of entry of this stipulated

18   preliminary injunction.

19      7.    As an agency of the United States, no security is required of the

20   Commission for the issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65.

21                              **Definitions**

22      For the purpose of this preliminary injunction, the following definitions shall

23   apply:

24      1.    **"Asset"** or **"Assets"** means any legal or equitable interest in, right to,

25   or claim to, any real and personal property, including, but not limited to chattel,

26   goods, instruments, equipment, fixtures, general intangibles, inventory, checks,

27   notes, leaseholds, effects, contracts, mail or other deliveries, shares of stock, lists

28   of consumer names, accounts, credits, mortgages, premises, receivables, funds,

Exhibit 5 - Page 2 of 30

1    and cash, wherever located, whether in the United States or abroad, and shall

2    include both existing assets and assets acquired after the date of entry of this

3    Order.

4        2.    **"Individual Defendant"** means John Taylor.

5        3.    **"Financial Institution"** means any bank, savings and loan institution,

6    credit union, or any financial depository of any kind including, but not limited to

7    any brokerage house, money market or mutual fund, telephone or common carrier,

8    storage company, trustee, broker-dealer, escrow agent, title company, commodity

9    trading company, credit card company, or precious metal dealer, or any other

10   person, partnership, corporation, or other legal entity maintaining or having control

11   of any records, accounts or other assets owned directly or indirectly, of record or

12   beneficially, by the Individual Defendant, including accounts or other assets that

13   any Defendant may control by virtue of being a signatory on said accounts.

14       4.    **"Marketing Program"** means any multi-level marketing program,

15   pyramid marketing scheme, Ponzi scheme, or chain marketing scheme.

16       5.    **"Mogul Program"** means the BurnLounge Mogul Program through

17   which participants earn monetary rewards.

18       6.    **"Person"** means a natural person, an organization or other legal entity,

19   including a corporation, partnership, sole proprietorship, limited liability company,

20   association, or cooperative, or any other group or combination acting as an entity.

21       7.    **"Plaintiff"** means the Federal Trade Commission ("Commission" or

22   "FTC").

23       8.    The terms "and" and "or" in this Order shall be construed

24   conjunctively or disjunctively as necessary, to make the applicable sentence or

25   phrase inclusive rather than exclusive.

26

27                                **ORDER**

28                      **I. PYRAMID PROHIBITION**

3

Exhibit 5 - Page 3 of 30

1    **IT IS THEREFORE ORDERED** that the Individual Defendant is

2    temporarily restrained and enjoined from engaging, participating or assisting in, any

3    manner or capacity whatsoever, from operating the Mogul Program or any

4    Marketing Program that constitutes a pyramid scheme.

## II.  INJUNCTION AGAINST MISREPRESENTATION

6    **IT IS FURTHER ORDERED** that, in connection with the advertising,

7    promoting, marketing, offering or providing, or assisting others in the advertising,

8    promoting, marketing, offering or providing the Mogul Program, Marketing

9    Program or any business investment opportunity, the Individual Defendant is

10   hereby temporarily restrained and enjoined from making or assisting in the making

11   of, expressly or by implication, orally or in writing, any false or misleading

12   statement or representation of material fact, including, but not limit to:

13   misrepresenting that consumers who participate in the Mogul Program, Marketing

14   Program or business investment opportunity will or are likely to receive substantial

15   income.

## III.  INJUNCTION AGAINST MATERIAL OMISSIONS

17   **IT IS FURTHER ORDERED** that, in connection with the advertising,

18   promoting, marketing, offering or providing, or assisting others in the advertising,

19   promoting, marketing, offering or providing the Mogul Program, Marketing

20   Program or any business investment opportunity, the Individual Defendant is

21   hereby temporarily restrained and enjoined from failing to disclose, clearly and

22   conspicuously, orally or in writing, all information material to a consumer's

23   decision to participate in the Mogul Program, Marketing Program or business

24   investment opportunity, including, but not limited to, the fact that the structure of

25   the Mogul Program, Marketing Program or business investment opportunity

26   prevents the vast majority of participants from making substantial income.

