ERIC W. SWANIS
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone:  702-792-3773
Facsimile:  702-792-9002
Email:  swanise@gtlaw.com

GIOVANNI M. RUSCITTI (Has complied with LR IA 11-2)
*(Admitted Pro Hac Vice)*
BERG HILL GREENLEAF RUSCITTI LLP
1712 Pearl Street
Boulder, Colorado 80302
Telephone:  303-402.1600
Facsimile:  303-402-1601
Email:  gmr@bhgrlaw.com

CLAUDE C. WILD III (Has complied with LR IA 11-2)
*(Admitted Pro Hac Vice)*
9247 Mornington Way
Lone Tree, CO 80124
Telephone:  303-916-9082
Email:  cwild@claudewildlaw.com

*Attorneys for Entity Defendants and Blair McNea*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> REVMOUNTAIN, LLC, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No. 17-cv-02000-APG-GWF <br><br> **Corporate Defendants' Reply to FTC's Response and Permanent Receiver's Response to Corporate Defendants' Emergency Motion for Limited Modification of Asset Freeze to Permit Access to Funds for Attorneys' Fees** |

The Corporate Defendants, through their undersigned counsel, and pursuant to Local Rule 6.1, hereby reply to Plaintiff FTC's Opposition Response and Permanent Receiver Joshua Teeple's Response to Corporate Defendants' Emergency Motion for Limited Modification of

1  Asset Freeze to Permit Access to Funds for Attorneys' Fees and Request for Expedited Briefing
2  and Hearing.

**INTRODUCTION**

4  While the FTC serves a valuable purpose in protecting consumers, there is something fundamentally wrong and flawed with a system that allows the government to sue a group of defendants and then freeze their assets - *ex parte* – so that they cannot defend themselves. This violates every definition of due process and fairness, and is contrary to every aspect of our civil justice system. And while the FTC obtained an *ex parte* TRO and Asset Freeze and then a preliminary injunction against a weakened group of parties who could not launch a full blown defense to the substantive issues raised in the preliminary injunction hearing, that is hardly dispositive of the issues in this motion or the case - *anyone* should be able to prevail when it sues a party and then strips that party of the ability to defend itself.

13  To be sure, this case is far from over. The Corporate Defendants, who must be represented by counsel in this case, have the right to defend themselves and they should have reasonable access to their assets to do so. Nothing raised by the FTC or the Receiver in their responses changes that fact. Indeed, in its response, the FTC argues that the Court should not give weight to the fact that it has not made a final ruling of wrongdoing. Pltf's Mot. (ECF No. 73) at 6. The FTC also contends that the Corporate Defendants do not need funds to pay expert witness and other litigation costs because such expenses are not necessary when the FTC has the burden of proof. Pltf's Mot. (ECF No. 73) at 4 n *3. The FTC cites to case law which stand for the proposition that a defendant does not need to hire expert witnesses, take depositions, pay litigation travel costs, hire accountants, or conduct discovery.

23  These arguments miss the mark and underscore the due process issues in the motion - the FTC wants to declare the game over after leading in the just first quarter - a quarter in which the FTC had an unfair advantage as a result of the asset freeze. (Imagine if the NFL called this year's Super Bowl over in the third quarter before the Patriots stormed back). As explained below, courts have regularly used their discretion to approve a limited payment of attorney's fees out of
28  ///

2

frozen assets. *See FSLIC v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990) (approving limitation on attorneys fees).

Although the Court may have granted a preliminary injunction against wounded parties, this action is far from over. Months of discovery, depositions, settlement negotiations, and preparations for trial remain. If the Court does not release frozen funds for reasonable attorney's fees, the Corporate Defendants do not have the resources to adequately defend this action and are put in a disadvantage defending themselves. Zero funds for legal = zero legal representation = no defense. Again, this violates due process.

The Receiver's arguments fair no better. In fact, the Receiver seems more concerned about his fees and his lawyer's fees than the Corporate Defendants' ability to defend themselves.

