ERIC W. SWANIS
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone:  702-792-3773
Facsimile:  702-792-9002
Email:  swanise@gtlaw.com

GIOVANNI M. RUSCITTI (Has complied with LR IA 11-2)
*(Admitted Pro Hac Vice)*
BERG HILL GREENLEAF RUSCITTI LLP
1712 Pearl Street
Boulder, Colorado 80302
Telephone:  303-402.1600
Facsimile:  303-402-1601
Email:  gmr@bhgrlaw.com

CLAUDE C. WILD III (Has complied with LR IA 11-2)
*(Admitted Pro Hac Vice)*
9247 Mornington Way
Lone Tree, CO 80124
Telephone:  303-916-9082
Email:  cwild@claudewildlaw.com

*Attorneys for Entity Defendants and Blair McNea*

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | Case No. 17-cv-02000-APG-GWF |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **DEFENDANTS' MOTION TO STAY DISCOVERY PENDING SETTLEMENT NEGOTIATIONS AND THE COURT'S RULING ON THE REVCOMPANIES' MOTION TO DISMISS** |
| REVMOUNTAIN, LLC, *et al.*, | ) | |
| Defendants. | ) | |

1

The Corporate Defendants and Defendant Blair McNea (collectively the "**Defendants**"), through their undersigned counsel hereby file a Motion to Stay Discovery Pending Settlement Negotiations and Pending the RevCompanies' Motion to Dismiss.  As grounds therefore, the Defendants state as follows:

**CERTIFICATE OF CONFERRAL**

The Defendants have made a good faith effort to meet and confer with the FTC regarding this Motion to Stay and the FTC has indicated it opposes the relief requested herein.

**I.      INTRODUCTION**

The FTC and the Defendants have had general and preliminary settlement negotiations in an attempt to end this litigation, and are scheduled to meet in person in Washington, D.C. on November 13, 2017, to continue those discussions.  The Defendants are hopeful that these discussions will lead to a prompt and efficient resolution of this case.

However, due to the asset freeze and limited funds released for attorneys' fees, the Defendants' financial ability to negotiate a productive settlement will be hindered by discovery.  To that end, the Court granted the FTC's request to extend the deposition limit to 30 depositions, which is indicative of the FTC's plan to engage in lengthy and expensive discovery.  And to be sure, on November 3, 2017, the FTC served extensive written discovery on the Defendants.  *See* Sample Interrogatories and Requests for Production of Documents, attached hereto as **Exhibit A**. The FTC has served identical Interrogatories and Request for Production of Documents on all of the Defendants, which total **1001 Interrogatories and 2852 Requests for Production of Documents** that Defendants need to respond to.  The set deadline to respond to these 3853 discovery requests is December 4, 2017.  It will take months and an immense amount of resources to properly respond to these 3853 individual discovery requests.  All of the law firms involved will have to allocate their available attorneys and resources in responding to these requests.

Responding to this discovery will be a monumental and expensive task.  The Court should stay discovery to encourage the parties to engage in settlement efforts, rather than extensive, and possibly unnecessary, discovery.  At the very least, the Court should grant a stay

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

of discovery as to the RevCompanies. The RevCompanies have a pending dispositive Motion to Dismiss before the Court which should end the RevCompanies' participation in this action. All three of the RevCompanies have had to shut down as a result of this case. Taking discovery of the RevCompanies before the Court rules on this pending Motion will result in needless discovery and expenses spent by the already damaged companies.

Therefore, the Defendants respectfully request a 60-day stay of discovery.

## II.    RELEVANT FACTS

As the Court is aware, the issues in this case have been well litigated and therefore the Defendants will not restate the issues here. Relevant facts to this motion include:

1.    The RevCompanies filed a Motion to Dismiss arguing that the FTC failed to state a claim and pleading with particularity. The FTC has filed a response and the RevCompanies filed a reply. The Motion to Dismiss is currently pending in front of the Court.

2.    The Parties have engaged in general and preliminary negotiations. The Defendants and the FTC will have face to face negotiation discussions in Washington D.C. on November 13.

3.    To date, the Permanent Receiver has found no evidence of wrongdoing in the Rev Entities. In the Permanent Receiver's First Verified Report, the Receiver found no issues in the Rev Entities "that make them appear to be operating in an unlawful manner." (ECF No. 44, p. 22 ¶54). Again, in his Second Verified Report, the Receiver states, "that the Rev Entities as standalone business operations can be operated lawfully." (ECF No. 89, p. 12-13, ¶31). In addition, and supportive of the lawful nature of their operations, the Receiver concluded that "[t]he scripts, coupled with the proprietary A/B testing software developed by the Rev Entities, were used to by the Rev Entities to maximize consumer lifetime value and minimize chargebacks for their clients." (ECF No. 89, p. 16, ¶39).

4.    On September 29, 2017, the Receiver wound down RevLive's business and terminated its operation to preserve its intellectual property. (ECF No. 89, p. 5 ¶9). The Receiver determined that RevLive could no longer operate profitably due to the attrition of RevLive's clients, "largely in part due to reputational issues related to the instant case." (ECF

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

No. 89 p. 5 ¶9). The "attrition of RevLive's clients continued subsequent to the August 29, 2017 preliminary injunction hearing." (ECF No. 89, p. 5 ¶9). The other two RevCompanies, RevGo and RevLive! closed previously for the same reasons.