## IV. ASSET FREEZE

27

28

4

Exhibit 5 - Page 4 of 30

1    IT IS FURTHER ORDERED that the Individual Defendant is hereby
2    temporarily restrained and enjoined from:

3    A.    Transferring, converting, encumbering, selling, concealing, dissipating,
4          disbursing, assigning, spending, withdrawing, or otherwise disposing
5          of any assets, wherever located, that are (1) owned or controlled, in
6          whole or in part, by the Individual Defendant; (2) titled or held in the
7          name, singly or jointly, of the Individual Defendant; (3) in the actual or
8          constructive possession of the Individual Defendant; or (4) owned,
9          controlled by, or in the actual or constructive possession of any
10         corporation, partnership, or other entity directly or indirectly owned,
11         managed, or controlled by, or under common control with, the
12         Individual Defendant including, but not limited to, any assets held by
13         or for the Individual Defendant at any bank or savings and loan
14         institution, or with any financial institution, as defined above, or other
15         depository of any kind;

16   B.    Opening or causing to be opened any safe deposit boxes or other
17         storage facility or container titled in the name of or subject to access
18         by the Individual Defendant;

19   C.    Incurring charges or cash advances on any credit card, debit card, or
20         checking card issued in the name, singly or jointly, of the Individual
21         Defendant; and

22   D.    Securing a loan with or incurring a lien on the real property, the
23         personal property, or other asset in the name, singly or jointly, of the
24         Individual Defendant.

25   Provided further, the Individual Defendant shall be allowed to spend funds
26   from frozen assets to pay reasonable ordinary and necessary monthly living
27   expenses (not to exceed $5000 per month) established prior to the filing of the
28   instant litigation, including mortgage payments, rent, car payments, alimony, child

5

Exhibit 5 - Page 5 of 30

1   support, and medical expenses.  The Individual Defendant may also spend any
2   future earnings.  The Indiviudal Defendant may use debit cards with regards to any
3   future earnings.  The Individual Defendant shall incur no new debt provided that he
4   may use credit cards to pay reasonable ordinary and necessary monthly living
5   expenses established prior to the filing of the instant litigation within the limitation of
6   spending funds from frozen assets provided in this paragraph.  Provided further,
7   the Plaintiff shall have the right to move to modify this order after receipt of
8   information required to be disclosed by the Individual Defendant under Paragraph
9   VIII on the grounds that the living expenses of the Individual Defendant are not
10  reasonable.
11        Provided further, that the Individual Defendant shall be allowed to expend
12  $20,000 for attorneys' fees.  In the event, the Individual Defendant seeks to pay his
13  attorneys more than the initial $20,000 for attorneys' fees, the Individual Defendant
14  shall provide Counsel for Plaintiff with a description of the fees and a general
15  description of the legal services rendered.  Each such request shall be no more than
16  $20,000 at a time.  If Plaintiff objects to payment of the fees within ten days of
17  receipt of the description of the fees and legal services by communicating such
18  objection to Counsel for the Individual Defendant, the Individual Defendant shall
19  then submit his request to pay such fees to the Court for such order as Court
20  deems appropriate.
21             **V.  DUTIES OF THIRD-PARTY ASSET HOLDERS**
22        IT IS FURTHER ORDERED that any financial institution, business entity,
23  or person that holds, controls or maintains custody of any account or asset titled in
24  the name of, held for the benefit of, or otherwise under the control of the Individual
25  Defendant, or has held, controlled or maintained custody of any such account or
26  asset at any time since October 1, 2005, shall:
27        A.    Prohibit any person or entity from withdrawing, removing, assigning,
28              transferring, pledging, encumbering, disbursing, dissipating,

6

**Exhibit 5 - Page 6 of 30**

1    converting, selling, or otherwise disposing of any such asset except as

2    provided in Paragraph IV or directed by further order of the Court;

3    B.    Deny any person or entity access to any safe deposit box or other

4    storage facility that is:

5        1.    titled in the name of the Individual Defendant, either

6        individually or jointly; or

7        2.    otherwise held for the benefit of or subject to access by the

8        Individual Defendant.

9    C.    Provide counsel for the Commission, within five (5) business days of

10    receiving a copy of this Order, a sworn statement setting forth:

11        1.    the identification number of each such account or asset titled in

12        the name, individually or jointly, or held on behalf of, or for the

13        benefit of, the Individual Defendant;

14        2.    the balance of each such account, or a description of the nature

15        and value of such asset as of the time this Order is served, and,

16        if the account or other asset has been closed or removed, the

17        date closed or removed, the total funds removed in order to

18        close the account, and the name of the person or entity to

19        whom such account or other asset was remitted; and

20        3.    the identification of any safe deposit box or other storage

21        facility or container that is either titled in the name, individually

22        or jointly, of the Individual Defendant or is otherwise subject to

23        access by the Individual Defendant;

24    D.    Upon the request by the Commission, promptly provide, within five

25    (5) business days of receipt of the request, the Commission with

26    copies of records or other documentation requested by the

27    Commission pertaining to such account or asset, including but not

28    limited to originals or copies of account applications, account

7

Exhibit 5 - Page 7 of 30

1  statements, signature cards, checks, drafts, deposit tickets, transfers

2  to and from the accounts, all other debit and credit instruments or

3  slips, currency transaction reports, 1099 forms, and safe deposit box

4  logs; and

5      E.    Cooperate with all reasonable requests of the Commission relating to

6  implementation of this Order.