Finally, the FTC argues, presumably in jest, that a $50,000 retainer paid by a third-party is somehow sufficient to handle the defense of this complex case - a case in which the FTC can take up to 30 depositions - and then later argue that the lawyers should take the risk of non-payment. Sched. Order and Disc. Plan (ECF No. 79) at 1. The FTC has a fundamental misunderstanding of the real world. The FTC has been investigating these defendants for at least 9months, with multiple staff attorneys and paralegals, investigators, forensic accountants, data analyst, visual information specialists, and experts. It sought and obtained draconian *ex parte* relief while asserting provocative claims based on fraud and deceit. $50,000 is hardly enough to mount a defense in such a case, and in fact, such amount has already been consumed in investigating the FTC claims, responding to the requirements contained in the TRO (including preparing financial disclosures for 59 Corporate Defendants and Mr. McNea), cooperating with the Receiver, and preparing a response to the request for a preliminary injunction.

Thus, to be clear, the $36,700 request for past unpaid fees in the Corporate Defendants' Emergency Motion is in addition to the $50,000 retainer.[1] Saying counsel should take the risk of non-payment is basically forcing the Corporate Defendants to capitulate before the other 3 quarters of the game are played. Simply put, this violates due process and the request for

---

[1] One has to wonder what it cost the FTC to get to this phase (assuming its lawyers were paid market rates) – certainly more than $86,700.

3

modification of the asset freeze should be granted.

In the alternative, the Corporate Defendants are willing to accept a six-month cap on its request for attorneys' fees, with the right to revisit the issue at the end of the six-month period.

## ARGUMENT

### I. The Fees Requested are Reasonable because this Litigation is Complex and Life-Changing: *Zero Funds for Legal = Zero Defense and No Due Process.*

This case involves 59 separate legal entities, a 119 paragraph complaint, a preliminary injunction, a Receivership and an asset freeze. The claims are inflammatory and confrontational and, if successful, will ruin the companies, the principals and leave countless people unemployed. In fact, the case has already done that – all but one of the Corporate Defendants is out of business, including RevGuard and RevGo, which should never have been added to this case as they have nothing to do with the allegations in the complaint. A case like this will involve hours of settlement negotiations, extensive motion practice, and will involve complex legal issues. Discovery will also be complex and lengthy. The Court granted the FTC's request to extend the deposition limit to 30 depositions due to the "large number of parties, Defendants' employees, Defendants' clients and vendors, and other individuals who may need to be deposed." Sched. Order and Disc. Plan (ECF No. 79) at 1. But, the FTC doesn't want to play fair – they want to essentially force the Corporate Defendants into capitulating by taking away their right to defend themselves. This violates every aspect of due process and should not be allowed.

As stated above, the FTC argues that the Court should not give weight to the fact that it has not made a final ruling of wrongdoing. Pltf's Mot. (ECF No. 73) at 6. The FTC contends that the Corporate Defendants do not need funds to pay expert witnesses and other litigation costs because such expenses are not necessary when the FTC has the burden of proof. Pltf's Mot. (ECF No. 73) at 4 n *3. In support of their arguments, the FTC cites to general case law which stand for the proposition that a defendant does not need to hire expert witnesses, take depositions, pay litigation travel costs, hire accountants, or conduct discovery when opposing counsel has the burden of proof. Pltf's Mot. (ECF No. 73) at 4 n*3 (citing to *SEC v. Lauer*, 445

F.Supp. 2d 1362, 1368-69 (S.D. Fla. 2006); *Avco Delta Corp. Canada Ltd. v. United States*, 540 F.2d 258, 262 (7th Cir. 1976)). However, "the fundamental requirement of due process is the right to be heard at a meaningful time and in a *meaningful manner*." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (emphasis added). "A litigant usually lacks the skill and knowledge to adequately prepare his case, and he requires the guiding hand of counsel at every step in the proceedings against him." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1117 (5th Cir. 1980).

Here, while the Court issued an injunction, the Court should give weight to the fact that there is no final ruling of wrongdoing. When an action, such as this one, is "brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defenses." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987) (holding that although a preliminary injunction was granted, a court cannot assume wrongdoing before final judgment).