### III.   STANDARDS FOR REVIEW

Courts have broad discretionary power to control discovery. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013) (*citing Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). "A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 555-56 (D. Nev. 1997). "In deciding whether to grant a stay of discovery, the Court is guided by the objectives of Rule 1 to ensure a 'just, speedy, and inexpensive determination of every action.'" *Kor Media Group, LLC v. Green*, 294 F.R.D. at 581. The Ninth Circuit is firmly "committed to the rule that the law favors and encourages compromise settlements." *United States v. McInnes,* 556 F.2d 436, 441 (9th Cir. 1977). "[T]here is an overriding public interest in settling and quieting litigation." *Id.* (citations omitted). "It is well recognized that settlement agreements are judicially favored as a matter of sound public policy.  Settlement agreements conserve judicial time and limit expensive litigation." *Speed Shore Corp. v. Denda,* 605 F.2d 469, 473 (9th Cir.1979).

Whether the court stays litigation upon the request of a party will depend on the circumstances of each particular case, including without limitation: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and the trial of the case, (3) whether discovery is complete, and (4) whether a trial date has been set. D. Nev. LPR 1-20.

In determining whether to stay discovery pending resolution of a potentially dispositive motion, courts will stay discovery if three requirements are met: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a "preliminary peek" at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief. *Kor Media Group, LLC v. Green*, 294 F.R.D. at 581.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

# IV.   ARGUMENT

**A.    The Court should grant the motion to stay discovery to encourage settlement negotiations.**

The issue here is whether granting a stay will ensure a just, speedy, and inexpensive determination of this action and also encourage settlement negotiations. In making this determination, the Court must balance the Ninth Circuit's preference for settlement with the present need for discovery in determining this action.

As stated in the above, the party seeking a stay of discovery carries a having burden of making a strong showing why discovery should be stayed. *Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 555-56 (D. Nev. 1997). Although courts have broad discretion in controlling discovery, the Ninth Circuit is firmly committed that the law favors and encourages settlements. *United States v. McInnes,* 556 F.2d at 441. Whether the court stays litigation upon the request of a party will depend on the circumstances of each particular case. D. Nev. LPR 1-20.

For example, in *Grondal v. United States,* the court suspended discovery and stayed motion practice in order to accommodate settlement discussions and negotiations., CV-09-0018-JLQ 2010 WL 11512279, at *2 (E.D. Wash. 2010). The parties in *Grondal* claimed leasehold interest and ownership over the control of a parcel of land.  *See id*. at *1.  At a hearing, the court was informed that settlement discussion had taken place and that some progress was made.  *Id*. at *2.  Although one of the parties expressed its desire to proceed with discovery, the Court was encouraged by the parties' willingness to participate in court involved mediation and settlement negotiation.   See *id*. Therefore, the Court stayed discovery and motion to practice to accommodate settlement discussions and negotiations.  *Id*.

In *Coker v. Dowd*, the court granted a stay to help facilitate ongoing settlement negotiations. 2:13−cv−0994−JCM−NJK, 2013 WL 12216682, at *1 (D. Nev. 2013). In *Coker*, the parties sought a 60 day stay of all proceedings. *Id*.  The parties believed that keeping the current deadlines and engaging in discovery would be counterproductive to settlement efforts. *Id*.  The parties also asserted that a stay would facilitate settlement by allowing the parties to avoid

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

unnecessary costs. *Id*. The Court agreed, and found that the parties showed that they would be prejudiced if the case were to move forward. *Id*.   Therefore, the Court granted the stay to encourage the parties to engage in settlement negotiations. *Id*.

Applying these well reasoned principles here, granting a stay in this case to encourage settlement negotiation will uphold the Ninth Circuit's interests in promoting settlements and quieting litigation. As stated in *Coker v. Dowd*, courts are willing to grant stays of discovery in order to promote settlement and avoid unnecessary costs. Similarly to the parties in *Grondal v. United States*, the FTC and Defendants have already engaged in settlement negotiations and are planning to meet in person to further negotiate. See 2010 WL 11512279, at *2.  Any settlement would, of course, conserve judicial resources and will limit expensive litigation moving forward. Courts encourage parties to settle early because such resolution ensures a just, speedy, and inexpensive determination of every action.  *See Whitfield v. Pick Up Stix, Inc.*, No. 2:10–cv–00099–ECR–PAL, 2011 WL 3875330, at *1 (D. Nev. 2011) (holding that the settlement of cases prior to the filing of dispositive motions and trial benefits the court and the parties by securing just, speedy, and inexpensive determinations); *see also Pitman v. Brinker Intern., Inc*., 216 F.R.D. 481, 485 (D. Ariz. 2003) (holding that settling cases prior to the filing and resolution dispositive motions benefits the court and the parties by reaching a just, speedy, and inexpensive determination of an action).

Moreover, the asset freeze in this case limits the ability of the Defendants to respond to discovery requests, defend depositions, and engage in productive settlement negotiations.  As noted above, the FTC has served **1001 Interrogatories and 2852 Request for Production of Documents** on the Defendants.  The costs in responding to the discovery requests, in light of the asset freeze, will heavily burden the Defendants. In light of the Ninth Circuit's strong policy in promoting settlements and quieting litigation, the Court should encourage the FTC and Defendants to focus their attention and resources on settlement, not discovery.  *See Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15–cv–01474–DAD–BAM, 2017 WL 2289342, at *4 (E.D.Cal. 2017) (holding that settlement ultimately allows the parties to avoid the expense of discovery, dispositive motion filings, trial, and possible subsequent appeals).