7  ## VI. FOREIGN ASSET REPATRIATION

8      IT IS FURTHER ORDERED that within five (5) business days following the

9  service of this Order, the Individual Defendant shall:

10      A.    Provide the Commission with a full accounting of all funds,

11  documents, and assets located outside of the United States which are

12  (1) titled in the name, individually or jointly, of the Individual

13  Defendant; or (2) held by any person or entity for the benefit of the

14  Individual Defendant; or (3) under the direct or indirect control,

15  whether jointly or singly, of the Individual Defendant;

16      B.    Transfer to the territory of the United States all funds, documents, and

17  assets located outside of the United States which are (1) titled in the

18  name individually or jointly of the Individual Defendant; or (2) held by

19  any person or entity for the benefit of the Individual Defendant; or (3)

20  under the Individual Defendant's direct or indirect control, whether

21  jointly or singly;

22      C.    Hold and retain all repatriated funds, documents, and assets, and

23  prevent any transfer, disposition, or dissipation whatsoever of any

24  funds or assets, except as required by this Order; or for any funds,

25  documents, or assets held by or in the name of the Individual

26  Defendant; and

27      D.    Provide the Commission access to all records of funds, documents,

28  or assets of the Individual Defendant held by financial institutions or

8

Exhibit 5 - Page 8 of 30

1    other entities or individuals located outside the United States by

2    signing a Consent to Release of Financial Records, to be supplied by

3    Plaintiff.

4    ## VII. INTERFERENCE WITH REPATRIATION

5    IT IS FURTHER ORDERED that the Individual Defendant is hereby

6    temporarily restrained and enjoined from taking any action, directly or indirectly,

7    which may result in the encumbrance or dissipation of funds, documents, or assets

8    held outside of the United States, or in the hindrance of the repatriation required by

9    the preceding Section of this Order, including but not limited to:

10    A.    Sending any statement, letter, fax, e-mail or wire transmission,

11    telephoning or engaging in any other act, directly or indirectly, that results in a

12    determination by a foreign trustee or other entity that a "duress" event has occurred

13    under the terms of a foreign trust agreement until such time that all assets have been

14    fully repatriated pursuant to the preceding Section of this Order; and

15    B.    Notifying any trustee, protector or other agent of any foreign trust or

16    other related entities of either the existence of this Order, or of the fact that

17    repatriation is required pursuant to a Court Order, until such time that all assets

18    have been fully repatriated pursuant to the preceding Section of this Order.

19    ## VIII. FINANCIAL STATEMENTS AND ACCOUNTING

20    IT IS FURTHER ORDERED that, within five (5) business days after service

21    of this Order, the Individual Defendant shall provide to counsel for Plaintiff:

22    A.    A completed financial statement signed under penalty of perjury and

23    accurate as of the date of entry of this Order, in the form provided as

24    Attachment A; and

25    B.    A full and complete disclosure of all financial information and records

26    in their care, custody or control that relates to any financial transaction

27    with BurnLounge.

28

9

Exhibit 5 - Page 9 of 30

1  Provided that prior submission to Plaintiff of the information required by this
2  paragraph shall be deemed to satisfy this paragraph.

### IX.  MAINTENANCE OF RECORDS

4      IT IS FURTHER ORDERED that the Individual Defendant, and his officers,
5  agents, servants, employees, and attorneys, and those in active concert or
6  participation with them who receive actual notice of this Order, are hereby
7  temporarily restrained and enjoined from directly or indirectly destroying,
8  mutilating, erasing, altering, concealing or disposing of, in any manner, directly or
9  indirectly, any documents that relate to the business practices or business or
10  personal finances of the Individual Defendant.

### X.  SERVICE OF ORDER BY FAX

12      IT IS FURTHER ORDERED that copies of this Order may be served by
13  any means, including facsimile transmission, upon any financial institution or other
14  entity or person that may have possession, custody, or control of any documents
15  or assets of the Individual Defendant, or that may be subject to any provision of
16  this Order.

### XI.  CONSUMER CREDIT REPORTS

18      IT IS FURTHER ORDERED that, pursuant to Section 604 of the Fair
19  Credit Reporting Act, 15 U.S.C. §1681b, any consumer reporting agency may
20  furnish the Commission with a consumer report concerning the Individual
21  Defendant.