The FTC's arguments simply overlook the complex and extensive nature of this action. The FTC acts as if they have already won, but in reality, this case is far from over. The FTC's allegations against the Corporate Defendants are serious and life-changing. This lawsuit has already forced RevGuard and RevGo to begin shutting down, which has resulted in 54 people losing their jobs. Defs. Memorandum in Opposition to Preliminary Injunction (ECF No. 42) at 3. RevGuard, RevGo, and RevLive! shouldn't even be involved in this lawsuit. RevCompanies' have already filed a motion to dismiss and will need readily available funds to respond to the FTC's response when it is filed. The FTC's argument that a defendant should not take all necessary steps to defend itself simply because the other party has the burden of proof does not hold any weight in our judicial system. The realities of America's adversarial system require an attorney representing 59 corporate entities against complex claims to hire experts, take depositions, conduct discovery, and pay for other litigation needs.

Furthermore, the parties have agreed to a 30 day stay of discovery to allow the parties to discuss settlement. The Corporate Defendants plan on utilizing the initial funds for this purpose

and are committed to making every reasonable effort to settle. Of course, like anything else in the law, productive settlement discussions require effective legal representation. An early settlement will promote judicial economy, providing a good return on the use of a modest amount of frozen funds for this purpose

Even if this Court does not accept that there is a due process right to counsel in the civil context, there is no doubt that the Corporate Defendants need capable and experienced counsel.[2] A restraint on the Corporate Defendants' ability to defend these claims in a meaningful manner does not comport with the notion of due process or the foundations of the American judicial system.

## II. Ninth Circuit Precedent Gives the Court Authority to Grant the Corporate Defendants' Reasonable Attorneys' Fees.

Ninth Circuit case law gives the Court ample authority to unfreeze funds for reasonable attorneys' fees. In opposition, the FTC argues that the alleged, but not yet proven, disparity between available assets and the amount needed to compensate alleged, but not yet proven, injured consumers is enough to deny this request. The Permanent Receiver similarly argues that releasing any money to pay attorneys' fees will reduce the amount of funds available for consumers. There is no bright-line rule that whenever the FTC alleges such a disparity, attorneys representing defendants in these actions should not be paid. The FTC urges the Court to hold that a disparity exists before they have even proven one. The preliminary injunction does not prove that a disparity exists because the preliminary injunction does not ultimately establish wrongdoing. The Court should exercise its discretion in light of the fact that wrongdoing is not yet proven and this case is far from over.

The Ninth Circuit in *Noble Metals* stated that it does not "intimate that attorney fee applications may *always* be denied where the assets are insufficient to cover the claims." *Commodity Futures Tradin Com'n v. Noble Metals Intern., Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (emphasis added). Instead, "[d]iscretion must be exercised by the district court in light of the fact

---

[2] In fact, the Ninth Circuit requires that all corporate defendants have representation. D-*Beam Ltd. Partnership v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (holding that there can be no dispute that a corporate entity may proceed in federal court only when represented by licensed counsel. A corporation simply may not proceed pro se).

that wrongdoing is not yet proved when the application for attorney fees is made." *Id*. In *F.T.C. v. Inc.com Corp*, the Ninth Circuit held that a district court did not abuse its discretion by denying a request to release additional funds after the court *had already* permitted the defendants to withdraw reasonable sums from frozen assets for attorney's fees, *even though* available funds were insufficient to compensate injured consumers. 475 Fed. Appx. 106, *4 (9th Cir. 2012) (emphasis added).

In *Federal Savings and Loan Insurance v. Ferm*, the court allowed defendants to access frozen assets to pay attorneys under the condition that the attorneys' fees be monitored *in camera*. 909 F.2d 372, 374 (9th Cir. 1990). The Federal Savings and Loan Insurance Corporation alleged that the defendant led a conspiracy to conceal and fraudulently transfer funds allegedly illegally obtained from a bankrupt savings and loan association. *Id*. at 372. The district court granted a preliminary injunction freezing defendant's assets during the pendency of the corporation's action against. *Id*. The district court permitted the defendant to withdraw funds to pay for reasonable attorney's fees on the condition that the attorneys' fees be monitored *in camera*. *Id*. The Ninth Circuit found that there was no due process issues for the court to allow defendants to withdraw reasonably attorneys' fees under the condition that the fee's be monitored *in camera* to ensure that they are reasonable. *Id*. at 375. The court reasoned that the district court's order ensured compliance with the preliminary injunction's requirement that otherwise frozen funds be used solely for fee which are reasonable. *Id*.