Furthermore, a stay will not prejudice the FTC or present to the FTC a clear tactical disadvantage. To that end, the FTC has already conducted extensive pre-litigation discovery in this case, alleviating the pressing need for the FTC to begin gathering documents and conducting depositions. To be sure, the FTC investigated and conducted pre-litigation discovery on the Defendants for over eight months prior to filing the complaint. The FTC has also conducted third-party discovery. Finally, a Receiver has been appointed, who has provided substantial additional informal discovery to the FTC. Thus, the FTC will not be prejudiced by a stay.

Finally, the Court has yet to set a trial date. Therefore, a stay in discovery will not push back any set trial or cause any prejudice because neither party has begun preparing for a set trial date.

Therefore, the Court should grant a stay of discovery to promote settlement negotiations amongst the parties.

**B.**      **The Court should grant the motion to stay discovery pending the Court's ruling on the RevCompanies' Motion to Dismiss.**

Alternatively, the stay should be granted as to the RevCompanies. To that end, a "peek at merits" of the RevCompanies' Motion to Dismiss should convince the Court that the FTC is unable to state a claim for relief as to those parties. Thus, discovery should be stayed while the Motion to Dismiss is pending.

In order to grant a stay pending a dispositive motion, the Court must find that the following three requirements are met: (1) that the pending motion is potentially dispositive; (2) that the potentially dispositive motion can be decided without additional discovery; and (3) that the Court has taken a "preliminary peek" at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013).

First, there is no doubt that the pending Motion to Dismiss is potentially dispositive. The RevCompanies' Motion to Dismiss attacks the adequacy of each and every claim of the complaint. The motion proves that the FTC has failed to adequately plead with particularity any

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1    of the claims against the RevCompanies.  If granted, all claims against the RevCompanies will

2    be dismissed for failure to state a claim.  Therefore, the pending Motion to Dismiss is potentially

3    dispositive.

4            Second, the pending Motion to Dismiss can be decided without additional

5    discovery.  The Court is limited to the facts pled in the FTC's complaint, not the facts argued in

6    the preliminary injunction or found through discovery, in deciding the Motion to Dismiss.  *Tracy*

7    *v. United States,* 243 F.R.D. 662, 664 (D.Nev.2007) (holding that "[i]n considering a motion to

8    dismiss under Federal Rule of Civil Procedure 12(b)(6), the court asks only whether the

9    pleadings are sufficient to establish a claim, not whether the Plaintiff could find evidence to

10   support the pleadings") (citing *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001));

11   *see also Akhtar v. Mesa,* 698 F.3d 1202, 1212 (9th Cir. 2012) (holding that courts must

12   "considered only allegations contained in the pleadings, exhibits attached to the complaint, and

13   matters properly subject to judicial notice"); *see also S. Walk at Broadlands Homeowner's Ass'n*

14   *v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (stating that "it is well

15   established that parties cannot amend their complaints through briefing or oral advocacy").  As

16   noted earlier, the FTC has already had the opportunity to conduct discovery of all of the

17   defendants prior to filing its complaint.  Allowing the FTC to take a second bite of the discovery

18   apple before deciding the motion to dismiss will defeat the premise of a Rule 12(b)(6) motion.

19   Therefore, because the FTC already conducted discovery on the RevCompanies and Rule

20   12(b)(6) motions are limited to the pleadings at issue, the second requirement is met.

21           Finally, a "preliminary peek" at the merits of the RevCompanies' Motion to Dismiss will

22   convince the Court that the FTC is unable to state a claim for relief.  "Courts in this District have

23   consistently held that a stay of all discovery should only be ordered if the court is 'convinced'

24   that a plaintiff will be unable to state a claim for relief." *Kor Media Group, LLC v. Green*, 294

25   F.R.D. 579, 583 (D. Nev. 2013).  Courts have acknowledged that this standard is not easily met

26   and "absent extraordinary circumstances, litigation should not be delayed simply because a non-

27   frivolous motion has been filed." *Id.*  However, extraordinary circumstances exist here.  Each of

28   the three RevCompanies have closed as a result of the FTC's action against them.  Although a

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

"preliminary peek" at the merits of the Motion to Dismiss will show that the FTC has failed to state a claim for relief, the claims have already critically damaged the RevCompanies' business and reputation as stated in the Permanent Receiver's second report.   Therefore, because extraordinary circumstances exist and a "preliminary peek" at the merits of the Motion to Dismiss will convince the Court that the FTC is unable to state a claim for relief, the third requirement is met.

Allowing the FTC to serve discovery on the RevCompanies while its dispositive Motion to Dismiss is pending will further damage the companies' businesses.   Thus, the Court should stay discovery pending its ruling on the Motion to Dismiss.

## V.    CONCLUSION

Therefore, the Defendants respectfully request that the Court grant a 60-day stay of discovery to encourage both parties to reach a settlement and end this litigation.

Respectfully submitted this 9th day of November, 2017.