### XII.  SERVICE ON THE COMMISSION

23      IT IS FURTHER ORDERED that, with regard to any correspondence,
24  pleadings, or notifications related to this Order, service on the Commission shall be
25  performed by personal or facsimile delivery (but not delivery by U.S. Mail) to the
26  attention of:

27
28                  Chris M. Couillou, Esq.

Exhibit 5 - Page 10 of 30

Case 2:07-cv-03654-GW-FMO   Document 83   Filed 08/08/07   Page 11 of 30   Page ID #:141

1                  Federal Trade Commission
                 225 Peachtree Street, Suite 1500
2                  Atlanta, Georgia 30303,
                 facsimile number (404) 656-1379
3
   before 5:00 pm (EDT) of the day that such service is due.

4              **XIII. NOTIFICATION OF EMPLOYMENT**

5       IT IS FURTHER ORDERED that the Individual Defendant shall notify

6    Plaintiff of any employment with or work for a company using multi-level marketing

7    within seven (7) days of the begining of such employment or work.  Such

8    notification shall include the name and address of the company.

9

10       **SO ORDERED,** this *7ᵗʰ* day of _Angust_____, 2007.

11

12

13

14                               Hon. George H. Wu
                              United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 5 - Page 11 of 30**

1    **THE PARTIES STIPULATE TO THE FOREGOING ORDER:**

2

3    
4    Chris M. Couillou
     ccouillou@ftc.gov
5    Counsel for the Plaintiff
     Federal Trade Commission
6    225 Peachtree Street, Suite 1500
     Atlanta, GA 30303
7    (404) 656-1353 (voice)
     (404) 656-1379 (fax)
8

9

10   David J. Pasternak, Esq.                    Defendant John Marcus Taylor
11   Pasternak, Pasternak & Patton
     Counsel for Defendant John Taylor
12   djp@paslaw.com
     1875 Century Park East, Suite 2200
13   Los Angeles, CA 90067-2523
     (310) 553-1500 (voice)
14   (310) 553-1540 (fax)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

Exhibit 5 - Page 12 of 30

## BACKGROUND INFORMATION

<u>Item 1.</u>      Information About You

Your Full Name _____ Social Security No. _____

Place of Birth _____ Date of Birth _____ Drivers License No. _____

Current Address _____ From (Date) _____

Rent or Own? _____ Telephone No. _____ Facsimile No. _____

E-Mail Address _____ Internet Home Page _____

Previous Addresses for past five years:

Address_____ Rent or Own?_____ From/Until_____

Address_____ Rent or Own?_____ From/Until_____

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they

were used_____

<u>Item 2.</u>      Information About Your Spouse or Live-In Companion

Spouse/Companion's Name _____ Social Security No. _____

Place of Birth _____ Date of Birth _____

Identify any other name(s) and/or social security number(s) your spouse/companion has used, and the time period(s)

during which they were used_____

Address (if different from yours) _____

From (Date) _____ Rent or Own?_____ Telephone No._____

Employer's Name and Address _____

Job Title _____ Years in Present Job _____ Annual Gross Salary/Wages $_____

<u>Item 3.</u>      Information About Your Previous Spouse

Previous Spouse's Name & Address _____

_____ Social Security No. _____ Date of Birth _____

<u>Item 4.</u>      Contact Information

Attachment A, page 13          Initials _____

Exhibit 5 - Page 13 of 30

Name & Address of Nearest Living Relative or Friend _____

_____ Telephone No. _____

**Item 5.**   Information About Dependents Who Live With You

▸Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

▸Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

•Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

**Item 6.**   Information About Dependents Who Do Not Live With You

▸Name & Address _____

Date of Birth _____ Relationship _____ Social Security  No. _____

▸Name Address _____

Date of Birth _____ Relationship _____ Social Security  No. _____

▸Name & Address _____

Date of Birth _____ Relationship _____ Social Security  No. _____

**Item 7.**   Employment Information

Provide the following information for this year-to-date and for each of the previous five full years, for each company of which you were a director, officer, employee, agent, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, draws, consulting fees, loans, loan payments, dividends, royalties or other benefits for which you did not pay (e.g., health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

•Company Name & Address _____

Dates Employed: From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

**Item 7. continued**

14
Attachment A, page 18          Initials _____

Exhibit 5 - Page 14 of 30

Income Received: This year-to-date: $_____    _____: $_____

20_____: $_____    _____: $_____

_____: $_____    _____: $_____

▸Company Name & Address _____

Dates Employed: From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Income Received: This year-to-date: $_____    _____: $_____