Similarly, in *F.T.C. v. National Prize Information Group*, the court released funds after defendants requested emergency relief. No. 2:06–cv–01305–RCJ–PAL, 2006 WL 3234360, *1 (D.Nev. 2006). There, the FTC alleged that the group harmed consumer by operating under fictitious names. *Id*. The court first entered a temporary restraining order with an asset freeze on. *Id*. Soon after, the defendants request emergency relief from the TRO to allow the release of frozen funds for payment of attorneys' fees, business expenses, and living expenses. *Id*. The court granted this motion and released $5,000 for each law firm representing the defendants. *Id*. After the court conducted a hearing on the FTC's motion for preliminary injunction, the Court raised the amount of allowable attorneys' fees to $25,000 for each of the two law firms

7

representing defendants. *Id*. The Court later granted this preliminary injunction finding that there was sufficient evidence to show that the defendants' actions were deceptive and misleading. *Id*. at *6.

Again, in *FTC v. Health Formula*, the court allowed for reasonable attorneys' fees after it filed an *ex parte* asset freeze. See Case No. 2:14-cv-01649-RFB-GWF. The court stated that "in light of the inherent equitable power of this Court to fashion 'provisional remedies ancillary to authority to provide final equitable relief,'" it found there was good cause to permit access to funds for limited amounts of attorneys fees. The court ordered the receiver to disburse $30,000 per month to Defendant's counsel and to disburse another $60,000 in attorneys' fees to compensate counsel for representation during the two first months of the litigation.

Finally, in *F.T.C. v. Burnlounge, Inc.*, the court allowed the defendant to expend $20,000 on attorneys' fees and permitting additional requests in increments of $20,000. Case No. 2:07-cv-03654-GW-FMO (C.D. Cal. Aug. 8. 2007). There, the court found that there was good cause to believe that the individual defendants engage in acts and practices that violated Section 5 of the FTC Act. *Id*. The court reasoned that the evidence showed that the individual defendants engaged in a classic pyramid scheme in violation of the F.T.C. Act. *Id*.  Thus, the court entered a preliminary injunction with an asset freeze. *Id*. However, in its preliminary injunction order, the court allowed the defendant to expend $20,000 for attorneys' fees, with the option, contingent on providing the FTC with a description of the fees and a general description of the legal services, the ability to request more in increments up to $20,000 at a time. *Id*.

The Court should exercise its discretion in light of the fact it has not entered final judgment in this case.  Although the Court granted a preliminary injunction that does not mean that the Court made a final decision regarding the Corporate Defendants' alleged wrongdoing. *See Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987) (holding that although a preliminary injunction was granted, a court cannot assume wrongdoing before final judgment). The Court should make it decision to release Attorneys' Fees knowing that this case is far from over.  As mentioned earlier, the Corporate Defendants will use the released funds to continue settlement negotiations, which could result in a dismissal of this suit.

The FTC wants the Court to establish a bright-line rule, that whenever they allege disparities between the alleged victim's damages and the amount of funds available, defendants' counsel should not be paid. From the FTC's perspective, arguing for a bright-line rule makes sense.  The FTC's prosecution is significantly easier when defendants are unable to pay for experienced counsel to defend 30 depositions, respond to discovery requests, or prepare for trial. It is as if the FTC can make the Corporate Defendants "play-a-man down" for the rest of this litigation simply by alleging there are not enough funds to pay both counsel and alleged, but not-yet-proven, victims. This neither comports with Ninth Circuit precedent nor with Due Process.

### III.     Counsel for the Corporate Defendants' Has Already Agreed to Reduce its Attorneys' Fees.

The Court should find that the Corporate Defendants' request for release of attorneys' fees is reasonable because counsel has already discounted the Corporate Defendants' attorneys' fees. Mr. Wild has agreed to reduce his hourly rate from his normal rate of $450 an hour to $300 an hour.  Mr. Ruscitti has agreed to reduce his hourly rate from $400 an hour to $300 an hour and has agreed to utilize associates and law clerks to the fullest extent possible.  Associates will be billed at a lower rate of $245 an hour and $75 an hour for law clerks.  Given the complexity of this litigation, agreeing to reduce these hourly rates is more than reasonable.