_____*/s/ Eric W. Swanis*_____
ERIC W. SWANIS
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone:  702-792-3773
Facsimile:  702-792-9002
Email:  swanise@gtlaw.com

_____*/s/ Claude C. Wild III*_____
CLAUDE C. WILD III
(*Admitted Pro Hac Vice*)
9247 Mornington Way
Lone Tree, CO 80124
Telephone:  303-916-9082
Email:  cwild@claudewildlaw.com
*Attorneys for Corporate Defendants and*
*Blair McNea*

_____*/s/ Giovanni M. Ruscitti*_____
GIOVANNI M. RUSCITTI
(*Admitted Pro Hac Vice*)
BERG HILL GREENLEAF
RUSCITTI LLP
1712 Pearl Street
Boulder, Colorado 80302
Telephone:  303-402.1600
Facsimile:  303-402-1601
Email:  gmr@bhgrlaw.com

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of November, 2017, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO STAY DISCOVERY** was filed and served via the United States District Court's ECF System to the persons listed below and served via UPS as indicated below:

Bart K Larsen    blarsen@klnevada.com, jierien@klnevada.com, mbarnes@klnevada.com, usdistrict@klnevada.com

Blaine T Welsh    Blaine.Welsh@usdoj.gov, CaseView.ECF@usdoj.gov, eunice.jones@usdoj.gov, sue.knight@usdoj.gov

Byron Z. Moldo    bmoldo@ecjlaw.com

Eric D. Hone    ehone@dickinsonwright.com, bdonaldson@dickinsonwright.com, lstewart@dickinsonwright.com, LV_LitDocket@dickinsonwright.com

Gabriel A. Blumberg    gblumberg@dickinson-wright.com, bdonaldson@dickinson-wright.com, lstewart@dickinson-wright.com, LV_LitDocket@dickinson-wright.com

Michelle Schaefer    mschaefer@ftc.gov

Peter Alan Davidson    pdavidson@ecjlaw.com, lmacdonald@ecjlaw.com

Rachel Hirsch    rhirsch@ifrahlaw.com, docketing@ifrahlaw.com

Richard B Newman    rnewman@hinchnewman.com

Ronald D Green , Jr    rdg@randazza.com, ecf@randazza.com, trey-rothell-2425@ecf.pacerpro.com

Sarah Waldrop    swaldrop@ftc.gov, rkim1@ftc.gov

**Via Overnight UPS:**
Sarah Waldrop
Michelle Schaefer
Mailstop CC-9528
600 Pennsylvania Avenue, NW
Washington, DC 20580
202.326.3444

**Via Overnight UPS:**
Rachel Hirsch
Ifrah Law PLLC
1717 Pennsylvania Avenue, NW
Suite 650
Washington, DC  20006
202.524.4145

_____
        */s/ Joyce Heilich*
An employee of Greenberg Traurig, LLP



EXHIBIT A

DAVID C. SHONKA
Acting General Counsel
SARAH WALDROP
MICHELLE SCHAEFER
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop CC-9528
Washington, DC 20580
Telephone: 202-326-3444 (Waldrop)
Telephone: 202-326-3515 (Schaefer)
Facsimile: 202-326-3197
Email: swaldrop@ftc.gov, mschaefer@ftc.gov

STEVEN W. MYHRE
Acting United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: 702-388-6336
Facsimile: 702-388-6787
Email: blaine.welsh@usdoj.gov

*Attorneys for Plaintiff Federal Trade Commission.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>   v.<br><br>REVMOUNTAIN, LLC, *et al.*,<br><br>        Defendants. | Case No: 17-cv-02000-APG-GWF<br><br>**PLAINTIFF FTC'S FIRST SET OF INTERROGATORIES TO DEFENDANT ABSOLUTELY WORKING, LLC** |

Plaintiff, Federal Trade Commission, propounds the following First Set of Interrogatories to Defendant Absolutely Working, LLC pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure.  The Definitions herein are provided for guidance and to reduce the likelihood of any misunderstanding regarding the specific interrogatories set forth below, and are not intended to increase the burden otherwise imposed by the Federal Rules of Civil Procedure upon the defendant as the responding party.  Pursuant to Federal Rule of Civil

Procedure 33(b)(2), Absolutely Working, LLC must serve the Commission with its responses under oath to these interrogatories, including any objections thereto, on or before December 4, 2017.  Furthermore, Defendant Absolutely Working, LLC is hereby notified that the FTC may move at the commencement of trial to preclude Defendants from presenting evidence regarding responsive matters they have failed to disclose in response to the FTC's requests for interrogatory responses.

## DEFINITIONS

A.      "**Defendants**" means RevMountain, LLC; RoadRunner B2C, LLC, d/b/a RevGo; Wave Rock, LLC; Juniper Solutions, LLC; Jasper Woods, LLC; Wheeler Peak Marketing, LLC; ROIRunner, LLC; Cherry Blitz, LLC; Flat Iron Avenue, LLC; Absolutely Working, LLC; Three Lakes, LLC; Bridge Ford, LLC; How and Why, LLC; Spruce River, LLC; TrimXT, LLC; Elation White, LLC; IvoryPro, LLC; Doing What's Possible, LLC; RevGuard, LLC; RevLive!, LLC; Blue Rocket Brands, LLC; Convertis, LLC; Convertis Marketing, LLC; Turtle Mountains, LLC; Boulder Black Diamond, LLC; Mint House, LLC; Thunder Avenue, LLC; University & Folsom, LLC; Boulder Creek Internet Solutions, Inc.; Walnut Street Marketing, Inc.; Snow Sale, LLC; Brand Force, LLC; Wild Farms, LLC; Salamonie River, LLC; Indigo Systems, LLC; Night Watch Group, LLC; Newport Crossing, LLC; Greenville Creek, LLC; Brookville Lane, LLC; Anasazi Management Partners, LLC; Honey Lake, LLC; Condor Canyon, LLC; Brass Triangle, LLC; Solid Ice, LLC; Sandstone Beach, LLC; Desert Gecko, LLC; Blizzardwhite, LLC; Action Pro White, LLC; First Class Whitening, LLC; Spark Whitening, LLC; Titanwhite, LLC; Dental Pro At Home, LLC; Smile Pro Direct, LLC; Circle of Youth Skincare, LLC; DermaGlam, LLC; Sedona Beauty Secrets, LLC; Bellaathome, LLC; SkinnyIQ, LLC; Body Tropical, LLC; Blair McNea; Jennifer Johnson; and Danielle Foss.