20_____: $_____    _____: $_____

_____: $_____    _____: $_____

▸Company Name & Address _____

Dates Employed: From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Income Received: This year-to-date: $_____    _____: $_____

20_____: $_____    _____: $_____

_____: $_____    _____: $_____

**Item 8.**     **Pending Lawsuits Filed by You or Your Spouse**

List all pending lawsuits that have been filed by you or your spouse in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in Items 16 and 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

**Item 9.**     **Pending Lawsuits Filed Against You or Your Spouse**

List all pending lawsuits that have been filed against you or your spouse in court or before an administrative agency. (List

Attachment A, page 19    Initials _____

Exhibit 5 - Page 15 of 30

lawsuits that resulted in final judgments or settlements in Items 16 and 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

## Item 10.    Safe Deposit Boxes

List all safe deposit boxes, located within the United States or elsewhere, held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.  *On a separate page, describe the contents of each box.*

| Owner's Name | Name & Address of Depository Institution | Box No. |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## Item 11.    Business Interests

List all businesses for which you, your spouse, or your dependents are an officer or director.

• Business' Name & Address _____

Business Format (e.g., corporation) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

• Business' Name & Address _____

Business Format (e.g., corporation) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

• Business' Name & Address _____

Business Format (e.g., corporation) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

Attachment A, page 16          Initials _____

**Exhibit 5 - Page 16 of 30**

## FINANCIAL INFORMATION: ASSETS AND LIABILITIES

**REMINDER:** "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or elsewhere, whether held individually or jointly.

__Item 12.__        Cash, Bank, and Money Market Accounts

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.  The term "cash" includes currency and uncashed checks.

Cash on Hand $_____    Cash Held For Your Benefit $_____

| Name on Account | Name & Address of Financial Institution | Account No. | Current Balance |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

__Item 13.__        U.S. Government Securities

List all U.S. Government securities, including but not limited to, savings bonds, treasury bills, and treasury notes, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

| Name on Account | Type of Obligation | Security Amount | Maturity Date |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |

__Item 14.__     Publicly Traded Securities and Loans Secured by Them

Attachment A, page 17                 Initials _____

Exhibit 5 - Page 17 of 30

List all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

▸Issuer _____ Type of Security _____ No. of Units Owned _____

Name on Security _____ Current Fair Market Value $_____ Loan(s) Against Security $_____

Broker House, Address _____ Broker Account No. _____

▸Issuer _____ Type of Security _____ No. of Units Owned _____

Name on Security _____ Current Fair Market Value $_____ Loan(s) Against Security $_____

Broker House, Address _____ Broker Account No. _____

**Item 15.   Other Business Interests**

List all other business interests, including but not limited to, non-public corporations, subchapter-S corporations, limited liability corporations ("LLCs"), general or limited partnership interests, joint ventures, sole proprietorships, and oil and mineral leases, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

▸Business Format _____ Business' Name & Address _____

_____ Ownership % _____

Owner (e.g., self, spouse) _____ Current Fair Market Value $_____

▸Business Format _____ Business' Name & Address _____

_____ Ownership % _____

Owner (e.g., self, spouse) _____ Current Fair Market Value $_____

**Item 16.   Monetary Judgments or Settlements Owed to You, Your Spouse, or Your Dependents**

List all monetary judgments or settlements owed to you, your spouse, or your dependents.

▸Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $_____

▸Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $_____

**Item 17.   Other Amounts Owed to You, Your Spouse, or Your Dependents**

Attachment A, page 18      Initials _____

Exhibit 5 – Page 18 of 30

List all other amounts owed to you, your spouse, or your dependents.

Debtor's Name, Address, & Telephone No. _____

Original Amount Owed $_____ Current Amount Owed $_____ Monthly Payment $_____

**Item 18.** Life Insurance Policies

List all life insurance policies held by you, your spouse, or your dependents.