Furthermore, counsel is willing to stipulate to the FTC's request that should the Court release any funds, the funds will pay for only the fees of the Corporate Defendants' defense, and not Defendant Mr. McNea's defense.  And to that end, with respect the outstanding legal invoice referenced in the Motion and which was submitted to the Court for an *in camera* review, the Corporate Defendants will also submit Mr. Claude Wild's revised invoices for an *in camera* review, separating fees incurred on behalf of Mr. McNea from the fees incurred on behalf of the Corporate Defendants.   Mr. McNea  and the Corporate Defendants believe it is reasonable for the Court to allow payment of Mr. Wild's unpaid fees relating to Mr. McNea from Mr. McNea's brokerage accounts.

In the alternative, the Corporate Defendants are willing to accept a six-month cap on its request for attorneys' fees, with the right to revisit the issue at the end of the six-month period.

## CONCLUSION

Counsel are working efficiently and cost-effectively to defend the Corporate Defendants in this action. However, the Corporate Defendants still need adequate and readily-available funds to continue negotiating a settlement agreement and to prepare for the defense of this case, including the extensive discovery sought by the FTC. The bottom line is that this case is far from over and the Corporate Defendants need the ability to pay counsel in order to properly defend themselves . Without any unfrozen funds, the Corporate Defendants will struggle to negotiate a fair settlement agreement and defend itself during the balance of this case.

Respectfully submitted this 22nd day of September, 2017.

/s/ERIC W. SWANIS
ERIC W. SWANIS
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone:  702-792-3773
Facsimile:  702-792-9002
Email:  swanise@gtlaw.com

/s/CLAUDE C. WILD III
CLAUDE C. WILD III
(*Admitted Pro Hac Vice*)
9247 Mornington Way
Lone Tree, CO 80124
Telephone:  303-916-9082
Email: cwild@claudewildlaw.com
*Attorneys for Corporate Defendants and Blair McNea*

/s/GIOVANNI M. RUSCITTI
GIOVANNI M. RUSCITTI
(*Admitted Pro Hac Vice*)
BERG HILL GREENLEAF RUSCITTI LLP
1712 Pearl Street
Boulder, Colorado 80302
Telephone:  303-402.1600
Facsimile:   303-402-1601
Email:  gmr@bhgrlaw.com

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September, 2017, a true and correct copy of the foregoing Corporate Defendants' Reply to FTC's Response and Permanent Receiver's Response to Corporate Defendants' Emergency Motion for Limited Modification of Asset Freeze to Permit Access to Funds for Attorneys' Fees was filed and served via the United States District Court's ECF System to the persons listed below and served via UPS as indicated below:

Bart K Larsen       blarsen@klnevada.com, jierien@klnevada.com, mbarnes@klnevada.com, usdistrict@klnevada.com

Blaine T Welsh       Blaine.Welsh@usdoj.gov, CaseView.ECF@usdoj.gov, eunice.jones@usdoj.gov, sue.knight@usdoj.gov

Byron Z. Moldo       bmoldo@ecjlaw.com

Eric D. Hone       ehone@dickinsonwright.com, bdonaldson@dickinsonwright.com, lstewart@dickinsonwright.com, LV_LitDocket@dickinsonwright.com

Gabriel A. Blumberg       gblumberg@dickinson-wright.com, bdonaldson@dickinsonwright.com, lstewart@dickinson-wright.com, LV_LitDocket@dickinsonwright.com

Michelle Schaefer       mschaefer@ftc.gov

Peter Alan Davidson       pdavidson@ecjlaw.com, lmacdonald@ecjlaw.com

Rachel Hirsch       rhirsch@ifrahlaw.com, docketing@ifrahlaw.com

Richard B Newman       rnewman@hinchnewman.com

Ronald D Green , Jr       rdg@randazza.com, ecf@randazza.com, trey-rothell-2425@ecf.pacerpro.com

Sarah Waldrop       swaldrop@ftc.gov, rkim1@ftc.gov

| Via Overnight UPS: | Via Overnight UPS: |
|---|---|
| Sarah Waldrop | Rachel Hirsch |
| Michelle Schaefer | Ifrah Law PLLC |
| Mailstop CC-9528 | 1717 Pennsylvania Avenue, NW |
| 600 Pennsylvania Avenue, NW | Suite 650 |
| Washington, DC 20580 | Washington, DC 20006 |
| 202.326.3444 | 202.524.4145 |

/s/ *Joyce Heilich*
An employee of Greenberg Traurig, LLP

11