B.      "**Identify**," "**identifying**," and "**identification**" mean:

1.      When referring to a natural person, state the full name, present business address and telephone number, or if a present business affiliation or business address is not known, by the last known business and home addresses and business and home telephone numbers;

2

2.  When referring to any other entity, such as a business or organization, state the legal name as well as any other names under which the entity has done business, as well as the address, telephone number and contact person; and

3.  When referring to a document, state the full name(s) of the author(s) or preparer(s), the full name of the recipient(s), addressee(s), and/or person(s) designated to receive copies, the title or subject line of the document, a brief description of the subject matter of the document, the date it was prepared, its present location, and its present custodian.

C.  "**You**" and "**Your**" mean the Defendant responding to this request, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing.

## INTERROGATORIES

1.  Describe the business activities You engage in.

2.  Identify all of Your members.

3.  Identify all of Your officers.

4.  Identify all of Your employees.

5.  Identify all products or services You marketed or sold.

6.  Identify all suppliers from which You obtained any goods You marketed or sold to consumers.

7.  Identify all of the websites You used to market or sell products or services.

8.  Identify all of the customer relationship management systems You used to manage Your relationships and interactions with customers and potential customers.

9.  Describe the relationship, if any, between You and the other Defendants.  For example, state whether any other Defendant owns a portion of You (and if so, identify such Defendant and its percentage ownership stake in You), conducts business with You, or has contracts with You.

10.  Identify any contracts You have with other Defendants.

11.     Identify any contracts You have with non-Defendants including suppliers, affiliate marketers, affiliate networks, providers of customer relationship management products or services, web hosting companies, call center providers, telemarketers, companies providing chargeback management services, and clients of RoadRunner B2C, LLC, d/b/a RevGo, RevGuard, LLC, and RevLive!, LLC.

12.     State the total amount of revenue You earned in each year since January 1, 2010, divided either into periods running from January 1 through December 31 of each year, or into fiscal years as You observed them.

13.     Identify all sources of Your revenue since January 1, 2010, including by categorizing revenues as obtained from either consumers or businesses, and by identifying each business from which You obtained revenue.

14.     State the amount of refunds and chargebacks You have paid to consumers since January 1, 2010.

15.     Describe Your policies or practices for maintaining copies of marketing websites, including the location and form in which such copies are stored.

16.     Identify all employees with responsibilities related to designing Your marketing websites.

17.     Identify the percentage of Your revenues obtained from other Defendants in each year or fiscal year since Your formation.


Dated: November 3, 2017


 _/s/ Michelle Schaefer_
SARAH WALDROP
MICHELLE SCHAEFER
Attorneys for Federal Trade Commission

4

DAVID C. SHONKA
Acting General Counsel
SARAH WALDROP
MICHELLE SCHAEFER
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop CC-9528
Washington, DC 20580
Telephone: 202-326-3444 (Waldrop)
Telephone: 202-326-3515 (Schaefer)
Facsimile: 202-326-3197
Email: swaldrop@ftc.gov, mschaefer@ftc.gov

STEVEN W. MYHRE
Acting United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: 702-388-6336
Facsimile: 702-388-6787
Email: blaine.welsh@usdoj.gov

*Attorneys for Plaintiff Federal Trade Commission.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>REVMOUNTAIN, LLC, *et al.*,<br><br>　　　　　Defendants. | Case No: 17-cv-02000-APG-GWF<br><br>**FTC'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ABSOLUTELY WORKING, LLC** |

1

Pursuant to Fed. R. Civ. P. 34, Plaintiff Federal Trade Commission ("FTC") hereby requests that Defendant Absolutely Working, LLC produce documents and other items described herein.  Defendant Absolutely Working, LLC is requested to make such production at the Federal Trade Commission, 600 Pennsylvania Ave., N.W., Mailstop CC-9528, Washington, DC 20580, or at such other location upon which all parties agree.

**DEFINITIONS**

1.      "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale or use of a good or service or is designed to increase consumer interest in a brand, good, or service.  Advertising media includes, but is not limited to:  packaging and labeling; promotional materials; print; television; radio; and Internet, social media, and other digital content.

2.      "**Affiliate Marketer**" means any third-party who has received compensation of any kind from You for directing consumers to You for the possible or actual purchase of any of Your Negative Option Offerings.

3.      "**Affiliate Network**" means any entity or person that provided services connecting You and Affiliate Marketers, for which You paid or agreed to pay a commission or other compensation for certain consumer actions including visiting Your websites, purchasing Your products, or signing up for a trial offer promoted by You.