‣Insurance Company's Name, Address, & Telephone No. _____

_____

Insured _____ Beneficiary _____ Face Value $_____

Policy No. _____ Loans Against Policy $_____ Surrender Value $_____

‣Insurance Company's Name, Address, & Telephone No. _____

_____

Insured _____ Beneficiary _____ Face Value $_____

Policy No. _____ Loans Against Policy $_____ Surrender Value $_____

**Item 19.** Deferred Income Arrangements

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, and other retirement accounts, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

‣Name on Account _____ Type of Plan _____ Date Established _____

Trustee or Administrator's Name, Address & Telephone No. _____

_____

Account No. _____ Surrender Value $_____

‣Name on Account _____ Type of Plan _____ Date Established _____

Trustee or Administrator's Name, Address & Telephone No. _____

_____

Account No. _____ Surrender Value $_____

**Item 20.** Personal Property

List all personal property, by category, whether held for personal use or for investment, including but not limited to,

Attachment A, page 19

Initials _____

**Exhibit 5 - Page 19 of 30**

furniture and household goods of value, computer equipment, electronics, coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

| Property Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

**Item 11.**   **Cars, Trucks, Motorcycles, Boats, Airplanes, and Other Vehicles**

List all cars, trucks, motorcycles, boats, airplanes, and other vehicles owned or operated by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

►Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

►Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

**Item 11, Continued**

►Vehicle Type _____ Make _____ Model _____ Year _____

Attachment A, page 20                    Initials _____

Exhibit 5 - Page 20 of 30

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

### Item 22.     Real Property

List all real estate held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

►Type of Property_____ Property's Location _____

Name(s) on Title and Ownership Percentages_____

Acquisition Date_____ Purchase Price $_____ Current Value $_____

Basis of Valuation_____ Loan or Account No._____

Lender's Name and Address _____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

►Type of Property_____ Property's Location _____

Name(s) on Title and Ownership Percentages_____

Acquisition Date_____ Purchase Price $_____ Current Value $_____

Basis of Valuation_____ Loan or Account No._____

Lender's Name and Address _____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

### Item 23.     Credit Cards

List each credit card held by you, your spouse, or your dependents. Also list any other credit cards that you, your spouse, or your dependents use.

Attachment A, page 21     Initials _____

Exhibit 5 - Page 21 of 30

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance | Minimum Monthly Payment |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

**Item 24.    Taxes Payable**

List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependants.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |

**Item 25.    Judgments or Settlements Owed**

List all judgments or settlements owed by you, your spouse, or your dependents.

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date _____ Amount $ _____

Attachment A, page 22          Initials _____ __ ____

Exhibit 5 - Page 22 of 30

**Item 26.**     **Other Loans and Liabilities**

List all other loans or liabilities in your, your spouse's, or your dependents' names.

▸Name & Address of Lender/Creditor _____

Nature of Liability_____     Name(s) on Liability_____

Date of Liability_____     Amount Borrowed $_____     Current Balance $_____

Payment Amount $_____     Frequency of Payment_____

▸Name & Address of Lender/Creditor _____

Nature of Liability_____     Name(s) on Liability_____

Date of Liability_____     Amount Borrowed $_____     Current Balance $_____

Payment Amount $_____     Frequency of Payment_____

## OTHER FINANCIAL INFORMATION

**Item 27.**     **Tax Returns**

List all federal tax returns that were filed during the last three years by or on behalf of you, your spouse, or your dependents. *Provide a copy of each signed tax return that was filed during the last three years.*

| Tax Year | Name(s) on Return | Refund Expected |
|----------|-------------------|-----------------|
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |

**Item 28.**     **Applications for Credit**

List all applications for bank loans or other extensions of credit that you, your spouse, or your dependents have submitted within the last two years. *Provide a copy of each application, including all attachments.*

| Name(s) on Application | Name & Address of Lender |
|------------------------|--------------------------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**Item 29.**     **Trusts and Escrows**

Attachment A, page 23 ~~27~~     Initials _____

Exhibit 5 - Page 23 of 30

List all funds or other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents. Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity. *Provide copies of all executed trust documents.*

| Trustee or Escrow Agent's Name & Address | Date Established | Grantor | Beneficiaries | Present Market Value of Assets |
|---|---|---|---|---|
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

**Item 30.    Transfers of Assets**

List each person to whom you have transferred, in the aggregate, more than $2,500 in funds or other assets during the previous three years by loan, gift, sale, or other transfer. For each such person, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