4.      "**Corporate Defendants**" means RevMountain, LLC; RoadRunner B2C, LLC, d/b/a RevGo; Wave Rock, LLC; Juniper Solutions, LLC; Jasper Woods, LLC; Wheeler Peak Marketing, LLC; ROIRunner, LLC; Cherry Blitz, LLC; Flat Iron Avenue, LLC; Absolutely Working, LLC; Three Lakes, LLC; Bridge Ford, LLC; How and Why, LLC; Spruce River, LLC; TrimXT, LLC; Elation White, LLC; IvoryPro, LLC; Doing What's Possible, LLC; RevGuard, LLC; RevLive!, LLC; Blue Rocket Brands, LLC; Convertis, LLC; Convertis Marketing, LLC; Turtle Mountains, LLC; Boulder Black Diamond, LLC; Mint House, LLC; Thunder Avenue, LLC; University & Folsom, LLC; Boulder Creek Internet Solutions, Inc.; Walnut Street Marketing, Inc.; Snow Sale, LLC; Brand Force, LLC; Wild Farms, LLC; Salamonie River, LLC; Indigo Systems, LLC; Night Watch Group, LLC; Newport Crossing,

1

LLC; Greenville Creek, LLC; Brookville Lane, LLC; Anasazi Management Partners, LLC; Honey Lake, LLC; Condor Canyon, LLC; Brass Triangle, LLC; Solid Ice, LLC; Sandstone Beach, LLC; Desert Gecko, LLC; Blizzardwhite, LLC; Action Pro White, LLC; First Class Whitening, LLC; Spark Whitening, LLC; Titanwhite, LLC; Dental Pro At Home, LLC; Smile Pro Direct, LLC; Circle of Youth Skincare, LLC; DermaGlam, LLC; Sedona Beauty Secrets, LLC; Bellaathome, LLC; SkinnyIQ, LLC; Body Tropical, LLC; and each of their subsidiaries, affiliates, successors, and assigns.

5.     "**Defendant(s)**" means Corporate Defendants, Blair McNea, Danielle Foss, and Jennifer Johnson, individually, collectively, or in any combination.

6.     "**Individual Defendants**" means Blair McNea, Danielle Foss, and Jennifer Johnson, individually, collectively, or in any combination.

7.     "**Negative Option Offering**" means any offer or arrangement including "trials," "free trials," "risk-free trials," "samples," and "free samples," marketed, sold, offered, or disseminated by, for, or on behalf of a company or individual, under which a consumer's silence or failure to take an affirmative action to reject products or services or to cancel the offer or arrangement is interpreted as acceptance, or under which the company or individual  continues to bill or charge the consumer unless and until the consumer affirmatively rejects the products or services or cancels the offer or arrangement.

8.     "**You**" and "**Your**" mean the Defendant responding to this request, and all directors, officers, employees, agents, consultants, and other persons working for or on behalf of the foregoing.

## INSTRUCTIONS

1.     If You previously provided a document to the FTC or Receiver, or the document in hard copy or electronic format, is or was located at 7350 Eastgate Road, Henderson, NV 89011, 6260 Lookout Road Boulder, CO 80301, or 2011 Cherry Street, Louisville, CO 80027 on July 27, 2017, You do not need to provide it in response to these requests.  However, if You

withhold any documents on the grounds that they were previously provided to the FTC or the Receiver or because they are or were located at the above-listed addresses on July 27, 2017, You must provide a list of those documents, and state for each item or category of items: (a) the title(s) of the document(s); (b) the type of document (*e.g.,* letter, email); (c) the date or date range of the document(s); (d) the general subject matter of the document(s); and (e) the location of the document(s).

2.      If any materials are withheld based on a privilege claim, submit with that claim a schedule of the items withheld in compliance with Section 8(b) of the Proposed Scheduling Order and Discovery Plan [ECF No 76] and Federal Rule of Civil Procedure 26(b)(5).

## DOCUMENT REQUESTS

1.      Organizational charts sufficient to show Your placement with respect to Your parents, subsidiaries, other corporate entities, and the other Defendants.

2.      Documents sufficient to show Your business relationship with each of the other Defendants, including all agreements between You and them.

3.      Documents sufficient to identify all persons employed by You, their job titles, and the date range of employment.

4.      All documents relating to the Individual Defendants' income and other benefits received from You.

5.      All tax returns for the applicable time period prepared by You or on Your behalf. This request includes all supporting documents and attachments.

6.      For each of the Negative Option Offerings You Advertised, marketed, promoted, offered for sale, or sold, documents sufficient to show:

    a.      The total amount of sales for each product or service related to Your Negative Option Offerings (broken down by month and year);

b. The gross revenues obtained from the sale of each product or service related to Your Negative Option Offerings (broken down by month and year);

c. All net profits obtained from the sale of each product or service related to Your Negative Option Offerings (broken down by month and year);

d. The total amount of refunds, full or partial, related to the sale of each product or service related to Your Negative Option Offerings (broken down by month and year);

e. The total amount of chargebacks related to the sale of each product or service related to Your Negative Option Offerings (broken down by month and year);

f. The full names, addresses, emails, and telephone numbers of all purchasers or recipients of each product or service related to Your Negative Option Offering, and the amount paid by each; and

g. The full names, addresses, emails, and telephone numbers of all purchasers or recipients of each product or service related to Your Negative Option Offerings who received refunds or chargebacks, and the amount refunded or charged back to each.