Attachment A, page 24

Initials _____

Exhibit 5 - Page 24 of 30

## SUMMARY FINANCIAL SCHEDULES

**Item 31.**   **Combined Balance Sheet for You, Your Spouse, and Your Dependents**

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash on Hand (Item 12) | $_____ | Credit Cards (Item 23) | $_____ |
| Cash in Financial Institutions (Item 12) | $_____ | Motor Vehicles - Liens (Item 21) | $_____ |
| U.S. Government Securities (Item 13) | $_____ | Real Property - Encumbrances (Item 22) | $_____ |
| Publicly Traded Securities (Item 14) | $_____ | Loans Against Publicly Traded Securities (Item 14) | $_____ |
| Other Business Interests (Item 15) | $_____ | Taxes Payable (Item 24) | $_____ |
| Judgments or Settlements Owed to You (Item 16) | $_____ | Judgments or Settlements Owed (Item 25) | $_____ |
| Other Amounts Owed to You (Item 17) | $_____ | Other Loans and Liabilities (Item 26) | $_____ |
| Surrender Value of Life Insurance (Item 18) | $_____ | | |
| Deferred Income Arrangements (Item 19) | $_____ | Other Liabilities (Itemize) | |
| Personal Property (Item 20) | $_____ | _____ | $_____ |
| Motor Vehicles (Item 21) | $_____ | _____ | $_____ |
| Real Property (Item 22) | $_____ | _____ | $_____ |
| | | _____ | $_____ |
| Other Assets (Itemize) | | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| Total Assets | $_____ | Total Liabilities | $_____ |

Attachment A, page 25

Initials _____

Exhibit 5 - Page 25 of 30

<u>Item 32.</u>     **Combined Average Monthly Income and Expenses for You, Your Spouse, and Your Dependents for the Last 6 Months**

Provide the average monthly income and expenses for you, your spouse, and your dependents for the last 6 months.  Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| INCOME | | EXPENSES | |
|---|---|---|---|
| Salary - After Taxes | $_____ | Mortgage Payments for Residence(s) | $_____ |
| Fees, Commissions, and Royalties | $_____ | Property Taxes for Residence(s) | $_____ |
| Interest | $_____ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $_____ |
| Dividends and Capital Gains | $_____ | Car or Other Vehicle Lease or Loan Payments | $_____ |
| Gross Rental Income | $_____ | Food Expenses | $_____ |
| Profits from Sole Proprietorships | $_____ | Clothing Expenses | $_____ |
| Distributions from Partnerships, S-Corporations, and LLCs | $_____ | Utilities | $_____ |
| Distributions from Trusts and Estates | $_____ | Medical Expenses, Including Insurance | $_____ |
| Distributions from Deferred Income Arrangements | $_____ | Other Insurance Premiums | $_____ |
| Social Security Payments | $_____ | Other Transportation Expenses | $_____ |
| Alimony/Child Support Received | $_____ | Other Household Expenses | $_____ |
| Gambling Income | $_____ | <u>Other Expenses</u> (Itemize) | |
| <u>Other Income</u> (Itemize) | | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| Total Income | $_____ | Total Expenses | $_____ |

Attachment A, page 30    26    Initials _____

Exhibit 5 - Page 26 of 30

## ATTACHMENTS

**Item 33.**      **Documents Attached to this Financial Statement**

List all documents that are being submitted with this financial statement.

| Item No. Document Relates To | Description of Document |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

      I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____                    _____
(Date)                                                       Signature

Attachment A, page 27

Initials _____

Exhibit 5 - Page 27 of 30

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

     I am employed in the County of Los Angeles, State of California. I am over the age of
eighteen years and not a party to the within action; my business address is 1875 Century Park

4

East, Suite 2200, Los Angeles, California 90067-2523.

5

     On **August 3, 2007**, I served the foregoing document described as **[PROPOSED]
STIPULATED  PRELIMINARY INJUNCTION ORDER WITH ASSET FREEZE,**

6

**REQUIRED ACCOUNTING, AND OTHER EQUITABLE RELIEF AS TO DEFENDANT
JOHN TAYLOR** on all interested parties in this action as follows:

7

**SEE ATTACHED LIST**

8

☐   **BY MAIL:** I caused such envelope to be deposited in the mail at Los Angeles, California.

9

     The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with
this firm's practice of collection and processing correspondence for mailing.  It is

10

     deposited with the U.S. Postal Service on that same day in the ordinary course of business.
I am aware that on motion of the party served, service is presumed invalid if postal

11

     cancellation date or postage meter date is more than 1 day after date of deposit for mailing
in affidavit.

12

☐   **BY FACSIMILE:** At or before 5:00 p.m., I caused said document(s) to be transmitted by

13

     facsimile. The telephone number of the sending facsimile machine was (310) 553-1540.
The name(s) and facsimile machine telephone number(s) of the person(s) served are set

14

     forth in the service list. The document was transmitted by facsimile transmission, and the
sending facsimile machine properly issued a transmission report confirming that the

15

     transmission was complete and without error..

16

☒   **BY E-MAIL:** The foregoing document was transmitted by electronic mail on said date.