7. All of Your financial statements, ledgers, and balance sheets.

8. All communications referring or relating to Your revenues, profits, or losses.

9. For each of Your Negative Option Offerings, documents sufficient to show all of Your policies, practices, and procedures, including:

a. Billing policies, practices, or procedures, including those relating to when the customer will be billed or charged, at what interval(s), and in what amount(s);

b. Advertising or marketing policies, practices, or procedures;

c. Refund policies, practices, or procedures;

d. Cancellation policies, practices, or procedures;

  e.  Customer service policies, practices, or procedures;

  f.  Policies, practices, or procedures regarding telephone call recordings, including those relating to the circumstances under which You record conversations or communications with consumers;

  g.  Policies, practices, or procedures to monitor or track websites that were used to market, Advertise, offer, or sell Your Negative Option Offerings; and

  h.  Policies, practices, or procedures relating to Your intellectual property including Your proprietary software.

10. All communications referring or relating to Your policies, practices, and procedures.

11. Documents sufficient to identify and describe Your products or services, including their price.

12. All documents relating to suppliers from which You purchased any of the products You marketed or sold to consumers.

13. All documents related to the development and implementation of Your intellectual property, including Your proprietary software.

14. Copies of all versions of Your websites (including individual webpages), including:

  a.  Printouts of such websites;

  b.  Screenshots of such websites;

  c.  All archived versions of such websites and of all programs, files, and scripts related to such websites;

  d.  Documents sufficient to identify the dates each version of each webpage and each program, file, and script related to such webpage was available online and all electronic addresses at which each webpage, program, file, or script was accessible;

e.     All documents related to the design and functioning of such websites including feature descriptions, programmer documentation, developer's guides, specification documents, and version histories;

f.     Documents relating to any guidelines or instructions You provided, directly or indirectly, to any persons who hosted, built, developed, designed, published, or had responsibility for the content presented on any of the websites that Advertised, promoted, or offered any of Your products or services; and

g.     Documents sufficient to identify the individuals who designed or programmed such websites.

15.     For each of Your Negative Option Offerings, provide a copy of each unique Advertisement disseminated.

16.     For each web page or Advertisement produced in response to document requests 14 and 15, screenshots of landing pages for any links included in such web page or Advertisement.  The landing pages provided should reflect their appearance at the time that such web page or Advertisement was in use.

17.     For each web page or Advertisement produced in response to document requests 14 and 15, documents sufficient to show the number of impressions for each such web page or Advertisement, the number of clicks on each such web page or Advertisement, and the total dollar amount spent in connection with each such web page or Advertisement.

18.     Documents sufficient to show click-through rates and gross sales revenue for (a) each web page or Advertisement identified in document requests 14 and 15, including click-through rates for websites, banner ads, and sponsored links, and (b) each webpage, banner, and hyperlink on Your website(s) that has displayed terms or conditions for Your Negative Option Offering(s).

19.     All dissemination schedules for each web page or Advertisement produced in response to document requests 14 and 15, including documents sufficient to show the beginning and ending dates of dissemination for each Advertisement, promotion, or webpage, as well as

the locations where the web pages or Advertisements were disseminated. Provide sufficient information to permit a determination of how many web pages or Advertisements were disseminated, when, where, and to whom.

20.     All Advertising and promotional materials referring or relating to Your Negative Option Offerings provided or available to any Affiliate Marketer or Affiliate Network.

21.     All documents that memorialize agreements, terms, and arrangements between You and Your Affiliate Marketers and Affiliate Networks, including, but not limited to, insertion orders and documents relating to modifications to or terminations of such agreements, terms, or arrangements.

22.     All documents relating to the reasons, explanations, considerations, or analysis of the success or lack of success of any of Your marketing or implementation of Your Negative Option Offerings.

23.     All documents (including but not limited to analyses, copy tests, emails, memoranda, reports, research, studies, or surveys) relating to consumer perception or understanding of  Your Negative Option Offerings or advertising therefor, including but not limited to Your website(s) (including websites optimized for mobile technology).  Responsive documents include, but are not limited to:

      a.     Documents referring or relating to consumer attitudes, attributes, behaviors, beliefs, characteristics, comprehension, demographics, interpretation, preference, recall, traits, or usage patterns and Negative Option Offerings or advertising therefor, including Internet website(s);

      b.     Documents referring or relating to A/B testing, choice modeling, content variation testing, conversion rates, eye tracking or other usability studies, multivariate testing, split testing, take rates, and customer satisfaction surveys; and

      c.     Consumers' understanding or lack of understanding that they were enrolled in a program involving Negative Option Offerings.

24.     All documents that have been provided to Your employees, independent contractors, affiliates, or agents to use in preparation for or during communications with any customer or potential customer, including scripts, policies, manuals, presentations, or procedures for handling cancellation requests or customer complaints.

25.     Documents sufficient to identify any keywords, terms, phrases, or other criteria that You or any person acting for or on Your behalf  has used to effect the placement or delivery of any Advertisement or sponsored link in connection with any online Affiliate Network or Affiliate Marketer delivery or contextual marketing software or system, including the placement or delivery of any Advertisement or sponsored link in search results generated by Google or any other internet search engine (e.g., through the Google AdWords program).

26.     All documents that relate to any changes made or considered to Advertisements or a component thereof for any of Your Negative Option Offerings, including changes to the content of any Advertisement.

27.     All communications referring or relating to Your Negative Option Offerings, including communications with Your Affiliate Networks and Marketers.

28.     All scripts used in connection with Your Negative Option Offerings, including sales scripts, compliance scripts, upsell scripts, verification scripts, and save scripts.

29.     All documents relating to the drafting or editing of all scripts provided in response to document request 28.

30.     All communications referring or relating to Your business activities.

31.     All recordings and all transcripts of recordings of conversations or communications relating to any of Your Negative Option Offerings between any employee, independent contractor, Affiliate Marketer, Affiliate Network, or agent of Yours and any customer or potential customer of Yours.

32.     Documents sufficient to show each iteration of the complete contractual agreement between You and consumers that purportedly binds consumers to purchase or obtain products or services related to Your Negative Option Offerings.

33.     All documents relating to disclosures provided to consumers about the terms and conditions associated with purchasing any products or services subject to your Negative Option Offerings, including drafts of disclosures and communications regarding the content, substance, placement, use, or modification of any disclosures.

34.     All documents relating to consumers' complaints about participation or enrollment in Your Negative Option Offerings, including consumers' attempts to cancel or obtain a refund.

35.     All documents relating to inquiries or complaints from financial institutions, payment processors, Better Business Bureaus, or local or state consumer protection agencies on behalf of consumers, relating to Your Negative Option Offerings.

36.      All documents related to any investigation, enforcement action, or lawsuit in connection with Your Negative Option Offerings.

37.     All applications, including supporting documents, submitted by, or on behalf of, You to open a merchant account to process sales.

38.     All documents concerning any agreement or arrangement in which another entity or individual opened merchant account(s) that were used to process customer payments for Your Negative Option Offerings.

39.     All documents relating to Your placement in a credit card association chargeback or fraud monitoring program, as well as communications relating to attempts to avoid placement in a credit card association chargeback or fraud-monitoring program through the distribution of transaction volume among different merchant accounts.

40.     All reports and summaries that were distributed to or by Your management concerning chargebacks.

41.     All documents relating to any chargeback reduction or remediation plans by You.

42.     All documents relating to Your affirmative defense that the FTC's claims are barred because the alleged violations and damages sustained by consumers, if any, were caused by the acts or omission of third parties over whom You have no control.

43.     All documents relating to Your affirmative defense that  You took affirmative steps to comply with the FTC Act and ROSCA.

44.      All documents relating to the FTC's present action against You that you did not previously provide to the FTC or Receiver or that were not located at 7350 Eastgate Road, Henderson, NV 89011, 6260 Lookout Road Boulder, CO 80301, or 2011 Cherry Street, Louisville, CO 80027, as described in Instruction No. 2.

45.     All documents provided to and/or exchanged with Your witnesses in this matter since July 27, 2017, relating to Your business and/or the FTC's charges or evidence.

46.     All documents obtained from third parties by You via subpoenas in this case.

47.     All documents referred to or used to answer Interrogatories served upon You.

48.     All documents calling into question, contradicting, controverting, disputing, rebutting, refuting, or otherwise responding to any of Your claims, defenses, or exhibits in this case.

Respectfully submitted this 3rd day of November, 2017.

  /s/  MICHELLE SCHAEFER
SARAH WALDROP
MICHELLE SCHAEFER
Attorneys for Federal Trade Commission

10

PROOF OF SERVICE

I hereby certify that I served the foregoing FTC's First Set of Requests for Production of Documents and First Set of Interrogatories to Defendant Absolutely Working, LLC on November 3, 2017, on counsel for all parties as follows via electronic mail:

Giovanni Ruscitti
Berg Hill Greenleaf Ruscitti LLP
1712 Pearl Street
Boulder, CO 80302
303-402-1600
giovanni.ruscitti@bhgrlaw.com

Claude Wild
Claude Wild Law
9247 Mornington Way
Lone Tree, CO 80124
303-916-9082
cwild@claudewildlaw.com

Eric Swanis
Greenberg Traurig LLP
3773 Howard Hughes Parkway, Ste. 400 N
Las Vegas, NV 89169
702-792-3773
swanise@gtlaw.com

*Counsel for Defendant Blair McNea and Corporate Defendant*s

Rachel Hirsch
Ifrah Law PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, DC 20006
202-524-4145
rhirsch@ifrahlaw.com

Ronald Green
Randazza Legal Group, PLLC
4035 El Capitan Way
Las Vegas, NV 89147
702-420-2001
rdg@randazza.com

*Counsel for Defendant Danielle Foss*

Richard Newman
Hinch Newman LLP
40 Wall Street, 35th Floor
New York, NY 10005
212-756-8777
rnewman@hinchnewman.com

Eric D. Hone
Gabriel A. Blumberg
Dickinson Wright PLLC
8363 West Sunset Road, Suite 200
Las Vegas, NV 89113
702-550-4400
ehone@dickinson-wright.com
gblumberg@dickinson-wright.com

*Counsel for Defendant Jennifer Johnson*

Byron Moldo
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212
310-281-6354
bmoldo@ecjlaw.com

Bart K. Larsen
Kolesar & Leatham
400 South Rampart Boulevard, Suite 400
Las Vegas, NV 89145
702-362-7800
blarsen@klnevada.com

*Counsel for Joshua Teeple, Temporary Receiver*

 /s/ Michelle Schaefer
 Michelle Schaefer