17

☐   **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility
regularly maintained by the overnight service carrier, or delivered such document(s) to a

18

     courier or driver authorized by the overnight service carrier to receive documents, in an
envelope or package designated by the overnight service carrier with delivery fees paid or

19

     provided for, addressed to the person(s) being served.

20

☐   **BY PERSONAL SERVICE:** I personally delivered such envelope(s) directly to the
person(s) being served.

21

     I declare under penalty of perjury under the laws of the State of California that the

22

foregoing is true and correct.

23

     **Executed on August 3, 2007, at Los Angeles, California.**

24

25

*Ellen Phillips*
                   Ellen Phillips

26

27

28

W:\79908\0001\Pleadings\Proof of Service LKS 07-11-07.doc

**Exhibit 5 - Page 28 of 30**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***Federal Trade Commission v. Burnlounge, Inc., Juan Alexander Arnold, John Taylor, Rob DeBoer and Scott Elliott, etc., et al.***
***United States District Court Western Division Case No. CV 07 03654 GW FMOx***

*Service List*

| Chris M. Couillou, Esq. | Counsel for Plaintiff, |
| Gerald S. Sachs, Esq. | Federal Trade Commission |
| 225 Peachtree Street, NE, Suite 1500 | |
| Atlanta, Georgia 30303 | |
| Telephone: 404.656.1353 | |
| Facsimile: 404.656.1379 | |
| E-Mail: ccouillou@ftc.gov | |

Thomas A. Brackey, II, Esq.
Freund & Brackey
427 North Camden Drive
Beverly Hills, CA 90210
Telephone: 310.247.2165
Facsimile: 310.247.2190
E-Mail: tbrackey@freundandbrackey.com
          Counsel for Defendant, Rob Deboer, Scott Elliott

Sheldon Sloan, Esq.
Lewis, D'Amato, Brisbois, etc.
11111 Santa Monica Boulevard, Suite 230
Los Angeles, CA 90025
Telephone: 310.268.0622
Facsimile: 310.268.2450
E-Mail: ssloanlaw@aol.com
          Co-Counsel for Burnlounge, Inc.

D J. Poyfair, Esq.
Bennett L. Cohen, Esq.
Shughart, Thomson & Kilroy
1050 17th Street, Suite 2300
Denver, CO 80265
Telephone: 303.572.9300
Facsimile: 303.572.7883
E-Mail: djpoyfair@stklaw.com
          Co-Counsel for Burnlounge, Inc.

Michael Wachtell, Esq.
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: (213) 891-0700
Facsimile: 213.630.5760
E-Mail: mwachtell@buchalter.com
          Counsel for Juan Alexander Arnold

PASTERNAK,
PASTERNAK
& PATTON

W:\79908\0001\Pleadings\Proof of Service LKS 07-11-07.doc          2

Exhibit 5 - Page 29 of 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Charles L. Kreindler, Esq.
Beck, De Corso, Daly, Kreindler & Harris
601 West Fifth Street, 12th floor
Los Angeles, CA 90071-2025
Telephone: 213. 683.8071
Facsimile: 213.489.7532
E-Mail: ckreindler@beckdecorso.com

PASTERNAK
PASTERNAK
& PATTON

W \79908\0001\Pleadings\Proof of Service LKS 07-11-07 doc          3

Exhibit 5 - Page 30 of 30

# EXHIBIT 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | )     Case No. 17-cv-02000-APG-GWF |
| Plaintiff, | ) |
| | )  **[PROPOSED] ORDER ON THE CORPORATE** |
| v. | )  **DEFENDANTS' EMERGENCY MOTION FOR** |
| | )  **LIMITED MODIFICATION OF ASSET** |
| REVMOUNTAIN, LLC, *et al.*, | )  **FREEZE TO PERMIT ACCESS TO FUNDS** |
| | )  **FOR ATTORNEYS' FEES AND REQUEST** |
| Defendants. | )  **FOR EXPEDITED BRIEFING AND HEARING** |
| | ) |

The Corporate Defendants have moved for entry of this Order releasing funds from the asset freeze ordered in the Temporary Restraining Order and preliminary injunctions in this matter. Finding good cause for a limited release of funds to temporarily meet the Corporate Defendants' attorneys' fees, the Court orders as follows:

**IT IS ORDERED** that the amount of $36,700 shall be paid for attorneys' fees associated with the preliminary injunction phase of this case.

**IT IS FURTHER ORDERED** that the receiver is authorized to pay $30,000 per month to cover attorneys' fees incurred by counsel for the Corporate Defendants for the defense of this lawsuit.

**IT IS SO ORDERED** this _____ day of _____, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE